**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
Edhadji Mbaye, and Modou Diop, *on behalf of themselves and others similarly situated in the proposed FLSA Collective Action,*

Case No.: 1:23-cv-02967-VSB

*Plaintiffs*,

Hon. Vernon S. Broderick

- *against* -

RCI Hospitality Holdings, Inc., Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret), Eric Langan, and Kes Senevi,

*Defendants*.
------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**AN EMERGENCY PRELIMINARY INJUNCTION AND**
**MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**


**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
*Attorneys for Plaintiffs*


Dated: New York, New York
          August 10, 2023

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ......................................................................... iii

**PRELIMINARY STATEMENT** .................................................................. 2

**RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND** ................... 4

    A. The Filing of the Complaint................................................................ 4

        i. Factual Allegations Pertaining Specifically to Plaintiff Mbaye ............................ 4

        ii. Factual Allegations Pertaining Specifically to Plaintiff Diop................................ 5

        iii. Factual Allegations Pertaining to both Plaintiffs, and all Similarly Situated Employees................................................................. 5

    B. The Service of the Summons and Complaint ................................................. 7

    C. Defendants' Failure to Comply with Court Ordered Disclosures........................ 7

    D. The August 8, 2023 Virtual Mediation .................................................... 8

    E. Defendants Retaliate Against Plaintiffs .................................................... 8

        i. Defendants Have Been in Possession of Plaintiff's Social Security Number Since January 2019 ............................................................. 9

        ii. Defendants Weaponize Plaintiff Diop's Immigration Status, and Threaten Immigration-Related Consequences ...................... 9

          a. The April 14, 2023 Threats and Pre-Textural Employment Verification Policy ................................ 9

          b. The August 1, 2023 Threats and Pre-Textural Employment Verification Policy ...................... 10

          c. The August 8, 2023 Termination, and Pre-Textural Employment Verification  Policy ............... 11

    F. The Proposed First Amended Complaint....................................................... 11

**LEGAL STANDARD** ................................................................................ 12

    I. Legal Standard for a Preliminary Injunction ................................................ 12

II.   Legal Standard for Leave to Amend the Complaint ............................................. 13

**ARGUMENT** .......................................................................................................... **13**

I.   Plaintiff Diop is Entitled to a Preliminary Injunction ...................................... 13

A.   Likelihood of Success on the Merits............................................................... 13

i.   Defendants Implemented a Pre-Textural Employment Verification Policy in Retaliation for Filing the Complaint ..................................................... 14

ii.   Defendants Threatened to Terminate Plaintiff Diop, and Weaponize Plaintiff's Immigration Status, in Retaliation for Filing the Complaint ............................... 16

iii.   Defendants Unlawfully Terminated Plaintiff Diop, in Retaliation for Filing the Complaint ..................................................................................................... 16

iv.   The Chronology of Events Supports a Determination of Retaliation ................... 17

B.   Sufficiently Serious Questions and Balance of Hardships ............................... 18

C.   Public Interest Supports Injunctive Relief ....................................................... 19

II.   Plaintiffs Should be Granted Leave to Amend ................................................. 19

**CONCLUSION** ........................................................................................................ **20**

# TABLE OF AUTHORITIES

## Cases

*Alvarado v. GC Dealer Servs. Inc.*,
    511 F. Supp. 3d 321, 358 (E.D.N.Y. 2021) ....................................................... 16

*Arevalo Fajardo et al v. WB Maintenance & Design Group Inc. et al*,
    Case No.: 1:21-cv-05236-PKC-SJB (E.D.N.Y. 2022).................................... 3, 14

*Bank v. Spark Energy, LLC*,
    2020 WL 6873436 (E.D.N.Y. 2020).......................................................... 13, 19

*Benzinger v. Lukoil Pan Americas, LLC*,
    447 F. Supp. 3d 99 (S.D.N.Y. 2020)................................................................ 16

*Cabrera v. CBC Corp.*,
    2018 WL 1225260 (S.D.N.Y. 2018)................................................................ 17

*Centeno-Bernuy v. Perry*,
    302 F. Supp. 2d 128 (W.D.N.Y. 2003) ............................................................ 15

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)................................................................... 12, 18, 19

*Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*,
    103 F.Supp.2d 1180 (N.D.Cal. 2000) .............................................................. 15

*Demirovic v. Ortega*,
    2017 WL 5196240 (E.D.N.Y. 2017)................................................................ 14

*Flores v. Amigon,*
    233 F. Supp. 2d 462 (E.D.N.Y. 2002). ............................................................ 19

*Jones v. Pawar Bros. Corp.*,
    434 F. Supp. 3d 14 (E.D.N.Y. 2020) ............................................................... 16

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007).......................................................................... 17

*Liu v. Elegance Rest. Furniture Corp.*
    2017 WL 4339476 (E.D.N.Y. 2017)............................................................... 15

*Rodriguez v. Nat'l Golf Links of Am.*,
    2020 WL 3051559 (E.D.N.Y. 2020)................................................................ 20

*Rosas v. Alice's Tea Cup, LLC*,
    127 F. Supp. 3d 4 (S.D.N.Y. 2015)............................................................... 19

*Salazar v. Bowne Realty Assocs., L.L.C.*,
    796 F. Supp. 2d 378 (E.D.N.Y. 2011) .......................................................... 17

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)........................................................................... 12

*Santana v. Rent A Throne, Inc.*,
    2018 WL 1027667 (E.D.N.Y. 2018).............................................................. 14

*Sapia v. Home Box Off., Inc.*,
    2019 WL 4867539 (S.D.N.Y. 2019).............................................................. 17

*Suarez et al v. Brasserie Felix, Inc. et al,*
    Case No. 19-cv-07210-RWL (S.D.N.Y. 2019)......................................... 3, 15

