UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Edhadji Mbaye, and Modou Diop, *on behalf of themselves and others similarly situated in the proposed FLSA Collective Action*,

                *Plaintiffs,*

- against -

RCI Hospitality Holdings, Inc., Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret), Eric Langan, and Kes Senevi,

                *Defendants*.
----------------------------------------------------------------X

Case No.: 1:23-cv-02967-VSB

Hon. Vernon S. Broderick

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR AN EMERGENCY PRELIMINARY INJUNCTION AND
<u>LEAVE TO FILE AN AMENDED COMPLAINT</u>**

AKERMAN LLP
Attorneys for Defendants
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Telephone: (212) 880-3800
Facsimile: (212) 905-6408

Dated: New York, New York
       August 21, 2023

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

ARGUMENT ................................................................................................................................ 5

POINT I  THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION ...................................................................................... 5

    I.     Plaintiffs Will Not Suffer Irreparable Harm Absent Their Requested Status
Quo- Altering Injunction ....................................................................................... 6

    II.    Plaintiffs Are Not Likely To Succeed On The Merits of Their Retaliation
Claims .................................................................................................................... 7

    III.   The Public Interest and Balance of Equities Favor Denial Of The
Requested Preliminary Injunction ......................................................................... 9

POINT II  THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR LEAVE TO
AMEND THE COMPLAINT ......................................................................................... 10

CONCLUSION ........................................................................................................................... 12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Balbuena v. IDR Realty LLC*,
  845 N.E.2d 1246 (N.Y. 2006) .................................................................................................10

*Borey v. Nat'l Union Fire Ins. Co.*,
  934 F.2d 30 (2d Cir. 1991) .......................................................................................................6

*Cacchillo v. Insmed, Inc.*,
  638 F.3d 401 (2d Cir. 2011) .....................................................................................................5

*Cooney v. Consol. Edison Co. of New York*,
  No. 03 CIV.0869 KMW GWG, 2003 WL 22093483 (S.D.N.Y. Sept. 10, 2003) .....................6

*CQS ABS Master Fund Ltd. v. MBIA Inc.*,
  No. CIV. 6840 (RJS), 2014 WL 11089340 (S.D.N.Y Jan. 29, 2014) .......................................9

*Faively Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir. 2009) .....................................................................................................6

*Hoffman Plastic Compounds, Inc. v. N.L.R.B.*,
  535 U.S. 137 (2002) ...............................................................................................................10

*Joseph v. Leavitt*,
  465 F.3d 87 (2d Cir.2006) ........................................................................................................8

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
  917 F.2d 75 (2d Cir. 1990) .......................................................................................................5

*Kinojuz I.P. v. IRP Int'l Inc.*,
  No. CV-11-299 (DLI)(VVP), 2012 WL 13093568 (E.D.N.Y. Oct. 17, 2012) .......................11

*Litwin v. Ocean Freight, Inc.*,
  865 F. Supp. 2d 385 (S.D.N.Y. 2011) ......................................................................................9

*Lucente v. International Bus. Mach. Corp.*,
  310 F.3d 243 (2d Cir. 2002) ...................................................................................................10

*Metro Taxicab Bd. Of Trade v. City of New York*,
  615 F.3d 152 (2d Cir. 2010) .....................................................................................................5

*Mullins v. City of N.Y.*,
  626 F.3d 47 (2d Cir. 2010) .......................................................................................................8

*New York ex rel. Schneiderman v. Actavis PLC*,
  787 F.3d 638 (2d. Cir. 2015) ....................................................................................................6

*Peck v. Montefiore Med. Ctr.*,
    987 F. Supp. 2d 405 (S.D.N.Y. Dec. 16, 2013) ..........................................................................6

*Sampson v. Murray*,
    415 U.S. 61 (1974).................................................................................................................6, 7

*Savage v. Gorski*,
    850 F.2d 64 (2d Cir.1988).........................................................................................................7

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995)......................................................................................................5, 7

**Statutes**

Fair Labor Standards Act .................................................................................................2, 4, 8, 11

Immigration Reform and Control Act of 1986 ............................................................................10

New York Labor Law ......................................................................................................2, 4, 8, 11

## PRELIMINARY STATEMENT

Defendants RCI Hospitality Holdings Inc., fka Rick's Cabaret International, Inc.; Peregrine Enterprises, Inc., dba Rick's Cabaret New York; RCI 33rd Ventures, Inc.; 48 West 33rd Street Corp.; RCI Dining Services (37th Street), Inc.; Eric Langan; and Kes Senevi. (collectively, the "Defendants") respectfully submit their Memorandum of Law in Opposition to Plaintiffs' Edhadji Mbaye ("Mbaye"), Modou Diop ("Diop"), Talla Samb ("Samb"), and Tahirou Diakite ("Diakite") (collectively, the "Plaintiffs") motion for a preliminary injunction and leave to file an amended Complaint (the "Motion").

