**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

Elhadji Mbaye, Modou Diop, Tahirou Diakite, and Talla Samb, *on behalf of themselves and others similarly situated in  the proposed FLSA Collective Action and in the proposed Class,*

                                        *Plaintiffs*,

                - against -

RCI Hospitality Holdings, Inc., Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret), Eric Langan, Kes Senevi,

                                        *Defendants*.
-------------------------------------------------------------X

Case No.: 23-cv-02967

**Jury Trial Demanded**

**FIRST AMENDED**
**COMPLAINT**

Plaintiffs Elhadji Mbaye ("Mbaye"), Modou Diop ("Diop"), Tahirou Diakite ("Diakite") and Talla Samb ("Samb", and collectively, the "Plaintiffs") on behalf of themselves and others similarly situated, by and through their attorneys, Levin-Epstein & Associates, P.C., upon personal knowledge as to themselves and upon information and belief as to others, brings this First Amended Complaint against Defendants RCI Hospitality Holdings, Inc. ("RCIHH"), Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret) (collectively, the "Corporate Defendants"), Eric Langan, and Kes Senevi (collectively, the "Individual Defendants", and with the Corporate Defendants, the "Defendants") and state as follows:

**NATURE OF THE ACTION**

1.    Plaintiffs worked as bathroom attendants in Defendants adult night clubs known as: (i) "Rick's Cabaret New York", located at: 50 West 33rd St., New York, NY 10001 ("Rick's"); (ii) "Hoops Cabaret", located at 48 West 33rd  St., New York, NY 10001 ("Hoops"; and (iii) "Vivid Cabaret", located at 61 West 37th St., New York, NY 10018 ("Vivid" and collectively with Rick's and Hoops, "Defendants' Nightclubs").

2.    During their employment, Plaintiffs were not paid *any* wages[1] for the hours they worked. Plaintiffs only received gratuities from patrons, which they were often forced to distribute to non-tipped employees at Defendants' Nightclubs.

3.    In further violation of controlling federal and state labor laws, Plaintiffs were also required to purchase "tools of the trade", including *inter alia*, cologne, mints, gum, mouthwash, and air deodorizer, which Defendants required them to purchase. This is truly exploitative – and shameful.

4.    Defendants also forced Plaintiffs to pay a weekly "house fee" of $40, and unlawfully withheld approximately 2% of any "funny money" gratuities that Plaintiffs, and all similarly situated individuals, received, and re-exchanged at the end of their shifts.

5.    Plaintiffs bring this lawsuit seeking recovery, for themselves and on behalf of all other similarly situated individuals, against Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), Articles 6 and 19 of the New York State Labor Law ("NYLL") and supporting New York Department of Labor ("NYDOL") Regulations.

6.    Plaintiffs seeks injunctive and declaratory relief and to recover unpaid minimum wages, recovery of equipment costs, unlawful deductions, liquidated and statutory damages, pre-

---

[1] Unless Plaintiffs were assigned to work on the third (3rd) floor of Rick's, *i.e.*, the "Champagne Room". In which case, they were paid a flat rate of $90 per shift, regardless of how many hours they worked, plus gratuities.

and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, and the NYLL's Wage Theft Prevention Act ("WTPA").

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216 (b), 28 U.S.C. § 1331 and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367(a).

8.      This Court has federal question jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because their claims arise under the FLSA.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), because all events relevant to this action occurred in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**ELHADJI MBAYE**

10.     Plaintiff Mbaye was employed as a bathroom attendant at Rick's from on or around September 2009 to, through and including May 2013, and again from January 15, 2016 to, through and including March 2020.

11.     Throughout his employment, Defendants directed Plaintiff Mbaye to work interchangeably at Defendants' Nightclubs.

12.     Plaintiff Mbaye was employed as a non-managerial employee at Rick's from on or around September 2009 to, through and including May 2013, and again from January 15, 2016 to, through and including March 2020.

13.     At all relevant times, Plaintiff Mbaye has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**PLAINTIFF MODOU DIOP**

14.     Plaintiff Diop was employed as a bathroom attendant at Rick's from on or around June 2013 to, through and including January 2016.

15.     Plaintiff Diop was employed as a bathroom attendant at Hoops and Vivid from on or around February 2016 to, through and including August 8, 2023.

16.     Throughout his employment, Defendants directed Plaintiff Diop to work interchangeably at Defendants' Nightclubs.

17.     Plaintiff Diop was employed as a non-managerial employee at Defendants' Nightclubs from on or around October 2021 through and including August 8, 2023.

