# LEVIN-EPSTEIN & ASSOCIATES, P.C.

60 East 42nd Street • Suite 4700 • New York, New York 10165
T: 212.792.0048 • E: Jason@levinepstein.com

February 9, 2024

**VIA ECF**
The Honorable Dale E. Ho, U.S.D.J.
U.S. District Court, Southern District of New York
40 Foley Square
New York, NY 10007

      Re:  *Mbaye et al v. RCI Hospitality Holdings, Inc. et al*
         **Case No.: 23-cv-02967**

Dear Honorable Judge Ho:

  This law firm represents Plaintiffs Elhadji Mbaye ("Mbaye"), Modou Diop ("Diop") Tahirou Diakite ("Diakite") and Talla Samb ("Samb", and collectively, the "Plaintiffs"), on behalf of themselves and others similarly situated in the proposed Fair Labor Standards Act ("FLSA") collective Action, in the above-referenced matter.

  This letter is submitted jointly with Defendants RCI Hospitality Holdings, Inc. ("RCIHH"), Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret) (collectively, the "Corporate Defendants"), Eric Langan, and Kes Senevi (collectively, the "Individual Defendants", and with the Corporate Defendants, the "Defendants")

  Pursuant to the directives in Your Honor's January 29, 2024 Order [Dckt. No. 67], the instant joint letter respectfully serves to provide the Court with a status update regarding the details of Plaintiffs' motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) [Dckt. Nos. 52-58] (the "Motion for Conditional Certification").

**Plaintiffs' Position**

  By way of background, the parties reached an agreement-in-principle as to Plaintiffs' Motion for Conditional Certification on or around January 26, 2024. [*See* Dckt. No. 66; *see also* Dckt. Nos. 65 and 67].

  Over the course of multiple meet-and-conferral phone calls and emails, the parties have narrowed the open issues to:

1. The locations of where the FLSA notice and consent forms will be posted at Rick's[1], Hoops[2] and Vivid[3]; and

---

[1] "Ricks" refers to: Rick's Cabaret, located at: 50 West 33rd St., New York, NY 10001.
[2] "Hoops" refers to Hoops Cabaret, located at 48 West 33rd St., New York, NY 10001.
[3] "Vivid" refers to Vivid Cabaret, located at 61 West 37th St., New York, NY 10018.

1

2. Defendants' efforts to locate the identities & contact information[4] of the Covered Employees (*i.e.,* all current and former non-exempt bathroom attendants employed by Defendants at any time from April 8, 2020 to the date on which the Court conditionally certifies the FLSA Collective (the "Covered Employees").

**A. Posting of the FLSA Notice and Consent Forms**

With respect to the first open issue (*i.e.,* the locations of where the FLSA notice and consent forms will be posted) Defendants agree to post the notices and consent forms: "***solely*** near the 'cage' at each Club." (Emphasis added). Defendants have not provided any explanation as to why this should be the sole permitted form of notice, within the Clubs.

As set forth in each of the affidavits, submitted in support of Plaintiffs' Motion for Conditional Certification, the "cage" is primarily where customers and exotic dancers would exchange real currency and "funny money." [*See*, *e.g.,* Dckt. No. 54 at ¶ 82; Dckt. No. 55 at ¶ 60; Dckt. No. 56 at ¶ 73; and Dckt. No. 57 at ¶ 73]. In each of the affidavits, Plaintiffs attested that there are other non-public spaces, at each Club, that bathroom attendants frequent, including, *inter alia*, locker rooms, storage rooms, maintenance closets, and non-public stairwells. [*See, e.g.,* Dckt. No. 54 at ¶¶ 35-38; Dckt. No. 55 at ¶¶ 29-32; Dckt. No. 56 at ¶ 36; and Dckt. No. 57 at ¶ 32, 33].

Thus, Plaintiffs request permission to prominently post the FLSA notice and consent forms: (i) near the "cage"; (ii) on employee bulletin boards; (iii) the maintenance closets; ***and*** (iv) in non-public spaces at each Club, where they will be easily visible to Covered Employees, including, without limitation: locker rooms, storage rooms, maintenance closets, and non-public stairwells.

The workplace posting the notice and consent forms in more than one location at each Club is appropriate, where, as here, bathroom attendants at Rick's, Hoops and Vivid, typically spend their entire shifts in the bathroom. "Posting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in. *Yap v. Mooncake Foods, Inc.*, 146 F Supp 3d 552, 567 (S.D.N.Y. 2015) (citing *Mendoza v. Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *9 (S.D.N.Y. 2013).