*Ulbricht v. Ternium S.A.*,
    2020 WL 5517313 (E.D.N.Y. 2020).............................................................. 13

*Virgin Enters. Ltd. v. Nawab*,
    335 F.3d 141 (2d Cir. 2003)......................................................................... 12

## **<u>Statutes</u>**

29 U.S.C. § 203(a) .......................................................................................... 14

29 U.S.C. § 215(a)(3)....................................................................................... 13

Fed.R.Civ.P. 15(a)(2)....................................................................................... 13

Fed.R.Civ.P. 65 ............................................................................................... 12

NYLL § 215(1)(a)....................................................................................... 14, 16

Plaintiffs Edhadji Mbaye ("Mbaye"), and Modou Diop ("Diop", and collectively, the "Plaintiffs") by and through the undersigned counsel, respectfully submit this Memorandum of Law, together with the affidavit of Plaintiff Diop (the "Diop Aff."), and the exhibit annexed thereto, and the declaration of Jason Mizrahi (the "Mizrahi Decl."), and the exhibits annexed thereto, in support of Plaintiffs' emergency motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 65, enjoining and restraining Defendants RCI Hospitality Holdings, Inc. ("RCIHH"), Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret) (collectively, the "Corporate Defendants"), Eric Langan, and Kes Senevi (collectively, the "Individual Defendants", and with the Corporate Defendants, the "Defendants"), and their employees, agents, representatives, servants and all persons acting on their behalf from, *inter alia*: (i) implementing a pre-textural employment verification policy; (ii) contacting or communicating with, or causing anyone else from contacting or communicating with, in any way, any local, state, or federal government official or agency, or any staff member of any government official or agency[1], with regard to Plaintiff' Diop's immigration status; and (iii) engaging in any further retaliation, in any form, against Plaintiff Diop (the "Motion for a Preliminary Injunction"), and in support of Plaintiffs' motion for leave to file a first amended complaint, pursuant to Fed.R.Civ.P. 15(a)(2) (the "Motion for Leave to Amend"), and as grounds thereto respectfully state as follows:

---

[1] Including, *inter alia*, the Office of the United States Attorney General, the Department of Justice, the Office of any United States Attorney, the Office of the New York State Attorney General, the United States Department of Labor, the New York State Police, the United States Department of Homeland Security ("U.S. DHS"), the Office of the United States Citizenship and Immigration Services ("U.S. CIS"), the Office of the United States Customs and Border Protection ("U.S. CBP"), the Office of the United States Immigration and Customs Enforcement ("ICE"), the United States Department of State, and the New York City Police Department.

1

## PRELIMINARY STATEMENT

Plaintiffs worked as bathroom attendants in Defendants' adult nightclubs known as: (i) "Rick's Cabaret New York", located at: 50 West 33rd St., New York, NY 10001 ("Rick's Cabaret"); (ii) "Hoops Cabaret", located at 48 West 33rd St., New York, NY 10001 ("Hoops Cabaret"; and (iii) "Vivid Cabaret", located at 61 West 37th St., New York, NY 10018 ("Vivid Cabaret" and collectively with Rick's Cabaret Hoops Cabaret, "Defendants' Nightclubs").

During their employment, Plaintiffs were not paid *any* wages for the hours they worked. Plaintiffs only received gratuities from customers, which they were often forced to distribute to non-tipped employees at Defendants' Nightclubs. In further violation of controlling federal and state labor laws, Plaintiffs were also required to purchase "tools of the trade", including *inter alia*, cologne, mints, gum, and mouthwash, which Defendants required them to purchase. This is truly exploitative – and shameful.  Plaintiffs allege significant wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), Articles 6 and 19 of the New York State Labor Law ("NYLL"), and the NYLL's Wage Theft Prevention Act ("WTPA").

Defendants' abusive tactics have continued and surfaced in this case which necessitates the instant emergency relief. Since the commencement of this action, Defendants have initiated a campaign of harassment and retaliation against Plaintiff Diop. At the center of this intimidation campaign are Shaun Kevlin[2] and Charlie Castro[3], who terminated Plaintiff Diop's employment on August 8, 2023, *i.e.,* less than twenty-four (24) hours following a failed virtual mediation held that

---

[2] Upon information and belief, Shaun Kelvin is the Regional Manager of Defendant RCIHH. *See* https://www.rcihospitality.com/459/pressrelease.aspx; *and see* https://www.rcihospitality.com/622/pressrelease.aspx (last accessed August 9, 2023).
[3] Charlie Castro is the General Manager of Defendant RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret). [Diop Aff. at ¶ 14, fn.5] [Ex. A].

same day.[4] Far more concerning, Defendants have weaponized Plaintiff Diop's immigration status in retaliation for filing the instant action.

Defendants are ruthlessly targeting Plaintiff Diop in retaliation for complaining about Defendants' wage-theft policies. The circumstances here are dire – and necessitate immediate Court intervention to prevent further violence and escalation.

As demonstrated in Section I, *infra*, Plaintiffs are entitled to a preliminary injunction. Case law in this Circuit is legion: threatening immigration-related consequences constitutes an adverse employment action under the FLSA and NYLL.[5] It is extremely likely that Plaintiff Diop will succeed on his FLSA and NYLL retaliation   claims. Irreparable harm is also present. Left unchecked, Defendants pose a threat of serious harm to Plaintiff Diop, and his family. Accordingly, the Court should enter an order temporarily enjoining and restraining Defendants from weaponizing Plaintiff Diop's immigration status.