Plaintiffs request an injunction compelling Defendants to suspend their long-standing pre-employment verification policy that precedes this lawsuit, and to employ Diop despite the fact that he has failed to provide the requested documentation necessary to verify his ability to lawfully work in the United States. Additionally, Plaintiffs request leave to amend the Complaint to add, among other things, allegations of "retaliation" based on Defendants' enforcement of its long-standing pre-employment verification policy. As set forth below, Plaintiffs have failed to, and cannot, carry their burden of proving entitlement to this far-reaching and unwarranted injunctive relief, and have failed to establish entitlement for leave to amend the Complaint. Accordingly, the Motion should be denied in its entirety.

Despite their accusation that Defendants have threatened to "weaponize" Mr. Diop's immigration status, there is not a single allegation that any Defendant or representative of any Defendant has even discussed with Mr. Diop or mentioned his immigration status much less made any threats. And in fact, to this day, Defendants remain unaware of Mr. Diop's actual immigration status.

1

**STATEMENT OF FACTS**

Plaintiffs Mbaye, Diop, Samb, and Diakite are restroom attendants who provided services to patrons and employees in restroom facilities at certain of the clubs (the "Clubs") operated by certain Defendants. Plaintiffs were hired and were presumably scheduled and assigned to work at various restrooms by a third party. *See* Declaration of Shaun Kevlin ("Kevlin Decl."), ¶¶ 3-4. Prior to August 2023, Defendants had absolutely no involvement in the setting of Plaintiffs' schedules or directing their activities in any way.[1] *Id.*

On April 8, 2023, Plaintiffs filed this lawsuit claiming that they were employees, and seeking compensation from Defendants for all hours they worked at the Clubs, as well as the costs of supplies for their businesses. *See* ECF Dkt. No. 1. Specifically, they claim failure to pay the minimum wage and damages for having to purchase their own "tools of trade," under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and wage statement and notice violations under the NYLL. *Id.*

In early August 2023, Defendants made the decision to discontinue their practice of contracting for restroom attendants through a third party and decided to directly employ restroom attendants instead. Kevlin Decl., ¶ 5. As part of the employment onboarding process, Defendants require all prospective employees to establish their identity and eligibility to lawfully work in the United States. *Id.* ¶ 6. This policy requires prospective employees to, among other things, present valid social security cards and government issued identification. *Id.* The Clubs do not employ employees who cannot present valid social security cards that allow the Clubs to verify their eligibility to work in the United States. *Id.* ¶ 7. This is a long-standing policy that precedes this lawsuit and is applicable to each and every employee of the Clubs.[2] *Id.* ¶ 8.

---

[1] The Clubs began employing restroom attendants directly in early August 2023.
[2] By way of example, attached to the Declaration of Shaun Kevlin are the employee onboarding documents for an employee who was hired as a host in April 2022. *See* Kevlin Decl., Exhibit A. Included in these documents is a

2

Since the Clubs did not previously employ restroom attendants and therefore did not previously require them to present social security cards, each restroom attendant offered employment with the Clubs was asked to present valid social security cards for the purposes of verifying their eligibility to lawfully work in the United States. *Id.* ¶ 9. In fact, every restroom attendant who was offered employment with the Clubs except for Diop, has submitted their social security cards. *Id.* For instance, a restroom attendant named Moustapha, presented his social security card after being offered employment with one of the Clubs and was therefore successfully onboarded and hired. *Id.* ¶ 9; Kevlin Decl., Exhibit B.