18.     At all relevant times, Plaintiff Diop has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**PLAINTIFF TAHIROU DIAKITE**

19.     Plaintiff Diakite was primarily employed as a bathroom attendant at Rick's from on or around January 2019 to, through and including December 2019.

20.     During this period, Plaintiff Diakite was primarily assigned to perform bathroom attendance services on the third (3rd) floor of Rick's (the "Champagne Room").

21.     Throughout his employment, Defendants directed Plaintiff Diakite to work interchangeably at Defendants' Nightclubs.

22.     Plaintiff Diakite was employed as a non-managerial employee at Defendants' Nightclubs from on or around January 2019 to, through and including December 2019.

23.     At all relevant times, Plaintiff Diakite has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**PLAINITFF TALLA SAMB**

24.     Plaintiff Samb was employed as a bathroom attendant at Hoops from on or around February 2021 to, through and including August 2021.

25.     Plaintiff Samb was employed as a bathroom attendant at Rick's from on or around September 2021 to, through and including the present date.

26.     Throughout his employment, Defendants directed Plaintiff Samb to work interchangeably at Defendants' Nightclubs.

27.     Plaintiff Samb was employed as a non-managerial employee at Hoops and Rick's from on or around February 2021 through and including the present date.

28.     At all relevant times, Plaintiff Samb has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

**DEFENDANT RCI HOSPITALITY HOLDINGS, INC.**

29.     Upon information and belief, Defendant RCIHH is a foreign corporation organized and existing under the laws of the State of Texas. Upon information and belief, it maintains its principal place of business located at: (i) 50 West 33rd St., New York, NY 10001 (*i.e.,* Rick's); (ii) 61 West 37th St., New York, NY 10018 (*i.e.,* Vivid); and (iii) 48 West 33rd  St., New York, NY 10001 (*i.e.,* Hoops), and alternate addresses located at: (iv) 10737 Cutten Rd., Houston, TX 77066-5007; and (v) 1502 Augusta Dr., Suite 320, attn: Robert D. Axelrod, Houston, TX 77057.

30.     At all times relevant to this Complaint, Defendant RCIHH: (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

31.     At all times relevant to this Complaint, Defendant RCIHH was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

32.     At all times relevant to this Complaint, Defendant RCIHH was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT PEREGRINE ENTERPRISES INC. (D/B/A RICK'S CABARET NEW YORK)**

33.     Upon information and belief, Defendant Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York) is a domestic limited liability company organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business located at (i) 50 West 33rd St., New York, NY 10001 (*i.e.,* Rick's), and alternate addresses located at: (ii) 600 Mamaroneck Ave., Suite #400, Harrison, NY 10528; and (iii) 10737 Cutten Rd., Houston, TX 77066-5007.

34.     At all times relevant to this Complaint, Defendant Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York): (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

35.     At all times relevant to this Complaint, Defendant Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York) was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

36.     At all times relevant to this Complaint, Defendant Peregrine Enterprises Inc. (d/b/a

Rick's Cabaret New York) was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT RCI 33 RD VENTURES, INC.,**

37.    Upon information and belief, Defendant RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar) is a domestic limited liability company organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business located at: (i) 48 West 33rd  St., New York, NY 10001 (*i.e.,* Hoops), and alternate addresses located at: (ii) 600 Mamaroneck Ave., Suite #400, Harrison, NY 10528; and (iii) 10737 Cutten Rd., Houston, TX 77066-5007.

38.    At all times relevant to this Complaint, Defendant RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar): (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

39.    At all times relevant to this Complaint, Defendant RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar) was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

40.    At all times relevant to this Complaint, Defendant RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar) was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT 48 WEST 33RD STREET CORP. (D/B/A HOOPS CABARET AND SPORTS BAR)**

41.     Upon information and belief, Defendant RCI 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar) is a domestic limited liability company organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business located at: (i) 48 West 33rd  St., New York, NY 10001 (*i.e.,* Hoops), and an alternate addresses located at: (ii) 1808 West Merrick Road, Merrick, NY 11566.

42.     At all times relevant to this Complaint, Defendant 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar): (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

43.     At all times relevant to this Complaint, Defendant 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar) was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

44.     At all times relevant to this Complaint, Defendant 48 West 33rd Street Corp. was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT RCI DINING SERVICES (37TH STREET), INC. (D/B/A VIVID CABARET)**

45.     Upon information and belief, Defendant RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret) is a domestic limited liability company organized and existing under the

laws of the State of New York. Upon information and belief, it maintains its principal place of business located at: (i) 61 West 37th St., New York, NY 10018 (*i.e.,* Vivid).