**B. Defendants' Provision of Contact Information**

With respect to the second open issue (*i.e.,* Defendants' efforts to locate the identities & contact information[5] of the Covered Employees) Defendants have not explained, exactly ***what*** measures have been taken, to meaningfully locate the identities and contact information of the Covered Employees.

---

[4] Plaintiffs are specifically seeking the production, in Excel format, of names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers of all Covered Employees within ten (10) days of Court approval of conditional certification.
[5] *Id*.

2

On January 23, 2024, Defendants' counsel represented that "[they] have prepared a spreadsheet with the information of…(four) [4] bathroom attendants."

On January 25, 2024, Plaintiffs' counsel requested that Defendants' counsel provide an explanation as to:

"What measures [Defendants' have taken] to locate the identities & information of the other restroom attendants…

What measures [Defendants' counsel has taken] to verify [Defendants'] position that they only have four (4) other restroom attendants?

As of the date of this submission, Defendants' counsel not explained what, specific, measures have been taken, to meaningfully locate the identities and contact information of the Covered Employees.

Nor has Defendants' counsel explained, in detail, what steps they have taken, to verify their client's position.

It strains credibility that Defendants have only located the names and contact information for four (4) other bathroom attendants, all of whom are purportedly currently employed at Defendants' Clubs.

As noted in detail in Plaintiffs' Motion for Conditional Certification, Defendants have materially contradicted themselves, intentionally omitted critical information, and haven taken conflicting positions, throughout the instant action.[6]

In "early August 2023", *i.e.*, after the filing of the instant action, on April 8, 2023 [Dckt. No. 1], and around the filing of Plaintiffs' emergency preliminary injunction, on August 10, 2023 [Dckt. Nos. 16-19], Defendants allegedly made the sudden "decision to discontinue their practice of contracting for restroom attendants through a third party and…to directly employ restroom attendants instead."[7] Thus, it is undisputed that Defendants are in possession of the identities and contact information concerning currently-employed bathroom attendants.

However, Defendants have seemingly refused to disclose any information concerning any bathroom attendants performing services *prior* to August 2023. This goes at odds with Defendants' position, reflected in at least five (5) Court filings[8], including a declaration filed on August 18, 2023, signed under penalty of perjury under 28 U.S.C. § 1746 [Dckt. No. 24] (the "Kevlin Decl."), that:

---

[6] [*See* Dckt. No. 53 at pp. 7, 8, 9, 12, 15].
[7] [*See* Dckt. No. 53 at p. 15].
[8] *To wit*: (i) Defendants' October 4, 2023 Answer with Affirmative Defenses [Dckt. No. 41]; (ii) Defendants' August 21, 2023 memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction [Dckt. No. 23]; (iii) the August 21, 2023 declaration of Shaun Kevlin, signed under penalty of perjury under 28 U.S.C. § 1746 [Dckt. No. 24]; (iv) Defendants' position statement in the October 19, 2023 joint letter [Dckt. No. 43]; and (v) Defendants' November 29, 2023 Answer with Affirmative Defenses [Dckt. No. 51].

3

1. Prior to August 2023, Defendants' bathroom attendants were "brought in", "scheduled, and assigned to work" at various restrooms in Defendants' Nightclubs, by a third-party (*i.e.,* **Mostapha Thiam**)[9] – Defendants' "house" bathroom attendant, identified in Plaintiffs' affidavits submitted in support of Plaintiffs' Motion for Conditional Certification [*see* Dckt. No. 54 at ¶¶ 100-103, 106; Dckt. No. 57 at ¶¶ 92-94]) pursuant to an "arrangement".[10]

Defendants inability to disclose any information concerning any bathroom attendants performing services *prior* to August 2023 also goes at odds with the fact that:

1. Prior to August 2023, Defendants maintained "Restroom Attendant Agreements" for their bathroom attendants [*see* Dckt. No. 53 at pp. 10-15]; and

2. Prior to August 2023, bathroom attendants were required to present Defendants with a social security card, to re-convert "funny money" back into real currency. [*See* Dckt. No. 54 at ¶ 86; Dckt. No. 55 at ¶ 64; Dckt. No. 56 at ¶ 83; Dckt. No. 57 at ¶ 87].