The instant motion also respectfully requests leave to file the proposed first amended complaint (the "First Amended Complaint", or "FAC"), adding four (4) additional causes of action for: (i) retaliation under the FLSA; (ii) retaliation under the NYLL; (iii) unlawful deductions from tips under the FLSA; and (iv) unlawful deductions from tips under the NYLL. Plaintiffs further seek leave to plead Charlie Castro and Shaun Kelvin as individual defendants, as part of the retaliation claims supporting Plaintiffs' preliminary injunction. Lastly, Plaintiffs further seek leave

---

[4] As set forth more fully herein, Plaintiffs seek leave to, *inter alia,* plead Charlie Castro and Shaun Kelvin as individual defendants, as part of the retaliation claims supporting Plaintiffs' preliminary injunction.

[5] *See Black v. Cakor Rest., Inc.,* 2022 WL 17689840, at *2 (S.D.N.Y. 2022) (granting emergency motion for preliminary injunction, and leave to file an amended complaint, after defendant-employer threatened immigration-related consequences; *Arevalo Fajardo et al v. WB Maintenance & Design Group Inc. et al*, Case No.: 1:21-cv-05236-PKC-SJB, Dckt. No. 57-1 at 88:15-21 (E.D.N.Y. 2022) (granting preliminary injunction and leave to file amended complaint for, *inter alia*, retaliation, having "credit[ed] the reports about [the individual defendant] at least calling two of the potential plaintiffs…and threatening them with reporting to immigration authorities, ***an especially potent threat in a case such as this***.") (emphasis added); *Suarez et al v. Brasserie Felix, Inc. et al,* Case No. 19-cv-07210-RWL at Dckt. No. 11 (S.D.N.Y. 2019) (forbidding defendant-employer from terminating plaintiff-employees for lack of employment verification, following commencement of FLSA/NYLL action).

to add additional allegations pertaining to a third Plaintiff, Talla Samb. Leave to amend should be given here under Fed.R.Civ.P. 15(a)(2).

## RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

For the sake of brevity, the relevant factual background is set forth in the Diop Aff., and the exhibits annexed thereto. Additional information is provided in the accompanying Mizrahi Decl., and the exhibits annexed thereto.

### A. The Filing of the Complaint

The instant action was filed on April 8, 2023. [Dckt. No. 1]. Through its subsidiaries, Defendant RCIHH operates a total of 71[6] adult nightclubs, including Rick's Cabaret, Hoops Cabaret, Vivid Cabaret, where Plaintiffs worked as bathroom attendants.

Plaintiffs were exploited by Defendants' company-wide policy and practice of wage theft, because they were not paid *any* wages for the hours they worked. Plaintiffs only received gratuities from customers. In further violation of controlling federal and state labor laws, Plaintiffs were also required to purchase "tools of the trade", including *inter alia*, cologne, mints, gum, and mouthwash. This is truly exploitative – and shameful.

### i. Factual Allegations Pertaining Specifically to Plaintiff Mbaye

Plaintiff Mbaye worked as a bathroom attendant at Rick's Cabaret from on or around September 2009 to, through and including May 2013, and again from January 15, 2016 to, through and including March 2020.[7] [*Compl.* at ¶ 57]. Throughout his employment, Plaintiff Mbaye worked two (2) days a week at Rick's Cabaret (typically, Sundays and Mondays): from approximately 7:00 p.m. or 8:00 p.m. to 3:00 a.m. or 4:00 a.m., (*i.e.,* approximately 8 hours each

---

[6] As of March 31, 2023. *See* https://www.sec.gov/Archives/edgar/data/935419/000162828023017247/rick-20230331.htm at p. 25 (last accessed on August 9, 2023).

[7] Plainitff Mbaye worked for Defendants an aggregate total of approximately eight (8) years.

day), and for a total period of approximately 16 hours during each of the weeks, respectively. [*Id.* at ¶ 60].

### ii.      Factual Allegations Pertaining Specifically to Plaintiff Diop

Plaintiff Diop has worked as a bathroom attendant at Defendants' Nightclubs since on or around June 2013, *i.e.,* for the last ten (10) years. [*Id.* at ¶¶ 64-65]; [Diop Aff. at ¶ 3]. Plaintiff Diop primarily worked as a bathroom attendant at Rick's Cabaret from on or around June 2013 to, through and including January 2016. [*Compl.* at ¶ 64]; [Diop Aff. at ¶ 4]. Plaintiff Diop then primarily worked as a bathroom attendant at Vivid Cabaret and Hoops Cabaret from on or around February 2016 to, through and including August 8, 2023.[8] [*Compl.* at ¶ 65]; [Diop. Aff. at ¶ 5].

From approximately June 2013 to, through and including January 2016, Plaintiff Diop worked two (2) days a week at Rick's Cabaret (typically, Sundays and Mondays): from approximately 7:00 p.m. or 8:00 p.m. to 3:00 a.m. or 4:00 a.m., (*i.e.,* approximately 8 hours each day), and for a total period of approximately 16 hours during each of the weeks, respectively. [*Compl.* at ¶ 68] [Diop. Aff. at ¶ 6]. From approximately February 2016 to, through and including August 8, 2023, Plaintiff Diop worked three (3) days a week at Vivid Cabaret and Hoops Cabaret (typically, Tuesdays, Wednesdays, and Thursdays): from approximately 9:00 p.m. to 4:00 a.m., (*i.e.,* approximately 7 hours each day), and for a total period of approximately 21 hours during each of the weeks, respectively. [*Compl.* at ¶ 69]; [Diop. Aff. at ¶ 7].

### iii.      Factual Allegations Pertaining to both Plaintiffs, and all Similarly Situated Employees[9]

As bathroom attendants at Defendants' Nightclubs, Plaintiffs' primary duties and responsibilities consisted of turning on the tap for bathroom patrons, providing soap and towels to

---

[8] Less than twenty-four (24) hours following a failed virtual mediation held on August 8, 2023, Defendants terminated Plaintiff Diop's employment. [Diop. Aff. at ¶ 5, fn.3].