On or around August 1, 2023, Shaun Kevlin ("Kevlin"), Vice President of Operations of RCI Management Services, Inc., approached Diop to tell him that he was being offered employment. *Id.* ¶ 10. Kevlin informed Diop that would need to present his social security card or a copy of his social security card to be onboarded as an employee. *Id.* Diop told Kevlin that he would bring his social security card the next day. *Id.* The next day, Castro, a manager at one of the Clubs, approached Diop to ask if he brought his social security card as he had promised. *Id.* ¶ 11. Diop said that he did not have his social security card, but that he would bring it in the next week. *Id.* The next week, on August 8, 2023, Castro once again approached Diop to ask if he had his social security card. *Id.* ¶ 12. Diop told Castro that he did not bring his social security card. *Id.* Later that evening, Kevlin approached Diop and Diop told him that he did not have his social security card, but that he would bring the card the next day. *Id.* Consistent with Defendants' long-standing employment verification policy, Kevlin reminded Diop that he could not work at the Clubs until he was able to present his social security card. *Id.*

Kevlin emphasized that Diop was welcome to come to work once he was was able to bring in his social security card and complete his onboarding paperwork. *Id.* ¶ 13. In fact, Kevlin

---

redacted copy of his social security card. *Id.* This is just an example, but every single employee at the Clubs has similarly had to present a social security card. Kevlin Decl., ¶ 8.

3

told Diop that he could even bring proof that he had applied for a social security card rather the card itself to continue working. *Id*. After this evening, Diop did not return to the Clubs. *Id*. To date, Diop has failed to present a social security card. *Id*. ¶ 14. Further, at no point did Defendants contact or threaten to contact any government agencies regarding Diop's immigration status and in fact, Defendants are not even aware of Diop's immigration status. *Id*. ¶ 15.

On August 10, 2023, Plaintiffs filed their Motion seeking an "emergency" preliminary injunction to restrain Defendants from "(i) implementing a pre-textural (sic) employment verification policy; (ii) contacting or communicating with, or causing anyone else from contacting or communicating with, in any way, any local, state, or federal government official or agency, or any staff member of any government official or agency with regard to Plaintiff Diop's immigration status; and (iii) engaging in any further retaliation, in any form, against Plaintiff Diop." *See* Plaintiff's Memorandum of Law [ECF Dkt. No. 17] ("Pl. MOL") at 20. Plaintiffs also seek leave to amend their Complaint to add allegations of retaliation under the FLSA and NYLL, to add Kevlin and Charlie Castro ("Castro") as Defendants, and to add allegations pertaining to a third Plaintiff named Samb. *Id*.

That same day, Judge Lewis J. Liman held a conference to discuss Plaintiffs' request for an emergency preliminary injunction.[3] After concluding that there was no emergency necessitating an immediate order, Judge Liman scheduled a preliminary injunction hearing for August 28, 2023 before Judge Vernon S. Broderick.

---

[3] During the conference, Plaintiffs' counsel conceded that there was no indication that Defendants intend to contact immigration authorities or other governmental officials regarding Diop's immigration status while he is not working at the Clubs. In fact, Plaintiffs' counsel indicated that he only was seeking an order requiring Defendants to suspend their pre-employment verification policy and "reinstate" Diop as a restroom attendant.

4

## ARGUMENT

## POINT I

## THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990) (internal citations omitted). To establish entitlement to it, the party seeking relief must prove all of the following elements: (1) a likelihood of success on the merits; (2) that the injunction is necessary to prevent irreparable harm; (3) that the preliminary injunction is in the public interest; and (4) that the balance of hardships tips decidedly in the moving party's favor. *See Metro Taxicab Bd. Of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010).

"The burden is even higher on a party… that seeks a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (internal quotation marks and citation omitted). "A mandatory preliminary injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id*. Plaintiffs seek a mandatory injunction because they seek to "alter the status quo by commanding some positive act," by directing Defendants to suspend their long-standing pre-employment verification policy, and to employ Diop without the required documentation. *Id*. Plaintiffs' requested relief is therefore subject to a heightened burden. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–35 (2d Cir. 1995). Plaintiffs fall well short of meeting this heightened burden, and therefore their requested injunction should be denied.

5

## I.   Plaintiffs Will Not Suffer Irreparable Harm Absent Their Requested Status Quo-Altering Injunction

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faively Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation omitted). "[T]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* at 118 (quotation omitted). The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991). Moreover, where as here the movants are seeking a mandatory injunction, they must make a "strong showing" of irreparable harm. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d. Cir. 2015).