46.     At all times relevant to this Complaint, Defendant RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret): (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

47.     At all times relevant to this Complaint, Defendant RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret) was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiffs.

48.     At all times relevant to this Complaint, Defendant RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret) was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT ERIC LANGAN**

49.     Defendant Eric Langan is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

50.     Defendant Eric Langan is sued individually and in his capacity as an owner, officer and/or agent of the Corporate Defendants.

51.     Defendant Eric Langan possesses or possessed operational control over the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

52.     Defendant Eric Langan determined the wages and compensation of employees,

including Plaintiffs, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

53.     At all times relevant to this Complaint, Defendant Eric Langan was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANT KES SENEVI**

54.     Defendant Kes Senevi is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

55.     Defendant Kes Senevi is sued individually and in his capacity as an owner, officer and/or agent of the Corporate Defendants.

56.     Defendant Kes Senevi possesses or possessed operational control over the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

57.     Defendant Kes Senevi determined the wages and compensation of employees, including Plaintiffs, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.

58.     At all times relevant to this Complaint, Defendant Kes Senevi was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3), and employed employees, including Plaintiffs.

**DEFENDANTS CONSTITUTE JOINT EMPLOYERS**

59.     Defendants operate a total of 71[2] adult nightclubs, including Rick's, Hoops, and Vivid, where Plaintiffs worked as bathroom attendants.

60.     The Individual Defendants possess operational control over the Corporate

---

[2]  As of June 30, 2023. *See* https://www.sec.gov/Archives/edgar/data/935419/000162828023028567/rick-20230630.htm  at p. 26 (last accessed on November 9, 2023).

Defendants, possesses an ownership interest in the Corporate Defendants, and controls significant functions of the Corporate Defendants.

61.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

62.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

63.    Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

64.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

65.    Upon information and belief, the Individual Defendants operate the Corporate Defendants as either an alter ego of themselves, and/or fails to operate the Corporate Defendants as entities legally separate and apart from themselves, by, among other things:

a.    failing to adhere to the corporate formalities necessary to operate the Corporate Defendants as separate and legally distinct entities;

b.    defectively forming or maintaining the Corporate Defendants, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

c.    transferring assets and debts freely as between all Defendants;

11

d.      operating the Corporate Defendants for their own benefit as the majority shareholders;

e.      operating the Corporate Defendants for their own benefit and maintaining control over it as closed corporations or closely controlled entities;

f.      intermingling assets and debts of their own with the Corporate Defendants;

g.      diminishing and/or transferring assets of the Corporate Defendants to protect their own interests; and

h.      other actions evincing a failure to adhere to the corporate form.

66.      Upon information and belief, Defendants' Nightclubs co-mingle resources, including employees.

67.      At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

68.      Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

**FACTUAL ALLEGATIONS**

*Factual Allegations Pertaining Specifically to Plaintiff Mbaye*

69.      Plaintiff Mbaye was an employee of Defendants.

70.      Plaintiff Mbaye worked as a bathroom attendant at Rick's from on or around September 2009 to, through and including May 2013, and again from January 15, 2016 to, through and including March 2020.

71.      Throughout his employment, Defendants directed Plaintiff Mbaye to work interchangeably at Defendants' Nightclubs.

72.     From approximately September 2009 to, through and including May 2013, and again from January 15, 2016 to, through and including March 2020, Plaintiff Mbaye worked two (2) days a week (typically, Sundays and Mondays): from approximately 7:00 p.m. or 8:00 p.m. to 3:00 a.m. or 4:00 a.m., (*i.e.,* approximately 8 hours each day), and for a total period of approximately 16 hours during each of the weeks, respectively.

73.     From approximately September 2009 to, through and including May 2013, and again from January 15, 2016 to, through and including March 2020, Plaintiff Mbaye was not paid *any* wages for the hours he worked.

74.     Plaintiff Mbaye's compensation exclusively consisted of gratuities received directly from patrons.

75.     Throughout his employment, Defendants required Plaintiff Mbaye to purchase "tools of the trade", including *inter alia*, cologne, mints, gum, mouthwash and air deodorizer.

76.     Throughout his employment, Plaintiff Mbaye typically spent $200 or $300 each month restocking his "tools of the trade".

77.     Defendants never reimbursed Plaintiff Mbaye the $200 or $300 it cost him, each time, to restock on his "tools of the trade".

*Factual Allegations Pertaining Specifically to Plaintiff Diop*

78.     Plaintiff Diop was an employee of Defendants.

79.     Plaintiff Diop worked as a bathroom attendant at Rick's from on or around June 2013 to, through and including January 2016.