3. Prior to August 2023, Defendants engaged bathroom attendants to monitor patron activity to discourage drug use, illegal activities, and any other behavior standards that Defendants considered to be unruly. [*See* Dckt. No. 53 at pp. 1-2, 12; Dckt. No. 54 at ¶¶ 16, 48; Dckt. No. 55 at ¶¶ 20, 67; Dckt. No. 56 at ¶ 21, 68; Dckt. No. 57 at ¶¶ 20, 68].

Out of an abundance of caution, it is respectfully submitted that the Court enter an Order directing Defendants:

1. To refrain from destroying, concealing, altering or disposing of in any manner, any potentially discoverable materials related to the identities and contact information[11] of the Covered Employees, including, *inter alia*:

   a. any WhatsApp messages, emails, and text messages, in original meta data format with the "third party" (*i.e.,* Mostapha Thiam) through whom Defendants allegedly contracted restroom attendants;

---

[9] Upon information and belief, this individual is also known as Mostapha Diop, and is most commonly known, simply as "Mostapha".

[10] *Id.* at ¶¶ 3-4 ("Prior to August 2023, restroom attendants were not employees of the Clubs, but rather the Clubs had an arrangement with a third party who brought in the bathroom attendants. During this period of time, restroom attendants were scheduled and assigned to work at various restrooms in the Clubs by this third party."); Dckt. No. 43 at ¶ I(B) ("[Bathroom attendants] were not employees of Defendants…"Plaintiffs…were rather contracted for through a third party…").

[11] Plaintiffs are specifically seeking the production, in Excel format, of names, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers of all Covered Employees within ten (10) days of Court approval of conditional certification.

    b. any written or electronically stored documents or records of any kind detailing the "arrangement" in place by and between Defendants and the "third party" (*i.e.,* Mostapha Thiam) through whom Defendants allegedly contracted restroom attendants; or

    c. any other "Restroom Attendant Agreements" concerning Covered Employees.

2. To file an affidavit, submitted under penalty of perjury, explaining what measures were taken to locate the identities & information of the Covered Employees.

**Defendants' Position**

As an initial matter, Defendants respectfully advise that Court that instead of seeking to resolve these issues by conferring with Defendants' counsel, Plaintiffs' counsel sent a draft of this "status letter" today at 12:20 pm asking Defendants to include their positions with respect to Plaintiffs' inappropriate request that this Court issue certain orders. Indeed, Defendants stated their latest positions regarding the matters noted herein on Tuesday of this week and did not receive a response until Plaintiffs' counsel sent this proposed letter. The parties were discussing a negotiated resolution of Plaintiffs' motion for conditional collective certification. Unless the parties reach a full agreement, there is no agreement as to any aspects of the collective pending motion. Defendants were under the impression both sides were working in good faith to resolve any open issues and Defendants were expecting and certainly willing to further discuss resolution of these issues, but instead Plaintiffs' counsel unilaterally decided to draft a joint-letter to the Court baselessly asking for a multitude of unwarranted relief and asked Defendants to write their position at the 11th hour.

    **A.**    **Posting of the FLSA Notice and Consent Forms**

Despite the fact that Defendants have agreed (but only in connection with a fully agreed upon resolution to all outstanding issues) to distribution of notices via mail, email, and text message, as well as posting near the "cages" at the Club, Plaintiffs now demand postings of the notice at multiple additional locations throughout each Club including employee bulletin boards; the maintenance closets; and other unspecified "non-public" spaces at each Club. To be clear, there are only four potential collective members (excluding any plaintiffs currently in this case) that are currently employed at the Clubs. It should also be noted that Defendants initially suggested posting notices in locker rooms where restroom attendants congregate. After Plaintiffs' counsel asserted that such a posting would not be sufficient, Defendants' counsel offered, as an alternative, posting the notices at the "cages." Since making this suggestion, Defendants had not heard a counterproposal from Plaintiffs' counsel until receipt this letter today with Plaintiffs' absurd demands.