[9] *i.e.,* all non-exempt bathroom attendants employed by Defendants on or after April 8, 2020 (*i.e.,* the date that is three years before filing of the initial Complaint).

bathroom patrons, and offering bathroom patrons various items, including, *inter alia*, cologne, mints, gum, and mouthwash. [*Compl.* at ¶ 58, 66]; [Diop. Aff. at ¶ 8]. Plaintiffs' primary duties and responsibilities also consisted of cleaning the bathroom counter and water basin, and cleaning and unclogging the bathroom toilets. [*Compl.* at ¶¶ 59, 67]; [Diop. Aff. at ¶ 9]. Defendants' historic policy and practice was to pay their bathroom attendants, including Plaintiffs, exclusively in gratuities. [*Compl.* at ¶¶ 62, 71, 82] ; [Diop. Aff. at ¶ 10]. Defendants also required their bathroom attendants, including Plaintiffs, to purchase "tools of the trade", including *inter alia*, cologne, mints, gum, and mouthwash. [*Compl.* at ¶¶ 3, 101, 105] ; [Diop. Aff. at ¶ 11].

Defendants also failed to provide their bathroom attendants, including Plaintiffs, with accurate written wage notices and wage statements of, *inter alia*, their hours worked, hourly rate of pay, overtime rate of pay, and regular payday, in violation of NYLL § 195(3). [*Compl.* at ¶¶ 73-77, 93-99]; [Diop. Aff. at ¶ 12].

The initial Complaint [Dckt. No. 1] (the "Complaint") asserts six (6) Causes of Action against Defendants.

FIRST:        Unpaid minimum wages under the FLSA;

SECOND:    Unpaid minimum wages under the NYLL;

THIRD:      Failure to provide wage notices under the NYLL and Wage Theft Prevention;

FOURTH:    Failure to provide wage notices under the NYLL and Wage Theft Prevention;

FIFTH:       Recovery of equipment costs under the NYLL; and

SIXTH:       Recovery of equipment costs under the FLSA.

[Dckt. No. 1 at ¶¶ 85-107].

**B.  The Service of the Summons and Complaint**

On April 8, 2023, Plaintiffs filed a Request for Issuance of Summons as to Defendants. [Dckt. No. 5]. An electronic summons was subsequently issued on April 10, 2023. [Dckt. No. 6]. On April 10, 2023, the undersigned informed Jeffrey A. Kimmel ("Attorney Kimmel"), of Akerman LLP, of the pendency of the instant action via email transmitted at 3:23 p.m. [Mizrahi Decl. at ¶ 3] [Ex. A]. On May 24, 2023, Defendants, through counsel, executed waivers of service pursuant to Fed.R.Civ.P. 4(d)(1). [Dckt. No. 8]. Pursuant to Fed.R.Civ.P. 4(d)(3), an answer or other response to the Complaint was due on or before July 23, 2023. [*Id.*].  On May 26, 2023, Defendants appeared in the action through counsel, Jeffrey A. Kimmel and Mohammad Adil Yaqoob, of Akerman LLP. [Dckt. Nos. 9, 10]. Thus, Defendants have had both actual and constructive knowledge of the instant action as early as April 10, 2023.

**C.  Defendants' Failure to Comply with Court Ordered Disclosures**

Pursuant to the Honorable Vernon S. Broderick's June 1, 2023 Mediation Referral Order [Dckt. No. 11], Defendants were to produce the following documents on before June 29, 2023:

1.  Any existing documents that describe Plaintiffs' duties and responsibilities.

2.  Any existing records of wages paid to and hours worked by the Plaintiffs (*e.g.*, payroll records, time sheets, work schedules, wage statements and wage notices).

3.  Any existing documents describing compensation policies or practices.

4.  Proof of financial condition including tax records, business records, or other documents demonstrating their financial status, if Defendants intend to assert an inability to pay.

Defendants failed to produce the required documents by June 29, 2023. As of the date of this filing, Defendants' counsel has not provided:

1.  ***Any*** timekeeping records for either Plaintiff;
2.  ***Any*** payroll records for either Plaintiff;
3.  A time of hire notice, pursuant to NYLL § 195; or

4.   Weekly wage statements, pursuant to NYLL § 198.

Thus, Defendants have not satisfied their obligation to maintain "records of employee wages, hours, tips, and other conditions and practices of employment." 29 U.S.C. § 211(c); 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 142–2.6. Nor have Defendants provided the undersigned counsel with *any* records to meaningfully determine whether or not Defendants truly suffer from any "financial hardship."

**D.  The August 8, 2023 Virtual Mediation**

The parties held a virtual mediation on August 8, 2023 at 10:00 a.m., before Mediator Alan Gettner. [*See* 06/06/2023 Notice of Mediator Assignment]; [*see also* 07/07/2023 Docket Entry]; [*see also* Dckt. No. 12]. Both Plaintiffs attended and participated in the August 8, 2023 virtual mediation. [Mizrahi Decl. at ¶ 4]. Shaun Kelvin, the Regional Manager of Defendant RCIHH, attended and participated in the August 8, 2023 virtual mediation on behalf of the Defendants. [*Id.*]. The August 8, 2023 mediation concluded at approximately 12:30 p.m., without a resolution. [*Id*].

**E.  Defendants Retaliate Against Plaintiffs**

Shortly after Defendants became aware of Plaintiffs' lawsuit they initiated a campaign of threatening, harassing, intimidating and retaliating against Plaintiff Diop. [Diop Aff. at ¶ 6]. At the center of this intimidation campaign are Shaun Kevlin and Charlie Castro, who terminated Plaintiff Diop's employment immediately after the failed virtual mediation held on August 8, 2023. [*Id*. at ¶ 7]. Far more concerning, Defendants have weaponized Plaintiff Diop's immigration status in retaliation for filing the instant action. [*Id*. at ¶ 8].