In the context of employment disputes, it is well established that neither the loss of employment nor financial loss constitute "irreparable harm" for purposes of determining whether injunctive relief is warranted. *Sampson v. Murray*, 415 U.S. 61, 89–92 (1974) (holding that the injuries generally associated with a discharge from employment do not constitute the "irreparable harm" necessary to obtain injunctive relief); *see also Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 412 (S.D.N.Y. Dec. 16, 2013) (discharge from employment does not constitute irreparable harm). Indeed, a party seeking injunctive relief who alleges only loss of employment and other related harm fails to establish irreparable injury because "a harm that can be remedied by payment of damages is not irreparable." *Cooney v. Consol. Edison Co. of New York*, No. 03 CIV.0869 KMW GWG, 2003 WL 22093483, at *3 (S.D.N.Y. Sept. 10, 2003); *see also Dist. Council 1707 v. New York Ass'n For New Americans*, Inc., No. 03 CIV.9536 RCC, 2003 WL 22871926, at *3 (S.D.N.Y. Dec. 4, 2003) ("[t]he only identifiable harm presented by this application is, therefore, the loss of employment to five employees. This does not, however, rise

6

to the level of 'irreparable harm' necessary for a court to grant injunctive relief."); *Savage v. Gorski*, 850 F.2d 64, 67 (2d Cir.1988) ("Loss of employment does not in and of itself constitute irreparable injury.").

Here, it is plainly evident that Diop will not suffer irreparable injury absent his requested relief, *i.e*. suspension of the Clubs' pre-employment verification policy and an order requesting Defendants to employ him as a restroom attendant. Indeed, as noted *supra*, "loss of income and difficulty in finding other employment do[es] not rise to the level of irreparable injury necessary to obtain a preliminary injunction." *Sampson*, 415 U.S. at 89–92. Tellingly, Plaintiffs fail to specify the purported irreparable injury Diop will suffer absent the requested relief. In fact, they barely address irreparable harm in their moving papers at all. When they do address the issue, Plaintiffs vaguely assert, without providing any supporting evidence, that "Defendants pose a threat of serious harm to Plaintiff Diop, and his family." Pl. MOL at 3. This nebulous, conclusory, and baseless assertion of harm falls well short of establishing irreparable injury for the purposes of a preliminary injunction, and therefore the Court should deny Plaintiffs their requested relief.

## II.     Plaintiffs Are Not Likely To Succeed On The Merits of Their Retaliation Claims

Plaintiffs are also not entitled to injunctive relief because they cannot establish any claim that is remotely likely to succeed against Defendants, let alone show a substantial showing of likelihood of success on their claims. In seeking a mandatory injunction against Defendants, Plaintiffs are seeking to disrupt the status quo. *Tom Doherty*, 60 F.3d at 34. Therefore, to meet this prong (and be entitled to injunctive relief), Plaintiffs must show "a more substantial showing of likelihood of success" than the law requires for a preliminary injunction. *Id*. Plaintiffs' claims fall far below this threshold. Indeed, Plaintiffs' argument that Defendants retaliated against Diop

7

for filing this lawsuit in violation of the FLSA and NYLL by not allowing him to work until he presents a valid social security card is not even remotely plausible.

A plaintiff alleging retaliation under the FLSA or NYLL "must first establish a prima facie case of retaliation by showing: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010). It is well established that the application of pre-existing policies to a plaintiff "without more, does not constitute adverse employment action." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir.2006). Once the plaintiff establishes a prima facie case of FLSA retaliation, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason for the employment action." *Mullins*, 626 F.3d at 53 (internal quotations and citations omitted). If the defendant meets this burden, the plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Id*. at 53–54. (internal quotations and citations omitted).

Plaintiffs cannot show a likelihood of success on their FLSA and NYLL retaliation claims because (1) Defendants' application of their long-standing pre-employment verification process does not constitute an adverse action; (2) Diop is not permitted to work at the Clubs because he has failed to produce his social security card, not for any reason related to the allegations in this lawsuit; and (3) Diop's failure to produce the necessary employment verification documents is a legitimate, non-discriminatory basis for not allowing him to work at the Clubs.

Indeed, there can be no dispute that Defendants require all of their employees to present valid social security cards to allow Defendants to confirm the eligibility of their employees to work in the United States, and that this policy long precedes the filing of this lawsuit. Kevlin Decl., ¶¶ 6–8. Once Defendants decided to directly employ restroom attendants, they needed to verify their eligibility to work in the United States, and accordingly asked all restroom attendants to present their social security cards. *Id*. ¶ 9. Diop has failed to present a valid social security card. *Id*. ¶ 14. As such, Defendants are not presently able to employ Diop. Diop's inability to work for Defendants has nothing to do with the filing of the Complaint in this action. In fact, if Diop is able to present a valid social security card (and complete the required onboarding paperwork), Defendants will gladly employ him as a restroom attendant. *Id*. ¶ 13.

Accordingly, Plaintiffs' retaliation claims fail as a matter of law and therefore their requested injunction should be denied.