80.     Plaintiff Diop worked as a bathroom attendant at Hoops and Vivid from on or around February 2016 to, through and including August 8, 2023.

81.     Throughout his employment, Defendants directed Plaintiff Diop to work

interchangeably at Defendants' Nightclubs.

82.     From approximately June 2013 to, through and including January 2016, Plaintiff Diop worked two (2) days a week (typically, Sundays and Mondays): from approximately 7:00 p.m. or 8:00 p.m. to 3:00 a.m. or 4:00 a.m., (*i.e.,* approximately 8 hours each day), and for a total period of approximately 16 hours during each of the weeks, respectively.

83.     From approximately February 2016 to, through and including August 8, 2023, Plaintiff Diop worked three (3) days a week at Hoops and Vivid (typically, Tuesdays, Wednesdays, and Thursdays): from approximately 9:00 p.m. to 4:00 a.m., (*i.e.,* approximately 7 hours each day), and for a total period of approximately 21 hours during each of the weeks, respectively.

84.     From approximately June 2013 to, through and including January 2016, and again from February 2016 to, through and including August 8, 2023, Plaintiff Diop was not paid *any* wages for the hours he worked at Rick's.

85.     Plaintiff Diop's compensation exclusively consisted of gratuities received directly from patrons.

86.     In the instances where Defendants Plaintiff Diop worked at the third (3rd) floor of Rick's (*i.e.,* the Champagne Room), Plaintiff Diop would get paid a flat rate of $90 per shift, regardless of how many hours he worked, in addition to his gratuities.

87.     In these instances, at the end of Plaintiff Diop's shift, he would get paid: (i) $40 per shift directly from the bar at Rick's; and (ii) $50 per shift directly from the "cage" at Rick's, *i.e.*, the in-house bank, where patrons, exotic dancers, and bathroom attendants, would exchange real currency and "funny money".

88.     Throughout his employment, Defendants required Plaintiff Diop to purchase "tools

of the trade", including *inter alia*, cologne, mints, gum, mouthwash and air deodorizer.

89.     Throughout his employment, Plaintiff Diop typically spent $200 or $300 once every two (2) weeks, restocking his "tools of the trade".

90.     Defendants never reimbursed Plaintiff Diop the $200 or $300 it cost him, each time, to restock on his "tools of the trade".

*Factual Allegations Pertaining Specifically to Plaintiff Diakite*

91.     Plaintiff Diakite was an employee of Defendants.

92.     Plaintiff Diakite primarily worked as a bathroom attendant at Rick's from on or around January 2019 to, through and including December 2019.

93.     During this period, Plaintiff Diakite was primarily assigned to perform bathroom attendance services on the third (3rd) floor of Rick's (*i.e.,* the Champagne Room).

94.     From approximately January 2019 to, through and including December 2019, Plaintiff Diakite worked five (5) days a week: from approximately 8:30 p.m. or 9:00 p.m. to 3:30 a.m. or 4:00 a.m., (*i.e.,* approximately 6.5 to 7.5 hours each day), and for a total period of approximately 32.5 to 37.5 hours during each of the weeks, respectively.

95.     In the instances where Plaintiff Diakite worked at the third (3rd) floor of Rick's (*i.e.,* the Champagne Room), Plaintiff Diakite would get paid a flat rate of $90 per shift, regardless of how many hours he worked, in addition to his gratuities.

96.     In these instances, at the end of Plaintiff Diakite's shift, he would get paid (i) $40 per shift directly from the bar at Rick's; and (ii) $50 per shift directly from the "cage" at Rick's, *i.e.*, the in-house bank, where patrons, exotic dancers, and bathroom attendants, would exchange real currency and "funny money".

97.     Throughout his employment, Defendants directed Plaintiff Diakite to work

interchangeably at their nightclubs, *to wit*: the first (1st) floor (*i.e.,* the main floor) of Rick's, the third (3rd) floor of Rick's (*i.e.,* the Champagne Room), Hoops, and Vivid.

98.     In the instances where Plaintiff Diakite worked at the first (1st) floor of Rick's (*i.e.,* the main floor), Hoops, and Vivid, Plaintiff Diakite was not paid *any* wages for the hours he worked.

99.     Instead, Plaintiff Diakite's compensation exclusively consisted of gratuities.

100.     Throughout his employment, Defendants required Plaintiff Diakite to purchase "tools of the trade", including *inter alia*, cologne, mints, gum, mouthwash and air deodorizer.

101.     Throughout his employment, Plaintiff Diakite typically spent $100 or $200 once every two (2) weeks, restocking his "tools of the trade".