Courts do not always permit posting of notices at the workplace given the potential disruption to the employer-employee relationship. *See e.g., Islam v. LX Ave. Bagels, Inc.*, No. 18CIV04895RARWL, 2019 WL 5198667, at *11 (S.D.N.Y. Sept. 30, 2019). This is especially the

case where plaintiffs have not shown that the notices will not reach the intended recipients through other agreed upon methods. *Id*. ("[a]lthough Plaintiffs cite a number of the cases in which courts have permitted posting of notice at places of business, Plaintiffs have not provided any basis to conclude that there will be any problem reaching current employees though mail or email."): *Michael v. Bloomberg L.P.*, No. 14-CV-2657 TPG, 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015 ("absent a showing that a significant number of notices were returned as undeliverable, courts have refused to require posting of a collective action notice in the workplace.").

Here, in addition to other methods of notification, Defendants have agreed to conspicuously post notices, either in the locker room or near the "cages" at each Club where they will be undoubtedly visible to any bathroom attendant who works at the Clubs. Plaintiffs do not dispute that such a posting will be visible bathroom attendants but instead ask this Court, without sufficient basis, to order Defendants to wallpaper the Clubs with notices in a multitude of other locations around the Club.

### B. Defendants' Provision of Contact Information

Contrary to Plaintiffs' claims, Defendants have indeed explained, on more than one occasion, to Plaintiffs' counsel, their efforts to identify potential collective members and their respective contact information. Indeed, Defendants' counsel told counsel for Plaintiffs that Defendants can identify current bathroom attendants by reviewing the Clubs' records because after August 2023, the Clubs converted certain bathroom attendants to employees. Prior to August 2023, bathroom attendants were staffed through a third party named Mustafa Diop and were not employees of the Clubs. During that period, to the best of Defendants' knowledge, no employees of the Clubs kept records of contact information for these individuals. To identify these individuals, Defendants asked Mr. Diop for the names and contact information of every bathroom attendant who worked at the Clubs from April 2020 to the present. In total, Defendants have identified four additional bathroom attendants, excluding the current Plaintiffs in this case.

During a phone call on January 26, 2024, Plaintiffs' counsel expressed concern regarding the small number of potential collective members. Defendants explained the reasons there were so few and suggested that Plaintiffs' counsel ask the several current Plaintiffs if they are aware of any additional names. Plaintiffs' counsel provided names of other individuals who Plaintiffs asserted were bathroom attendants during the relevant time period. However, the individuals identified were either (1) never bathroom attendants (*i.e*. held different positions at the Clubs); or (2) only worked as bathroom attendants at the Clubs prior to the relevant time period. Defendants' counsel relayed this information Plaintiffs' counsel on Tuesday of this week, but did not receive a response until Plaintiffs' counsel sent this proposed status letter. Moreover, as Defendants' counsel previously advised counsel for Plaintiffs', if their clients are aware of any additional potential collective members, Defendants are more than willing to look into whether these individuals were bathroom attendants at the Clubs during the relevant time period, and provide their contact information if such information can be obtained from Mr. Diop or otherwise.

Plaintiffs assert that it "strains credibility that Defendants have only located the names and contact information for four (4) other bathroom attendants." As previously explained to Plaintiffs' counsel, the number of bathroom attendants between April 2020 and the present can be explained

by the fact that the Clubs were closed for months on end during the COVID-19 pandemic and even when the Clubs are open, there are many days and shifts in which there are no bathroom attendants. As common sense would dictate, given that, when there is a bathroom attendant present, there is only one attendant in a bathroom at a time, there simply are not a large number of individuals who work at the Clubs as bathroom attendants. There is no basis for Plaintiffs' purported "skepticism" towards the information Defendants have gathered for the purposes of stipulating to conditional collective certification.

It should also be stressed that Plaintiffs cannot pick and choose what aspects of a resolution of this motion they will agree to and then ask this Court to grant them relief on what they consider the outstanding issues. There is no agreement unless there is a full agreement between the parties, or the parties agreed to jointly ask this Court to resolve any remaining issues (which they have not). Accordingly, Defendants respectfully request the Court deny all relief sought by Plaintiffs in this joint letter.

We thank the Court for its attention to this matter, and are available at the Court's convenience to answer any questions related to the foregoing.

    Respectfully submitted,

    LEVIN-EPSTEIN & ASSOCIATES, P.C.

    By: */s/ Jason Mizrahi*
        Jason Mizrahi
        60 East 42nd Street, Suite 4747
        New York, NY 10170
        Tel. No.: (212) 792-0048
        Email: Jason@levinepstein.com
        *Attorneys for Plaintiffs*

VIA ECF: All Counsel