### i.     Defendants Have Been in Possession of Plaintiff's Social Security Number Since January 2019

By way of relevant background, Plaintiff Diop has worked as a bathroom attendant at Defendants' Nightclubs since on or around June 2013, *i.e.,* for the last ten (10) years. [*Compl.* at ¶¶ 64-65]; [Diop Aff. at ¶ 6]. Throughout his employment, Plaintiff Diop's compensation consisted exclusively of gratuities. [*Compl.* at ¶¶ 62, 71, 82]; [Diop Aff. at ¶ 10]. Beginning on or around January 2019, customers would occasionally tip Plaintiff Diop in "funny money", *i.e.,* a fake currency created by Defendants, and issued to customers that pay for services via credit card. [Diop Aff. at ¶ 20]. At the end of Plaintiff Diop's shift, whenever he would exchange the "funny money" back into real currency, Defendants unlawfully withheld approximately 2% of any gratuities Plaintiff received. [*Id*. at ¶ 21]. Beginning on or around January 2019, *i.e.,* when Plainitff Diop first started exchanging Defendants' "funny money" for real currency, Defendants asked Plaintiff Diop for his social security number. [*Id*. at ¶ 22]. Plaintiff Diop provided Defendants with this information on or around January 2019. [*Id*. at ¶ 23]. Thus, Defendants have been in possession of Plaintiff Diop's social security number since as early as January 2019. [*Id*. at ¶ 24].

### ii.     Defendants Weaponize Plaintiff Diop's Immigration Status, and Threaten Immigration-Related Consequences

#### a.     The April 14, 2023 Threats and Pre-Textural Employment Verification Policy

On or around April 14, 2023 (*i.e.,* less than one (1) week[10] after the commencement of the action, and four (4) days[11] after the undersigned informed Attorney Kimmel of the pendency of the instant action) Charlie Castro approached Plaintiff Diop during his shift, in the bathroom of Vivid Cabaret. [Diop Aff. at ¶ 15]. Mr. Castro demanded that Plaintiff Diop immediately provide

---

[10] *See* Dckt. No. 1.
[11] [Mizrahi Decl. at ¶ 3] [Ex. A].

a copy of his social security card, on the pretext that he needed it in order to pay Plaintiff Diop lawful wages. [*Id*. at ¶ 16]. Mr. Castro threatened to terminate Plaintiff Diop immediately if he did not do what he was told. [*Id*. at ¶ 17]. Reasonably fearful that Defendants would weaponize his immigration status, and report him to the immigration authorities, Plaintiff Diop reminded Mr. Castro that he had given Defendants his social security number as early as January 2019. [*Id*. at ¶¶ 18-27]. Plaintiff Diop also told Mr. Castro to direct his request to Plaintiff Diop's counsel (*i.e.,* to the undersigned's attention). [*Id*. at ¶ 28].

On or around May 19, 2023 at approximately 9:37 a.m., counsel for the parties held a telephonic conference to discuss, *inter alia*, Defendants' execution of the waivers of service pursuant to Fed.R.Civ.P. 4(d)(1). [Mizrahi Decl. at ¶ 5]. During the course of this telephonic conference, counsel for Plaintiff advised Defendants' counsel that Mr. Castro had unlawfully threatened Plaintiff Diop in the middle of his shift, on April 14, 2023. [*Id*.]. In an effort to avoid unnecessary Court intervention, the undersigned directed Attorney Kimmel to advise his clients to direct any further requests regarding Plaintiff Diop's employment to the undersigned's attention. [*Id*. at ¶ 6].

### b. The August 1, 2023 Threats and Pre-Textual Employment Verification Policy

On or around August 1, 2023 (*i.e.,* approximately two (2) months after Defendants' appearance in the action, through counsel on May 26, 2023 [Dckt. Nos. 9, 10], and one (1) week before the August 8, 2023 virtual mediation), Mr. Castro and Mr. Kelvin approached Plaintiff Diop, during a shift at Vivid Cabaret. [Diop Aff. at ¶ 29]. Mr. Castro and Mr. Kelvin brought Plainitff Diop to their office, and demanded that Plaintiff Diop provide a copy of his social security card, on the pretext that they needed it in order to pay Plaintiff Diop lawful wages. [*Id*. at ¶ 30]. Mr. Castro and Mr. Kelvin threatened to terminate Plaintiff Diop if he did not do what he was told.

[*Id*. at ¶ 31]. Reasonably fearful that Defendants would weaponize his immigration status, and report him to the immigration authorities, Plaintiff Diop reminded Mr. Castro and Mr. Kelvin that he had given Defendants his social security number as early as January 2019. [*Id*. at ¶¶ 32-33]. Plaintiff Diop also reminded Mr. Castro and Mr. Kelvin to direct their requests to Plaintiff Diop's counsel (*i.e.,* to the undersigned's attention). [*Id*. at ¶ 34].

### c.  The August 8, 2023 Termination, and Pre-Textural Employment Verification Policy

On or around August 8, 2023 (*i.e.,* less than twenty-four (24) hours after the failed August 8, 2023 virtual mediation), Mr. Castro approached Plaintiff Diop, ***a third time***, during his shift, in the bathroom of Vivid Cabaret. [*Id*. at ¶ 35]. Mr. Castro, again, demanded that Plaintiff Diop provide a copy of his social security card, on the pretext that he needed it in order to pay Plaintiff Diop lawful wages. [*Id*. at ¶ 36]. After Plaintiff Diop reminded Mr. Castro that he had given Defendants his social security number as early as January 2019, and instructed Mr. Castro to direct his requests to Plaintiff Diop's counsel (*i.e.,* to the undersigned's attention), Mr. Castro told Plaintiff Diop to go home, and not come back to work until he could provide a copy of his social security card. [*Id*. at ¶¶ 37-38]. Minutes later, while Plaintiff Diop was packing his belongings, in the bathroom of Vivid Cabaret, Mr. Kelvin approached Plainitff Diop, and told Plaintiff Diop to go home, and not come back to work until he could provide a copy of his social security card. [*Id*. at ¶ 39].