### III. The Public Interest and Balance of Equities Favor Denial Of The Requested Preliminary Injunction

Even if Plaintiffs could establish irreparable harm and likelihood of success on the merits (which they cannot), Plaintiffs' motion for preliminary injunction must be denied as the public interest consideration weighs heavily in favor of Defendants. A "preliminary injunction may not [be] issue[d] unless the movant clearly shows that the balance of equities favors the movant." *Litwin v. Ocean Freight, Inc.*, 865 F. Supp. 2d 385, 401 (S.D.N.Y. 2011); *see also CQS ABS Master Fund Ltd. v. MBIA Inc.*, No. CIV. 6840 (RJS), 2014 WL 11089340, at *3 (S.D.N.Y Jan. 29, 2014) (denying preliminary injunction where plaintiffs could not establish "that the equities tip decidedly in their favor"). On balance, the potential harm to Defendants and to the public interest if the requested mandatory preliminary injunction is granted, both plainly favor Defendants.

9

The Immigration Reform and Control Act of 1986 ("IRCA") requires that employers verify that each new worker hired is authorized to work in the United States. *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002) (citing 8 U.S.C. § 1324a et seq.). In relevant part, IRCA's "employment verification system" requires that "employers verify the identity and eligibility of all new hires by examining specified documents before they begin work." *Hoffman Plastic*, 535 U.S. at 147 (citing 8 U.S.C. § 1324a(b)). "If an alien applicant is unable to present the required documentation, the unauthorized alien cannot be hired." *Id*. (citing 8 U.S.C. § 1324a(a)(1)). "An employer who knowingly violates [IRCA's] employment verification requirements ... is subject to civil or criminal prosecution and penalties." *Balbuena v. IDR Realty LLC*, 845 N.E.2d 1246, 1253 (N.Y. 2006) (citing 8 U.S.C. §§ 1324a(a)(1)-(2), (f)(1)).

In compliance with the IRCA, Defendants require each of its employees to present valid social security cards and government identification to allow Defendants to confirm the eligibility of their employees to work in the United States. Kevlin Decl., ¶ 6. Ordering Defendants to suspend this policy and employ Diop without permitting Defendants to first verify his eligibility to work in the United States would undermine the IRCA and potentially expose Defendants to liability under the act. These harms greatly outweigh any potential harm stemming from Diop's inability to work at the Clubs, especially since any harm to Diop could be fully remedied at the end of litigation should Plaintiffs succeed on their retaliation claims.

## POINT II

### THIS COURT SHOULD DENY PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

Leave to amend a pleading may be denied "[w]here it appears that granting leave to amend is unlikely to be productive." *Lucente v. International Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). "Undue delay, prejudice, futility of the amendment, and prior opportunities to amend the complaint, among other factors, are to be considered in

determining whether leave to amend should be granted." *Kinojuz I.P. v. IRP Int'l Inc.*, No. CV-11-299 (DLI)(VVP), 2012 WL 13093568, at *1 (E.D.N.Y. Oct. 17, 2012). Here, Plaintiffs seek leave to amend their complaint to add (1) retaliation claims under the FLSA and NYLL; (2) unlawful deduction claims under the FLSA and NYLL; (3) Kevlin and Castro as defendants as to the retaliation claims; and (4) new factual allegations pertaining to Plaintiff Samb. The Court should deny Plaintiffs leave to amend as to proposed amendments one (1) and three (3).[4]

First, as noted above, Plaintiffs' retaliation claims are not even remotely plausible because (1) Defendants' application of their long-standing pre-employment verification process does not constitute an adverse action necessary for a retaliation claim; (2) Diop is not permitted to work at the Clubs because he failed to produce his social security card, not for any reason related to the allegations in this lawsuit; and (3) Diop's failure to produce the necessary employment verification documents is a legitimate, non-discriminatory for not allowing him to work at the Clubs. Second, because Plaintiffs' allegations against Kevlin and Castro relate only to Plaintiffs' meritless retaliation claims, it would also be futile to allow Plaintiffs to add Kevlin and Castro as Defendants.

Accordingly, Plaintiffs should be denied leave to amend the Complaint.

---

[4] Defendants stipulate to Plaintiffs' proposed amendments pertaining to Plaintiffs' unlawful deduction claims and allegations related to Plaintiff Samb.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' motion for a preliminary injunction and leave to amend the Complaint.

Dated:  New York, New York
          August 21, 2023

Respectfully submitted,

**AKERMAN LLP**


s/ Jeffrey A. Kimmel
Jeffrey A. Kimmel
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Email: jeffrey.kimmel@akerman.com
Telephone: (212) 905-6408

*Attorneys for Defendants*