102.     Defendants never reimbursed Plaintiff Diakite the $100 or $200 it cost him, each time, to restock on his "tools of the trade".

103.     Defendants also required Plaintiff Diakite, and other similarly situated individuals, to pay a weekly "house fee" of $40.

*Factual Allegations Pertaining Specifically to Plaintiff Samb*

104.     Plaintiff Samb was an employee of Defendants.

105.     Plaintiff Samb worked as a bathroom attendant at Hoops from on or around February 2021 to, through and including August 2021.

106.     Plaintiff Samb worked as a bathroom attendant at Rick's from on or around September 2021 to, through and including the present date.

107.     From approximately February 2021 to, through and including August 2021, Plaintiff Samb worked four (4) days a week (typically, Wednesdays, Thursdays, Fridays and Saturdays): from approximately 8:30 p.m. or 9:00 p.m. to 3:30 a.m. or 4:00 a.m., (*i.e.,*

approximately 6.5 to 7.5 hours each day), and for a total period of approximately 26 to 30 hours during each of the weeks, respectively.

108.   From approximately September 2021 to, through and including the present date, Plaintiff Samb worked one (1) to two (2) days a week (typically Mondays and/or Sundays): 8:30 p.m. or 9:00 p.m. to 3:30 a.m. or 4:00 a.m., (*i.e.,* approximately 6.5 to 7.5 hours each day), and for a total period of approximately 6.5 to 15 hours during each of the weeks, respectively.

109.   From approximately February 2021 to, through and including August 8, 2023, Plaintiff Samb was not paid *any* wages for the hours he worked at Rick's or Hoops.

110.   Plaintiff Samb's compensation exclusively consisted of gratuities received directly from patrons.

111.   Throughout his employment, Defendants directed Plaintiff Samb to work interchangeably at their nightclubs, *to wit*: the first (1st) floor (*i.e.,* the main floor) of Rick's, the third (3rd) floor of Rick's (*i.e.,* the Champagne Room), Hoops, and Vivid.

112.   In the instances where Defendants Plaintiff Samb worked at the third (3rd) floor of Rick's (*i.e.,* the Champagne Room), Plaintiff Diop would get paid a flat rate of $90 per shift, regardless of how many hours he worked, in addition to his gratuities.

113.   In these instances, at the end of Plaintiff Samb's shift, he would get paid: (i) $40 per shift directly from the bar at Rick's; and (ii) $50 per shift directly from the "cage" at Rick's, *i.e.*, the in-house bank, where patrons, exotic dancers, and bathroom attendants, would exchange real currency and "funny money".

114.   Throughout his employment, Plaintiff Samb typically spent $200 or $300 once every two (2) weeks, restocking his "tools of the trade".

115.   Defendants never reimbursed Plaintiff Samb the $200 or $300 it cost him, each

time, to restock on his "tools of the trade".

*Factual Allegations Pertaining to all Plaintiffs*

116.    As bathroom attendants, Plaintiffs' primary duties and responsibilities consisted of turning on the tap for bathroom patrons, providing soap and towels to bathroom patrons, and offering bathroom patrons various items, including, *inter alia*, cologne, mints, gum, mouthwash, and air deodorizer.

117.    Plaintiffs' primary duties and responsibilities also consisted of cleaning the bathroom counter and water basin, and cleaning and unclogging the bathroom toilets.

118.    In addition to providing traditional bathroom attendant services, Plaintiffs' primary duties and responsibilities also included monitoring patron activity to discourage drug use, illegal activities, and any other behavior standards that Defendants considered to be unruly.

119.    For example, Plaintiffs were responsible for immediately informing Defendants' security guards if they saw a patron: (i) vomit, or become visibly intoxicated; (ii) try and bring an entertainer into the bathroom; (iii) try and enter the bathroom stall with another patron; (iv) smoke; or (v) do drugs.

120.    Throughout their employment, Defendants directed Plaintiffs to work interchangeably at their nightclubs, *to wit*: the first (1st) floor (*i.e.,* the main floor) of Rick's, the third (3rd) floor of Rick's (*i.e.,* the Champagne Room), Hoops, and Vivid.

121.    Beginning in or around 2019, Defendants created their own, in-house currency (*i.e.,* "funny money").

122.    "Funny money" is a fake currency, created by Defendants, and issued to patrons who wished to pay for services at Defendants' Nightclubs via credit card.

123.    Patrons would occasionally tip Plaintiffs, and all similarly situated individuals, in

"funny money".