### F.  The Proposed First Amended Complaint

Plaintiffs' proposed First Amended Complaint seeks to add four (4) additional causes of action for: (i) retaliation under the FLSA; (ii) retaliation under the NYLL; (iii) unlawful deductions from tips under the FLSA; and (iv) unlawful deductions from tips under the NYLL. [Mizrahi Decl.

at ¶ 7] [Ex. B][12]. Plaintiffs further seek leave to plead Charlie Castro and Shaun Kelvin as individual defendants, as part of the retaliation claims supporting Plaintiffs' preliminary injunction. [*Id.*] Lastly, Plaintiffs further seek leave to add additional allegations pertaining to a third Plaintiff, Talla Samb. [*Id.*] Leave to amend should be given here under Fed.R.Civ.P. 15(a)(2).

## **LEGAL STANDARD**

### I.      **Legal Standard for a Preliminary Injunction**

Preliminary injunctions and temporary restraining orders may be granted under Fed.R.Civ.P. 65[13] when the plaintiff establishes: (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) that they are "likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [their] favor" ("decidedly" so where there are "serious questions going to the merits"); and (4) the "'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting,* 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted); *see also Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003).  The "'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010).

---

[12] For the Court's convenience, a copy of the proposed First Amended Complaint is attached to the Mizrahi Decl. as Exhibit "B", and a redlined version of the First Amended Complaint is attached to the Mizrahi Decl. as Exhibit "C".

[13] Fed.R.Civ.P. 65 provides in relevant part as follows:

> (a)  Preliminary Injunction. (1) Notice. The court may issue a preliminary injunction only on notice to the adverse party.

> (b)  Temporary Restraining Order. (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney…

*See* Fed.R.Civ.P. 65.

## II.      Legal Standard for Leave to Amend the Complaint

Under Fed.R.Civ.P. 15(a), a court "should freely give leave" to a party to amend its pleading "when justice so requires." Fed.R.Civ.P. 15(a)(2). "This rule is a 'permissive standard,' although leave to amend may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Ulbricht v. Ternium S.A.*, 2020 WL 5517313, at *12 (E.D.N.Y. 2020) (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), and *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

In exercising its discretion, a district court must bear in mind that the overall goal is "to secure the just, speedy, and inexpensive determination of every action." *Bank v. Spark Energy, LLC*, 2020 WL 6873436, at *2 (E.D.N.Y. 2020), *aff'd*, 860 F. App'x 205 (2d Cir. 2021) "The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.'" *Id.* (quoting Fed.R.Civ.P. 1) (internal citation omitted). Indeed, this is the "paramount command" of the Federal Rules of Civil Procedure. *Id.* (citing *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016)).

## ARGUMENT

## I.      Plaintiff Diop is Entitled to a Preliminary Injunction

In this case, the Court should respectfully grant the requested relief because Plaintiffs can demonstrate each of the elements for a preliminary injunction.

### A.  Likelihood of Success on the Merits

Plaintiffs have demonstrated a likelihood of success on the merits of their FLSA and NYLL retaliation claims. The FLSA provides that it is "unlawful for any person…to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]…" 29 U.S.C. § 215(a)(3). Under the FLSA, a person is defined as any "individual, partnership, association, corporation,

business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). Thus, the anti-retaliation provision of the FLSA does not apply only to employers; it applies to "any person." *Demirovic v. Ortega*, 2017 WL 5196240, at *3 (E.D.N.Y. 2017) (citations omitted).

To establish a *prima facie* claim of retaliation in violation of the FLSA, a plaintiff must show "(1) participation in [a] protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Santana v. Rent A Throne, Inc.*, 2018 WL 1027667, at *7 (E.D.N.Y. 2018) (citations and quotations omitted). As set forth more fully herein, Plaintiffs have established a *prima facie* case of retaliation.

The analogue section regarding retaliation under the NYLL provides that no employer or his or her agent "shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter[.]" NYLL § 215(1)(a). The same standard for a claim of retaliation under the FLSA also applies to a claim of retaliation under NYLL. *Santana*, 2018 WL 1027667 at *7 (citation omitted).

### i.      Defendants Implemented a Pre-Textural Employment Verification Policy in Retaliation for Filing the Complaint

Case law is legion: an employer's threats to disclose a plaintiff-employee's immigration status is an adverse employment action under the FLSA and NYLL. *See Black,* 2022 WL 17689840 at *2 (granting emergency motion for preliminary injunction, and leave to file an amended complaint, after defendant-employer threatened immigration-related consequences; *Arevalo Fajardo et al*, Case No.: 1:21-cv-05236-PKC-SJB, Dckt. No. 57-1 at 88:15-21 (E.D.N.Y. 2022) (granting emergency preliminary injunction and leave to file amended complaint for, *inter alia*,

retaliation, having "credit[ed] the reports about [the individual defendant] at least calling two of the potential plaintiffs…and threatening them with reporting to immigration authorities, ***an especially potent threat in a case such as this***[]") (emphasis added); *Brasserie Felix, Inc.,* Case No. 19-cv-07210-RWL at Dckt. No. 11 (forbidding defendant-employer from terminating plaintiff-employees for lack of employment verification, following commencement of FLSA/NYLL action).