124.    Plaintiffs', and all similarly situated individuals', who were tipped in "funny money" were forced to re-convert the "funny money" back into real currency, at the end of their shifts.

125.    Defendants unlawfully withheld approximately 2% of any "funny money" gratuities that Plaintiffs, and all similarly situated individuals, received, and re-exchanged at the end of their shifts.

126.    As the managers and owners of Defendants' Nightclubs, Defendants should not have taken a share of Plaintiffs', and all similarly situated individuals' tips.

127.    The employer-mandated tip sharing scheme imposed on Plaintiffs, and all similarly situated individuals, is not customary.

128.    The employer-mandated tip sharing imposed on Plaintiffs was not reasonable.

129.    Defendants did not establish, maintain, and preserve records as required by law, or did not make any such records available to Plaintiffs or other participants in the mandated tip sharing scheme, that included: (1) a daily log of the tips collected by each employee on each shift, whether in cash or by credit card; (2) a list of occupations that the employer deemed eligible to receive tips through tip sharing; (3) the shares of tips that each occupation was scheduled to receive from tip sharing; and (4) the amount in tips that each employee received from the tip share by date.

130.    Defendants did not post in a conspicuous place notices issued by the Department of Labor about wage and hour laws, tip appropriations, or illegal deduction provisions.

131.    Plaintiffs' work duties required neither discretion nor independent judgment.

132.    No notification, either in the form of posted notices, or other means, was ever given

to Plaintiffs regarding wages are required under the FLSA or NYLL.

133.    Defendants did not provide Plaintiffs a statement of wages, as required by NYLL 195(3).

134.    Defendants did not give any notice to Plaintiffs of their rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

135.    Defendant's failure to provide accurate wage notices and accurate wage statements denied Plaintiffs their statutory right to receive true and accurate information about the nature of their employment and related compensation policies.

136.    Moreover, the breach of Defendants' obligations injured Plaintiffs by denying them the right to know the conditions of their compensation and resulted in the underpayment of wages averred above.

137.    Plaintiffs were ostensibly employed as tipped workers. However, they were required to spend a considerable part their workday performing non-tipped duties, including but not limited to cleaning the bathroom counter and water basin, and cleaning and unclogging the bathroom toilets (collectively, the "non-tipped duties").

138.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as tipped workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the prevailing minimum wage rate and enabled them to pay Plaintiffs at or below the tip-credit rate.

139.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y.C.R.R. §146.

## FLSA COLLECTIVE ACTION ALLEGATIONS

140.    Plaintiffs brings the First, Fifth and Ninth Claims for Relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. §216(b), on behalf of all non-exempt bathroom attendants employed by Defendants on or after the date that is three years before filing of the initial Complaint in this case, as defined herein ("FLSA Collective Plaintiffs").

141.    At all relevant times, Plaintiffs and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines and rules willfully failing and refusing to pay them at the legally required minimum wages, requiring them to purchase "tools of the trade", requiring them to pay a weekly "house fee", and unlawfully deducting a percentage of "funny money" gratuities were received by patrons. These claims of the Plaintiffs are essentially the same as those of the FLSA Collective Plaintiffs.

142.    The First, Fifth and Ninth Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to under FLSA §16(b), 29 U.S.C. §216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and others related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

143.    Plaintiffs reserve the right to re-define the FLSA Collective Plaintiffs prior to notice or collective certification, and thereafter, as necessary.

## RULE 23 CLASS ACTION ALLEGATIONS

144.    Plaintiffs brings the Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth

Claims for Relief as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Fed.R.Civ.P."), on behalf of all non-exempt bathroom attendants employed by Defendants on or after the date that is six years before filing of the initial Complaint in this case, as defined herein (the "Class").

145.    The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

146.    Upon information and belief, the size of the Class is at least 50 individuals.

147.    Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

148.    The state law causes of action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a)  whether Defendants employed Plaintiffs and the Class Members under the NYLL;

(b)  whether Defendants violated Articles 6 and 19 of the NYLL and supporting NYDOL Regulations;

(c)  whether Defendants refused to pay Plaintiffs and the Class members minimum wages for all hours worked;

(d)  whether Defendants requiring Plaintiffs and the Class members to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and

"tools of the trade";

(e)  whether it was Defendants' policy or practice to make unlawful deductions from the wages of Plaintiffs and the Class

(f)  whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Class members, and other records required by the NYLL;

(g)  whether it was Defendants' policy or practice to fail to furnish Plaintiffs and the Class with an accurate statement of wages, hours worked, rates paid, and gross wages as required by the NYLL;

(h)  whether Defendants' policy of failing to pay workers in accordance with New York law was instituted willfully or with reckless disregard of the law; and

(i)  the nature and extent of class-wide injury and the measure of damages for those injuries.