Plaintiffs have undertaken a protected activity under the FLSA in filing the instant litigation on April 8, 2023.[14] Defendants': (i) pre-textural employment verification policy, implemented on April 14, 2023[15]; (ii) repeated threats to terminate Plaintiff Diop; (iii) weaponization of Plaintiff Diop's immigration status; (iv) and constructive termination of Plaintiff Diop on August 8, 2023[16], constitute adverse employment actions under the FLSA and NYLL. *See, e.g., Liu v. Elegance Rest. Furniture Corp.* 2017 WL 4339476, at *5 (E.D.N.Y. 2017) (finding that defendant-employer's text messages threatening to disclose to authorities plaintiff-employee's immigration status was an adverse employment action for the purposes of FLSA retaliation); *Centeno-Bernuy v. Perry,* 302 F. Supp. 2d 128, 136 (W.D.N.Y. 2003) (migrant workers demonstrated likelihood of success on retaliation claims, necessitating entry of protective order); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 103 F. Supp.2d 1180 (N.D.Cal. 2000) (reporting a plaintiff to the INS in retaliation for a plaintiff having complained under the FLSA constituted an adverse employment action).

---

[14] *See* Dckt. No. 1.
[15] *i.e.,* less than one (1) week after the commencement of the action, four (4) days after the undersigned informed Attorney Kimmel of the pendency of the instant action [*see* Mizrahi Decl. at ¶ 3] [Ex. A]., and ***ten (10) years*** after Plaintiff Diop first started working in June 2013. [Diop Aff. at ¶¶ 3, 10].
[16] *i.e.,* less than twenty-four (24) hours following a failed virtual mediation held that same day.

ii.     **Defendants Threatened to Terminate Plaintiff Diop, and Weaponize Plaintiff's Immigration Status, in Retaliation for Filing the Complaint**

The anti-retaliation provision[17] of the NYLL "explicitly reaches threats as well as fully executed retaliatory actions." *Alvarado v. GC Dealer Servs. Inc*., 511 F. Supp. 3d 321, 358 (E.D.N.Y. 2021).  "Generally speaking, the test is met if the conduct complained of might have dissuaded a reasonable worker from making or supporting similar charges." *Id*. (citations omitted).

On April 14, 2023, August 1, 2023 and August 8, 2023, Mr. Castro and Mr. Kelvin repeatedly threatened to terminate Plainitff Diop's employment, and weaponize Plaintiff Diop's immigration status. [Diop Aff. at ¶¶ 15-39]. Defendants' repeated threats lacked a reasonable basis, because Plaintiff Diop had been employed by Defendants for ***ten (10) years***, and because Plaintiff Diop had provided Defendants with his social security number on or around January 2019. [*Id.* at ¶¶ 18-25]. Plainitff Diop feared that Defendants were weaponizing his immigration status, and going to report him to the immigration authorities. [*Id.* at ¶¶ 26, 32, 40]. Mr. Castro and Mr. Kelvin's threats constitute an adverse employment action for purposes of retaliation.

iii.    **Defendants Unlawfully Terminated Plaintiff Diop, in Retaliation for Filing the Complaint**

A defendant-employer's refusal to assign a plaintiff-employee work can constitute an adverse employment action under the FLSA. *See Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 131 (S.D.N.Y. 2020) (removal from certain projects sufficient to state a claim on plaintiff-employee's FLSA retaliation claim); *Jones v. Pawar Bros. Corp*., 434 F. Supp. 3d 14, 28 (E.D.N.Y. 2020) ("[p]laintiff stopped receiving calls from Singh – in effect, terminating [p]laintiff – because of the filing of this lawsuit…Such action would "dissuade[ ] a reasonable worker from

---

[17] Section 215(1) of the NYLL provides, in pertinent part: "No employer…shall discharge, **threaten**, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer…" N.Y. Labor Law § 215(1)(a) (emphasis added).

making or supporting similar charges" and thus constitutes an adverse employment action) (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)); *Sapia v. Home Box Off., Inc.*, 2019 WL 4867539, at \*4 (S.D.N.Y. 2019) (allegations sufficient to state a claim of retaliation where defendant-employer ceased assigning plaintiff-employee shifts); *Cabrera v. CBC Corp.*, 2018 WL 1225260, at \*5 (S.D.N.Y. 2018); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (employee moved to a less desirable work station and shift assignments was a victim of an adverse employment action.) Thus, there is sufficient evidence to support a finding of a causal connection between Plaintiff's protected activity under the FLSA and Plaintiff's abrupt termination on August 8, 2023, *(10) years*[18] after he first started working for Defendants, and less than twenty-four (24) hours after the August 8, 2023 virtual mediation.

### iv.    The Chronology of Events Supports a Determination of Retaliation

"[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (citing *Gorman–Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001). Moreover, "the element of causal connection…may also rely on non-circumstantial evidence, such as written or verbal statements of retaliatory intent." *Id.* (citing *Pakter v. New York City Dept. of Educ.*, 2010 WL 1141128, at \*8 (S.D.N.Y. 2010)).

Defendants implemented their pre-textural employment verification policy on April 13, 2023[19]*, i.e.,* less than one (1) week after the commencement of the action[20], four (4) days after the undersigned informed Attorney Kimmel of the pendency of the instant action[21], and ***ten (10) years***

---

[18] [Diop Aff. at ¶¶ 3, 10].
[19] [*Id.* at ¶¶ 15-28].
[20] *See* Dckt. No. 1.
[21] [Mizrahi Decl. at ¶ 3] [Ex. A]

after Plaintiff Diop first started working in June 2013.[22] Defendants threatened to terminate Plaintiff Diop, and weaponized his immigration status on August 1, 2023.[23] One week later, on August 8, 2023 (*i.e.,* less than twenty-four (24) hours after the failed August 8, 2023 virtual mediation), Defendants constructively terminated Plaintiff Diop.[24] The chronology of events clearly supports a determination of retaliation.