149.    Plaintiffs' claims are typical of the claims of the Class.

150.    Plaintiffs and the members of the Class work or have worked for Defendants and have been subjected to their policy and pattern or practice of misclassifying them as independent contractors, failing to pay lawful wages, requiring them to pay, without reimbursement, the costs and expenses for purchasing "tools of the trade", making unlawful deductions to their pay, and failing to keep adequate records.

151.    Plaintiffs and the Class members enjoy the same statutory rights under the NYLL to be paid for all hours worked.

152.    Plaintiffs and the members of the Class all have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

153.    Plaintiffs and the members of the Class all have been injured in that they have been

uncompensated or under-compensated due to Defendants' common policies, practices, and patterns.

154.    Defendants acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief with respect to the Class appropriate.

155.    Plaintiffs will fairly and adequately represent and protect the interests of the Class.

156.    Plaintiffs understand that, as the class representatives, they assume a fiduciary responsibility to the Class to represent its interests fairly and adequately.

157.    Plaintiffs recognize that as the class representatives, they must represent and consider the interests of the Class just as they would represent and consider their own interests.

158.    Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor they own interests over those of the Class.

159.    Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.

160.    Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

161.    Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

162.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

163.    The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.

164.    Although the relative damages suffered by individual members of the Class are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation.

165.    In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

**FIRST CLAIM**
**(FLSA – Unpaid Minimum Wages, 29 U.S.C. § 201 *et seq*.)**

166.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

167.    Defendants willfully and intentionally failed to compensate the Plaintiff with the applicable minimum hourly wage in violation of the FLSA, 29 U.S. Code § 206.

168.    Defendants have failed to make a good faith effort to comply with the FLSA with respect to compensation of Plaintiffs.

169.    Due to Defendants' violations of the FLSA, Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, pursuant to the FLSA, all in an amount to be determined at trial. 29 U.S.C. § 216(b).

**SECOND CLAIM**
**(NYLL – Unpaid Minimum Wages, N.Y. Stat. § 650 *et seq*.)**

170.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

171.    Defendants willfully and intentionally failed to compensate the Plaintiffs with the applicable minimum hourly wage in violation of the NYLL §650 *et seq*.

172.    Defendants have failed to make a good faith effort to comply with the NYLL with respect to compensation of Plaintiffs.

173.    Due to Defendants' violations of the NYLL, Plaintiffs, on behalf of themselves and the Class, are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, in an amount to be determined at trial, pursuant to the NYLL § 663.

### THIRD CLAIM
### (NYLL WTPA– Failure to Provide Wage Notices)

174.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

175.    The NYLL and the WTPA require employers to provide all employees with a written notice of wage rates at the time of hire.

176.    In violation of NYLL §195 (1), Defendants failed to furnish to Plaintiffs at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address, if different; the telephone number of the employer, and anything otherwise required by law.

177.    Due to Defendants' violations of NYLL §195 (1), Plaintiffs, on behalf of

themselves and the Class,  are entitled to recover their liquidated damages, reasonable attorney's fees and cost and disbursement of the action, pursuant to the NYLL §198 (1-b).

## FOURTH CLAIM
### (Violation of the Wage Statement Provisions of the NYLL)

178.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

179.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each of the following the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; the number of regular hours worked; the number of overtime hours worked, as required by the NYLL § 195(3).

180.    As a result of Defendant's violation of the WTPA, Plaintiffs, on behalf of themselves and the Class, are entitled to damages of at least $150 per week during which the violations occurred.

## FIFTH CLAIM
### (Recovery of Equipment Costs - FLSA)

181.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

182.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA, including *inter alia*, cologne, mints, gum, mouthwash, and air deodorizer. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35.

183.    These expenses incurred by Plaintiffs reduced their wages below the minimum thresholds under the FLSA.

184.    Due to Defendants' violations of the FLSA, Plaintiffs, on behalf of themselves and

FLSA Collective Plaintiffs, have suffered damages in an amount to be determined at trial, are entitled to recover from Defendants, jointly and severally, such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to the NYLL.

**SIXTH CLAIM**
**(Recovery of Equipment Costs - NYLL)**

185.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

186.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the NYLL, including *inter alia*, cologne, mints, gum, mouthwash, and air deodorizer. N.Y. Lab. Law §§ 193 and 198-b.