### B. Sufficiently Serious Questions and Balance of Hardships

The doctrine of serious questions is limited to "situations where [courts] cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *See Black,* 2022 WL 17689840 at *10, fn.8 (citing *Citigroup Global Mkts., Inc.,* 598 F.3d at 35 (2d Cir. 2010)). Here, Plaintiffs are more likely than not to prevail on the merits of their retaliation claim, thus, Court need not consider the serious-questions argument.

Even assuming, *arguendo,* that Plaintiffs have failed to establish a likelihood of success on the merits (which they have not), they are still entitled to a preliminary injunction because they have established sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in their favor. For the reasons already stated, there are serious questions going to the merits of Plaintiffs' claims of retaliation making them fair ground for litigation. Further, the balance of hardships tips decidedly in Plaintiffs' favor. Without the sought-after injunctive relief, Plaintiff Diop will face difficulty in prosecuting the instant litigation, and could face criminal and administrative action. In contrast, if an injunction is

---

[22] [Diop Aff. at ¶¶ 3, 10].
[23] [*Id*. at ¶¶ 29-34].
[24] [*Id*. at ¶¶ 35-40].

issued, Defendants will not suffer any hardship. They will simply be prevented from weaponizing Plaintiff Diop's immigration status.

### C.   Public Interest Supports Injunctive Relief

Finally, public interest tilts heavily in favor of injunctive relief, as a matter of law. There is undoubtedly a public interest in allowing employees to enforce their rights, regardless of their immigration status, without fearing retaliation. *See Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 9 (S.D.N.Y. 2015) ("protections of the FLSA are available to citizens and undocumented workers alike[]"); *see also See Black,* 2022 WL 17689840 at *14 ("the purpose of the antiretaliation provisions of the FLSA and NYLL is to provide for effective enforcement of wage-and-hour laws by enabling 'employees [to feel] free to approach officials with their grievances' and prevent 'aggrieved employees' from 'quietly…accept[ing] substandard conditions.'") (quoting *Mitchell v. Robert DeMario Jewelry, Inc*., 361 U.S. 288, 292 (1960)); *see also* Greathouse v. JHS Sec. Inc., 784 F.3d 105, 113 (2d Cir. 2015).

Moreover, the Court need not address whether some public interest is served or not in order to grant preliminary relief. *See Flores v. Amigon,* 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002). The Court only need find that the public interest is not harmed. *SEC v. Citigroup Global Mkts. Inc*., 673 F.3d 158, 163 n.1 (2d Cir. 2012). Here, the Court should find that because the public interest is not harmed, preliminary injunctive relief should be granted.

### II.   Plaintiffs Should be Granted Leave to Amend

In light of the purpose of Fed.R.Civ.P. 15 – indeed all of the Federal Rules of Civil Procedure – to ensure the "just, speedy, and inexpensive" resolution of cases, the Court should exercise its discretion to grant Plaintiffs' leave to amend the Complaint. *Bank*, 2020 WL 6873436 at *2 (quoting Fed.R.Civ.P. 1) (internal citation omitted).

As set forth more fully in § I(A), *supra*, Plaintiffs have established a *prima facie* case for adding add four (4) additional causes of action for: (i) retaliation under the FLSA; (ii) retaliation under the NYLL; (iii) unlawful deductions from tips under the FLSA; and (iv) unlawful deductions from tips under the NYLL. [Mizrahi Decl. at ¶ 7] [Ex. B]. The first two claims justify adding Charlie Castro and Shaun Kelvin as individual defendants. Lastly, Plaintiffs further seek leave to add additional allegations pertaining to a third Plaintiff, Talla Samb. [*Id.*] Leave to amend should be given here under Fed.R.Civ.P. 15(a)(2) because Plaintiffs' proposed claims are not futile, and are supported by detailed factual allegations. *See Rodriguez,* 2020 WL 3051559 at *2 (granting motion to amend complaint to add claims of retaliation under the FLSA and NYLL). Leave to amend should, therefore, be granted.

## <u>CONCLUSION</u>

For the reasons stated above, it is respectfully submitted that the Court: enter an order[25] enjoining and restraining Defendants and their employees, agents, representatives, servants and all persons acting on their behalf from, *inter alia*: (i) implementing a pre-textural employment verification policy; (ii) contacting or communicating with, or causing anyone else from contacting or communicating with, in any way, any local, state, or federal government official or agency, or any staff member of any government official or agency[26], with regard to Plaintiff' Diop's immigration status; and (iii) engaging in any further retaliation, in any form, against Plaintiff Diop, and further granting Plaintiffs leave to file the proposed First Amended Complaint, together with such other and further relief as the Court deems just and proper.

---

[25] Pursuant to Individual Motion Practice Rule 5(D) of the Honorable Vernon S. Broderick, a proposed temporary emergency restraining order and protective order is attached to the Mizrahi Decl. at **Exhibit "C"**.

[26] Including, *inter alia*, the Office of the United States Attorney General, the Department of Justice, the Office of any United States Attorney, the Office of the New York State Attorney General, the United States Department of Labor, the New York State Police, U.S. DHS, U.S. CIS, the Office of the United States Customs and Border Protection U.S. CBP, ICE, the United States Department of State, and the New York City Police Department.

Dated: New York, New York
       August 10, 2023

LEVIN EPSTEIN & ASSOCIATES, P.C.

*/s Jason Mizrahi*
Jason Mizrahi, Esq.
Joshua Levin-Epstein, Esq.
60 East 42nd Street, Suite 4700
New York, New York 10165
Tel No.: (212) 792-0048
*Attorneys for Plaintiffs*