187.    These expenses incurred by Plaintiffs reduced their wages below the minimum thresholds under the NYLL.

188.    Due to Defendants' violations of the FLSA, Plaintiffs, on behalf of themselves and the Class, have suffered damages in an amount to be determined at trial, are entitled to recover from Defendants, jointly and severally, such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to the NYLL.

**SEVENTH CLAIM**
**(Unlawful Deductions from Tips – NYLL)**

189.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

190.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

191.    New York State Labor Law § 196-d prohibits any employer or his agents, including

28

owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

192.    Defendants unlawfully misappropriated a portion of Plaintiffs' gratuities that were received from patrons.

193.    Defendants knowingly and intentionally retained a portion of Plaintiffs' gratuities in violations of the NYLL and supporting Department of Labor Regulations.

194.    Due to Defendants' violations of the FLSA, Plaintiffs, on behalf of themselves and the Class, have suffered damages in an amount to be determined at trial, are entitled to recover from Defendants, jointly and severally, such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to the NYLL.

### EIGHTH CLAIM
### (NYLL – Unlawful Deductions)

195.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

196.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

197.    New York State Labor Law § 195-2.1 prohibits any employer or his agents, including owners and managers, from making any deductions from wages, including, *inter alia*, deductions for repayments of loans, advances and overpayments; employee "tools of the trade"; recoupment of unauthorized expenses; repayment of employer losses, including cash shortages; fines or penalties for tardiness; and fees, interest or the employer's administrative costs. *See* NYLL § 195.2-1.

198.    Defendants unlawfully misappropriated a portion of Plaintiff Diakite's, and other

similarly situated individuals', wages, by requiring them to pay a weekly "house fee" of $40.

199.    Defendants knowingly and intentionally retained a portion of Plaintiffs' wages in violations of the NYLL and supporting Department of Labor Regulations.

200.    Plaintiffs were damaged in an amount to be determined at trial.

### NINTH CLAIM
### (Unlawful Wage Deductions – FLSA)

201.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

202.    Defendants have made unlawful deductions and required kickbacks from Plaintiffs' wages, including but not limited to, deductions from Plaintiffs' gratuities that were received from patrons, as well as requiring Plaintiff Diakite, and other similarly situated individuals, to pay a weekly "house fee" of $40.

203.    The deductions made from Plaintiffs' wages have not been authorized or required by law.

204.    The deductions made from Plaintiffs' wages have not been expressly authorized in writing by Plaintiffs, and have not been for Plaintiffs' benefit.

205.    Through their knowing or intentional efforts to permit unauthorized deductions from Plaintiffs' wages, Defendants have willfully violated the FLSA. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35.

206.    Due to Defendants' willful violations of the FLSA, Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the FLSA, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, respectfully requests that this Court enter a judgment:

a.   authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as nonexempt bathroom attendants;

b.   issuance of notice pursuant to 29 U.S.C. § 216(b), to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the FLSA Collective Plaintiffs;

c.   certification of the state law claims in this action as a class action pursuant to Fed.R.Civ.P. 23;

d.   designation of Plaintiffs as class representatives;

e.   declaring that Defendants violated the minimum wage provisions of the FLSA, the NYLL and the NYDOL regulations;

f.   declaring that Defendants violated the unlawful deduction provisions of the NYLL and NYDOL Regulations;

g.   declaring that Defendants violated the unlawful deduction provisions of the FLSA;

h.   declaring that Defendants violated the notice statement pay provisions of the NYLL and WTPA;

i.   awarding Plaintiffs unpaid minimum wages;

j.   awarding Plaintiffs' costs for "tools of the trade";

k.   awarding Plaintiffs unlawfully deducted wages;

l.   awarding Plaintiffs unlawfully deducted gratuities;

m.   awarding Plaintiffs liquidated damages in an amount equal to the total amount of wages found to be due;

n.   awarding unpaid wages under the NYLL and the New York State contract law;

o.   awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish

31

accurate wage notice pursuant to the NYLL;

p.     awarding Plaintiffs pre- and post-judgment interest under the NYLL;

q.     awarding Plaintiffs reasonable attorneys' fees and the costs and disbursements of this action; and

r.     Such other relief as this Court deems just and proper.

Dated: New York, New York
       November 15, 2023

Respectfully submitted,

By:  /s/ Jason Mizrahi
     Jason Mizrahi
     Joshua Levin-Epstein
     Levin-Epstein & Associates, P.C.
     60 East 42nd Street, Suite 4700
     New York, New York 10165
     Tel: (212) 792-0048
     Email: Jason@levinepstein.com
     *Attorneys for the Plaintiffs, the proposed FLSA Collection Action Plaintiffs, and the proposed Class*