**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Elhadji Mbaye, Modou Diop, Tahirou Diakite, and Talla Samb, *on behalf of themselves and others similarly situated in the proposed FLSA Collective Action and in the proposed Class*,

　　　　　　*Plaintiffs,*

- against -

RCI Hospitality Holdings, Inc., Peregrine Enterprises Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret), Eric Langan, and Kes Senevi,

　　　　　　*Defendants.*

Case No.: 1:23-cv-02967-DEH

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

Dated: November 7, 2024

**AKERMAN LLP**

Jeffrey A. Kimmel
M. Adil Yaqoob
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel: (212) 880-3800
Email: jeffrey.kimmel@akerman.com
　　　　adil.yaqoob@akerman.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ......................................................................................................... 7

POINT I SUMMARY JUDGMENT SHOULD BE GRANTED  IN FAVOR OF DEFENDANTS ON ALL OF PLAINTIFFS' CLAIMS ...................................... 7

    A.    Standard For Summary Judgment ................................................. 7

    B.    Plaintiffs Were Independent Contractors Under the FLSA ...................... 8

        a.    The Clubs Did Not Exercise Control Over Plaintiffs .................. 10

        b.    Plaintiffs Made Significant Investments In Their Businesses And Faced Opportunities For Profit And Risks Of Loss .......................................................................... 12

        c.    Plaintiffs' Success Depended On Their Skill and Initiative ..................................................................................... 13

        d.    Plaintiffs' Undisputed Control Over The Duration And Permanence Of Their Relationship with the Clubs Favors Independent Contractor Status ....................................... 14

        e.    Restroom Attendants Are Not Integral to the Club's Business ..................................................................................... 14

    C.    Plaintiffs Were Not Employees Of The Clubs Under The NYLL ............ 15

        a.    Plaintiffs Worked At the Clubs At Their Own Convenience ................................................................................. 16

        b.    Plaintiffs Were Free To Engage In Other Work ........................... 17

        c.    Plaintiffs Did Not Receive Any Employee Benefits ................... 18

        d.    Plaintiffs Were Not On Defendants' Payrolls ............................. 18

POINT II RCI HOSPITALITY HOLDINGS INC. SHOULD BE DISMISSED AS A DEFENDANT ................................................................................. 18

CONCLUSION ..................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................7

*Barfield v. N.Y. City Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008)....................................................................................9

*Benzinger v. Lukoil Pan Americas, LLC*,
  447 F. Supp. 3d 99 (S.D.N.Y. 2020).....................................................................18

*Binder & Binder PC v. Barnhatrt*
  481 F.3d 141 (2d Cir. 2007)....................................................................................7

*Browning v. Ceva Freight*,
  LLC, 885 F. Supp. 2d 590 (E.D.N.Y. 2012)................................................ passim

*Bynog v. Cipriani Grp., Inc.*,
  1 N.Y.3d 193, 770 N.Y.S.2d 692 (2003) ..............................................................15

*Carusillo v. Fansided, Inc.*,
  No. 20-CV-4766(JPO), 2021 WL 4311167 (S.D.N.Y. Sept. 21, 2021) ...................9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................7

*Chao v. Mid-Atlantic Installation Servs., Inc.*,
  16 F. App'x 104 (4th Cir. 2001) .......................................................................9, 13

*Cox v. German Kitchen Ctr. LLC*,
  No. 17CIV6081GBDJW, 2023 WL 8648839 (S.D.N.Y. Dec. 14, 2023)................9

*D'Amico v. City of N.Y.*,
  132 F.3d 145 .............................................................................................................7

*Deboissiere v. Am. Modification Agency*,
  No. 09-CV-2316(JS)(MLO), 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010)..........15

*Franze v. Bimbo Foods Bakeries Distribution*,
  LLC, No. 17-CV-3556(NSR), 2019 WL 2866168 (S.D.N.Y. July 2, 2019) ...................13, 15

*Godlewska v. HDA*,
  916 F. Supp. 2d 246 (E.D.N.Y. 2013), *aff'd sub nom.*
  *Godlewska v. Hum. Dev. Ass'n, Inc.*, 561 F. App'x 108 (2d Cir. 2014)...................11

*Hart v. Rick's Cabaret Int'l, Inc.*,
  967 F. Supp. 2d 901 (S.D.N.Y. 2013)......................................................................8

*Kerzer v. Kingly Mfg.*,
  156 F.3d 396 (2d Cir. 1998)...................................................................................7

*Landaeta v. New York & Presbyterian Hosp., Inc.*,
  No. 12 CIV. 4462 JMF, 2014 WL 836991 (S.D.N.Y. Mar. 4, 2014)......................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)................................................................................................7

*Preacely v. AAA Typing & Resume, Inc.*,
  No. 12 CIV. 1361 AT RLE, 2015 WL 1266852 (S.D.N.Y. Mar. 18, 2015) ............9

*Razak v. Uber Techs., Inc.*,
  No. CV 16-573, 2018 WL 1744467 (E.D. Pa. Apr. 11, 2018) ...............................9

*Saleem v. Corp. Transp. Grp., Ltd.*,
  52 F. Supp. 3d 526 (S.D.N.Y. 2014), *order clarified*,
  No. 12-CV-8450 JMF, 2014 WL 7106442 (S.D.N.Y. Dec. 9, 2014)......................8

*Saleem v. Corporate Transportation Group, Ltd.*,
  854 F.3d 131 (2d Cir. 2017).......................................................................... passim

*Sellers v. Royal Bank of Canada*,
  No. 12 CIV. 1577 KBF, 2014 WL 104682 (S.D.N.Y. Jan. 8, 2014),
  *aff'd*, 592 F. App'x 45 (2d Cir. 2015) .......................................................16, 17, 18

*United States v. Silk*,
  331 U.S. 704 (1947)...............................................................................................12

*Vasquez v. NS Luxury Limousine Serv., Ltd.*,
  No. 18-CV-10219(AJN), 2021 WL 1226567 (S.D.N.Y. Mar. 31, 2021) .................7

*Vasto v. Credico (USA) LLC*,
  No. 15 CIV. 9298 (PAE), 2017 WL 4877424 (S.D.N.Y.
  Oct. 27, 2017) *aff'd*, 767 F. App'x 54 (2d Cir. 2019)............................................11

*Velu v. Velocity Exp., Inc.*,
  666 F. Supp. 2d 303 (E.D.N.Y. 2009) ............................................................ passim

**Statutes**

Fair Labor Standards Act .......................................................................... passim

New York Labor Law ................................................................................ passim

**Rules**

Fed. R. Civ. P. 56..................................................................................................1, 7, 19

Local Rule 56.1.........................................................................................................3

## INTRODUCTION

Defendants RCI Hospitality Holdings Inc., fka Rick's Cabaret International, Inc., Peregrine Enterprises, Inc., dba Rick's Cabaret New York; RCI 33rd Ventures, Inc., 48 West 33rd Street Corp.; RCI Dining Services (37th Street), Inc.; Eric Langan and Kes Senevi (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their motion for summary judgment, pursuant to Fed. R. Civ. P. 56, seeking an order dismissing Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") because Plaintiffs were not employees of Defendants as a matter of law. Further, Defendants seek an order dismissing RCI Hospitality Holdings Inc. from this case because the company did not manage or operate the three clubs at issue in this case.

## PRELIMINARY STATEMENT

Plaintiffs, Elhadji Mbaye, Modou Diop, Talla Samb, and Tahirou Diakite (collectively, the "Plaintiffs") are former restroom attendants who provided services to patrons and employees of certain clubs operated by certain Defendants (the "Clubs") through a third party named Mustafa Diop ("Mustafa") who was responsible for Plaintiffs' hiring, assignments, scheduling and virtually all aspects of their work. Plaintiffs do not contest that they used their own supplies or equipment that they believed were necessary to provide their services, made money based on tips earned from customers, and received no training or instruction from the Clubs to perform the services they offered.

Plaintiffs claim they were employees of the Clubs, and are seeking compensation from Defendants for all hours at the Clubs, and for the alleged cost of supplies. As with most meritless claims, discovery, including in large part their own deposition testimony, has uncovered glaring inconsistencies in Plaintiffs' allegations directly undermining the factual and legal basis for their claims. As set forth below, summary judgment is appropriate because there is no genuine dispute

regarding any material fact that would prevent this Court from finding as a matter of law that Plaintiffs were not in fact employees of the Clubs.

*First*, the Clubs did not exercise any control over Plaintiffs' work as restroom attendants. In fact, the evidence in this case shows that the (1) Clubs did not hire or fire Plaintiffs during the relevant period[1]; (2) Clubs did not determine Plaintiffs' work schedules; (3) Clubs did not review or evaluate Plaintiffs' work; (4) Clubs did not require Plaintiffs to purchase any "tools of trade"; (5) the Clubs did not instruct Plaintiffs regarding how to perform their job; and (6) Plaintiffs could and did permit others to perform restroom attendant services on their behest when they decided not to work on any given night, as Plaintiff Mbaye chose to do.

*Second*, Plaintiffs determined how much in profit they made in a given night. They determined how much to spend on items they determined were necessary to operate their businesses such as cologne, mints, gum and mouthwash.

*Third*, Plaintiffs were free to (and did) work for other establishments as restroom attendants.

*Fourth*, as providers of restroom attendant services, Plaintiffs were not in any way integral to the Clubs' business, which is primarily adult entertainment. Indeed, customers patronize the Clubs for the purposes of socializing, having drinks and enjoying the entertainment services provided by the Clubs' dancers. Restroom attendants were not integral to the operations of the Clubs, and the Clubs did not directly or indirectly generate any revenue from Plaintiffs' restroom attendant services.

*Fifth*, the Clubs also did not give Plaintiffs a paycheck, did not withhold taxes on behalf of Plaintiffs, and Plaintiffs did not receive fringe benefits from the Clubs.

---

[1] Except for plaintiff Samb, Plaintiffs did not continue to work at the Clubs as employees.

78663705;1

In sum, Plaintiffs were not employees of the Clubs and the Clubs exercised no material control over where, when and how they provided their services. As such, the Clubs cannot be held liable for any of Plaintiffs' FLSA or NYLL claims.  Accordingly, for the reasons fully set forth below, Defendants are entitled to summary judgment dismissing Plaintiffs' Complaint in its entirety, as a matter of law.

## STATEMENT OF FACTS[2]

### A.    Introduction

Rick's Cabaret, Vivid Cabaret, and Hoops Cabaret and Sports Bar (the "Clubs") are adult entertainment Clubs operated by certain Defendants, located in New York City. *See* Defs. 56.1 ¶ 1. The Clubs are gentlemen's clubs that provide adult entertainment services, particularly topless dances by the Clubs' entertainers, to their patrons, as well as alcohol and food options. *Id*. ¶ 2. At all times prior to August 2023, Clubs engaged an individual by the name of Mustafa Diop ("Mustafa") to provide restroom attendant services to patrons and employees in restroom facilities at the Clubs. *Id*. ¶ 3. Mustafa, in turn, engaged individuals, including Plaintiffs, to serve as restroom attendants at the Clubs. *Id*. ¶ 4. Mustafa was not an employee of the Club, but a third party through whom the Club contracted the services of restroom attendants, including Plaintiffs. *Id*. ¶ 5. During this period prior to August 2023, Mustafa determined which restroom attendants would be hired to work and scheduled at the Clubs, and was not obligated to schedule particular restroom attendants for work even when a manager of the Clubs wanted to bring a restroom attendant on. *Id*. ¶ 6.

After August 2023, the Clubs directly hired restroom attendants as employees. *Id*. ¶ 7. There are not restroom attendants in each of the Clubs every day or night they are open. *Id*. ¶ 8.

---

[2] All references to "Defs. 56.1" are citations to Defendants' Local Rule 56.1 Statement of Undisputed Facts submitted in support of Defendants' Motion for Summary Judgment.

Each Club is different in this respect, but, for instance, Vivid Cabaret would generally only have a restroom attendant one day of each week. *Id*. ¶ 9. Hoops Cabaret and Sports Bar generally has attendants 3 or 4 days in a week. *Id*. This has been the case going back many years, including when the Plaintiffs were providing attendant services at the Clubs. *Id*.

### B.    Plaintiffs Begin Working As Restroom Attendants

Plaintiffs did not have to meet or interview with any employee of the Clubs prior to being staffed at the Clubs. *Id*. ¶ 10 Plaintiffs were initially brought to the Clubs either by Mustafa or referred to Mustafa by other restroom attendants. *Id*. ¶ 10. For instance, Plaintiff Diakite heard about Rick's Cabaret through his cousin Mohammad Toure, who was also a restroom attendant. *Id*. ¶ 11. He was referred to Mustafa by Toure, and Diakite met with Mustafa who then staffed Plaintiff Diakite to provide his services at the club. *Id*. Plaintiff Diop was first apprised of the opportunity to provide services at Rick's Cabaret by Plaintiff Mbaye. *Id*. ¶ 12. Plaintiff Samb began performing services at Rick's Cabaret and then Hoops Cabaret and Bar after he was hired by Mustafa. *Id*. ¶ 13. Plaintiff Mbaye was also brought in to perform services at Rick's Cabaret by Mustafa. *Id*. ¶ 14.

Plaintiffs performed services at the Club for varying lengths of time and at varying time periods. According to Plaintiff Diop, he began performing services at Rick's Cabaret starting in June 2013 and ceased performing services at the club in January 2016. *Id*. ¶ 14. Moreover, he testified that he began performing services at Hoops Cabaret and Sports Bar and Vivid Cabaret in February 2016 and ceased in August 2023. *Id*. According to Plaintiff Samb, he began performing services at Hoops Cabaret and Sports Bar from February 2021 through August 2021. *Id*. ¶ 15. Plaintiff Samb also alleges that he began performing services at Rick's Cabaret in September 2021. *Id*. In August 2023, Plaintiff Samb was brought on as an employee of Rick's Cabaret. *Id*.

According to Plaintiff Diakite, he began performing services at Rick's Cabaret starting in January 2019 and ceased performing services at the club in December 2019. *Id*. ¶ 16. Plaintiff Diakite mainly provided services at Rick's Cabaret but also worked Hoops Cabaret and Sports Bar and Vivid Cabaret as needed. *Id*. According to Plaintiff Mbaye, he began performing services for Rick's Cabaret starting in 2009 and ceased performing services in March 2020. *Id*. ¶ 17.

Indeed, the Clubs did not 'hire' the plaintiffs and there was no written application to work at the Clubs and no screening process of any kind involving the Clubs. *Id*. ¶ 18. Moreover, Plaintiffs were not provided any training or instruction by the Clubs on how to perform their services. *Id*. ¶ 19. Rather, to the extent they received any instruction it was from Mustafa. *Id*. Additionally, Plaintiffs were not required to attend meetings at the Clubs. *Id*. ¶ 20. The Clubs also did not require Plaintiffs to wear any uniform or particular type of clothing while performing services at the Clubs. *Id*. ¶ 21.

## C.    Plaintiffs' Scheduling

Mustafa, not the Clubs, provided Plaintiffs with their schedules. *Id*. ¶¶ 22, 24. Although Mustafa provided Plaintiffs their schedules, Plaintiffs were free to, and did, arrive and leave the Clubs whenever they wished. *Id*. ¶ 23. If the restroom attendants needed to take time off, they did not need to approach any Club employee; they would simply tell Mustafa, if anyone, that they were taking time off. *Id*. ¶ 25. If the restroom attendants wanted to stop working for the Clubs they were not required to notify the Clubs. *Id*. ¶ 26. Restroom attendants could, and did, work other jobs and provide services to other clubs while they performed services at the Clubs. *Id*. ¶ 27.

## D.    Plaintiffs' Compensation And Services Provided

Each of the Plaintiffs made money based on tips provided by individuals who used the restrooms. *Id*. ¶ 28. The amount of tips earned by Plaintiffs was based on the services they provided

to customers. *Id*. ¶ 29. These services included offering customers breath mints, cologne, and gum, as well as ensuring that parts of restrooms were clean and greeting customers. *Id*. ¶¶ 30, 34. Each of these items were purchased by the restroom attendants on their own accord, without instruction from the Clubs' management or anyone else at the Clubs. *Id*. ¶ 31. Restroom attendants were not reimbursed for these purchases nor did they request that the Clubs reimburse them for these purchases. *Id*. ¶ 32. Plaintiffs testified that they generally spent approximately $200 to $300 every week or every two weeks on items purchased for the restrooms. *Id*. ¶ 33. Restroom attendants were not on the Clubs' payroll, and were for the most part, not compensated in any way by the Clubs, including through fringe benefits. *Id*. ¶ 35. Additionally, Rick's Cabaret supplemented Plaintiffs' tips when they worked on the third floor at Rick's Cabaret because there were fewer patrons to tip them *Id*. ¶ 36. Plaintiffs did not receive a form W-2 from the Clubs prior to August 2023, when they were not employees of the Clubs. *Id*. ¶ 37.

Restroom attendants were not responsible for providing security; and the Clubs did not rely on the restroom attendants for security. *Id*. ¶ 38. In fact, the Clubs do not and did not require restroom attendants to have a New York security guard license or to be otherwise certified to provide security unlike other employees of the Clubs who actually were responsible for security. *Id*. The Clubs did not provide any of the restroom attendants with performance evaluations. *Id*. ¶ 39. Nor did the Clubs otherwise evaluate Plaintiffs' work performance or instruct Plaintiffs on how to perform their jobs. *Id*. ¶ 40. Plaintiffs could and did permit others to perform restroom attendant services on their behest. For instance, when Plaintiff Mbaye could not make it to the club he would send someone to cover his shift and would not tell the Club who would be working on his behalf. *Id*. ¶ 41. Plaintiffs were not terminated by the Clubs–they stopped working at the Clubs on their own accord or because Mustafa would not schedule them. *Id*. ¶ 42.

**ARGUMENT**

**POINT I**

**SUMMARY JUDGMENT SHOULD BE GRANTED
IN FAVOR OF DEFENDANTS ON ALL OF PLAINTIFFS' CLAIMS**

**A.    Standard For Summary Judgment**

Summary judgment is proper when a movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  To survive summary judgment, the opposing party must establish a genuine issue of material fact by providing "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145. 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn." *Binder & Binder PC v. Barnhatrt* 481 F.3d 141, 148 (2d Cir. 2007).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), are insufficient to create a genuinely disputed fact.  A party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Plaintiffs' claims are predicated on their erroneous premise that Defendants misclassified them as independent contractors rather than an employees. The facts show that this assertion is utterly meritless. "In order '[t]o be held liable under [the] FLSA, a person must be an 'employer.'" *Vasquez v. NS Luxury Limousine Serv., Ltd.*, No. 18-CV-10219(AJN), 2021 WL 1226567, at *4 (S.D.N.Y. Mar. 31, 2021) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

Under both the FLSA and the NYLL, when considering whether a worker was an employee or non-employee such as an independent contractor, a court may make that determination "where there are no disputed issues of material fact." *Landaeta v. New York & Presbyterian Hosp., Inc.*, No. 12 CIV. 4462 JMF, 2014 WL 836991, at *4 (S.D.N.Y. Mar. 4, 2014); *Browning v. Ceva Freight*, LLC, 885 F. Supp. 2d 590, 598 (E.D.N.Y. 2012) (citing *Schwind v. EW & Assocs., Inc*., 357 F. Supp. 2d 691, 701 (S.D.N.Y. 2005)) ("Finally, '[t]he existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors –is a question of law.'").

Indeed, the Second Circuit has made clear that contractor status can be resolved as a matter of law. *Saleem v. Corporate Transportation Group, Ltd*., 854 F.3d 131, 148 (2d Cir. 2017) (affirming summary judgment on FLSA claims where plaintiffs were determined to be independent contractors). Absent material fact disputes, whether workers are employees or independent contractors–is a question of law that can be resolved on summary judgment. *See Saleem v. Corp. Transp. Grp., Ltd*., 52 F. Supp. 3d 526 (S.D.N.Y. 2014), *order clarified*, No. 12-CV-8450 JMF, 2014 WL 7106442 (S.D.N.Y. Dec. 9, 2014), and *aff'd sub nom. Saleem v. Corp. Transportation Grp., Ltd*., 854 F.3d 131 (2d Cir. 2017). (granting summary judgment and concluding that ground transportation workers were independent contractors under the FLSA and NYLL).[3]

## B.    Plaintiffs Were Independent Contractors Under the FLSA

Under the FLSA, the question of whether an employee-employer relationship exists is one of "economic reality." *Id.* at 536. A worker's status as an employee or independent contractor

---

[3] Defendants anticipate that Plaintiffs will cite to *Hart v. Rick's Cabaret Int'l, Inc*., 967 F. Supp. 2d 901 (S.D.N.Y. 2013) in support of their argument that they were employees of the Clubs. However, that case dealt with the classification of entertainers and the facts in that case are entirely different than the facts in this case.

under the FLSA is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008). Courts typically apply a five-part test to distinguish employees from independent contractors under the FLSA: (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business. *Id.* at 142 (*citing Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988)). "Central to this analysis is whether a defendant has control of employees." *Carusillo v. Fansided, Inc.*, No. 20-CV-4766(JPO), 2021 WL 4311167, at *3 (S.D.N.Y. Sept. 21, 2021) (citation omitted).

Courts assess the "totality of the circumstances" before rendering a decision. *Preacely v. AAA Typing & Resume, Inc.*, No. 12 CIV. 1361 AT RLE, 2015 WL 1266852, at *7 (S.D.N.Y. Mar. 18, 2015). Significantly, not every factor must favor the defendant in order for a court to conclude as a matter of law that no employee-employer relationship exists. *See Cox v. German Kitchen Ctr. LLC*, No. 17CIV6081GBDJW, 2023 WL 8648839, at *7 (S.D.N.Y. Dec. 14, 2023) (finding independent contractor status where four of the five economic reality test factors supported independent contractor status) *Saleem*, 854 F.3d at 138 (affirming that drivers were independent contractors as a matter of law, despite fifth factor weighing in favor of employee status); *Chao v. Mid-Atlantic Installation Servs., Inc.*, 16 F. App'x 104 (4th Cir. 2001) (same, although two factors were neutral or favored employee status); *Razak v. Uber Techs., Inc.*, No. CV 16-573, 2018 WL 1744467, at *19 (E.D. Pa. Apr. 11, 2018) (granting summary judgment although two factors supported employee status).

### a.      The Clubs Did Not Exercise Control Over Plaintiffs

On the most important factor in the FLSA economic realities test, there is no genuine dispute of material fact that the Clubs did not exercise control over Plaintiffs' work as restroom attendants. In fact, the evidence in this case shows that the (1) Clubs did not hire or fire Plaintiffs (*See* Defs. 56.1 ¶¶ 18, 42); (2) Clubs did not control Plaintiffs' work schedules (*Id*. ¶¶ 22, 24); (3) Clubs did not evaluate Plaintiffs' work (*Id*. ¶¶ 39, 40); (4) Clubs did not require Plaintiffs to purchase any "tools of trade" (*Id*. ¶ 31); (5) no employee of the Clubs instructed Plaintiffs regarding how to perform their job (*Id*. ¶ 40); and (6) Plaintiffs could and did permit others to perform restroom attendant services on their behest (*Id*. ¶ 41).

First, it is undisputed that Plaintiffs were not hired or fired by the Clubs. Rather, Plaintiffs began working as restroom attendants after learning about the opportunity from Mustafa or from other restroom attendants who were already working at the Clubs. *Id*. ¶ 10. After learning about the opportunity, they approached Mustafa to begin working. *Id*. ¶¶ 11-14. They did not have to fill out an application with the Clubs or get approval from any employee of the Clubs to begin working. *Id*. ¶ 18. Indeed, if Mustafa did not think that there was a need for a restroom attendant, he would not schedule a restroom attendant to work, notwithstanding a club manager indicating a need for restroom attendant services. *Id*. ¶ 6. Further, Plaintiffs were not terminated by the Clubs –they stopped working at the Clubs on their own accord or because Mustafa would not schedule them. *Id*. ¶ 42.

Second, it was Mustafa –not any employee of the Clubs that provided Plaintiffs with their schedules. *Id*. ¶ 22. Moreover, although Mustafa provided Plaintiffs with their schedules, Plaintiffs were free to, and did, arrive and depart from the Clubs whenever they wished. *Id*. ¶ 23. Accordingly, this factor also supports independent contractor status. *See Saleem*, 854 F.3d at 146 ("Defendants required no notice on the part of drivers as to when they intended to work, nor did

they make any effort to coordinate drivers' schedules" or to "set lower or upper limits on working hours"); *Velu v. Velocity Exp., Inc*., 666 F. Supp. 2d 303 (E.D.N.Y. 2009) ("[S]ubject to the demands of the clients, [plaintiff] is free to make his own schedule...").

Third, the Clubs did not evaluate Plaintiffs' work one way or the other. Defs. 56.1 ¶¶ 39, 40. Plaintiffs were supervised by Mustafa and Mustafa alone. *Id*. ¶ 19. This factor clearly supports a finding that Plaintiffs were not employees. *See Godlewska v. HDA*, 916 F. Supp. 2d 246, 265 (E.D.N.Y. 2013), *aff'd sub nom. Godlewska v. Hum. Dev. Ass'n, Inc*., 561 F. App'x 108 (2d Cir. 2014) ("City Defendants did not supervise plaintiffs' work, manage plaintiffs on a day-to-day basis, or evaluate plaintiffs' performance. In short, City Defendants did not relate to plaintiffs as an employer."); *Vasto v. Credico (USA) LLC*, No. 15 CIV. 9298 (PAE), 2017 WL 4877424, at *9 (S.D.N.Y. Oct. 27, 2017) *aff'd*, 767 F. App'x 54 (2d Cir. 2019) ("[t]he record is equally clear regarding supervision. Plaintiffs identified Cromex representatives as their supervisors..[t]hey identified no [defendant] employees as having supervised, directed, assigned, or otherwise controlled their work on the Assurance Wireless campaign.").

Fourth, Plaintiffs purchased products for restrooms such as cologne, mints, gum, candy and mouthwash (*i.e*. tools of trade) at their own discretion. Defs. 56.1 ¶ 31. Indeed, they uniformly testified that no employee of the Clubs required them to make these purchases, but that they purchased these items to receive generous tips from their customers. *Id*. ¶¶ 29-31. Accordingly, this factor also supports a finding of independent contractor status. *See Saleem*, 854 F.3d at 144-46 (determining that the drivers' expenditures for vehicle purchases, vehicle repairs and maintenance, licenses, registrations, insurance fees, tolls, parking, and tickets were indicative of independent contractor status).

Fifth, no employee of the Clubs provided Plaintiffs with any training regarding how to perform the job. Defs. 56.1 ¶19. Plaintiffs learned how to perform the duties of a restroom attendant based on experience from prior positions, from Mustafa or from other restroom attendants. *Id*. Moreover, the Clubs did not require Plaintiffs to don a uniform or any particular article of clothing. *Id*. ¶ 21. Nor were Plaintiffs required to attend any meetings. *Id*. ¶ 20.

Sixth, Plaintiffs could and did get workers to fill in when they could not make it to the Clubs. *Id*. ¶ 41.  Unlike employees, who cannot hire others to do their jobs, Plaintiffs were not even required to work; they could hire workers to carry out their responsibilities without any permission from Defendants. Accordingly, this factor supports contractor status. *Saleem*, 854 F.3d at 143 (that "some Plaintiffs . . . permitted other individuals to drive for them" favored independent contractor status); *United States v. Silk*, 331 U.S. 704, 719 (1947) (that "driver-owners . . . hire their own helpers" favored independent contractor status).

Accordingly, there is no genuine dispute of material fact that the Clubs did not exercise control over Plaintiffs' work as restroom attendants such that Plaintiffs can be considered employees under the FLSA.

### b.      Plaintiffs Made Significant Investments In Their Businesses And Faced Opportunities For Profit And Risks Of Loss

That "Plaintiffs invested heavily" is "another indication that they were in business for themselves." *Saleem*, 854 F.3d at 144. Here, Plaintiffs invested in their businesses by purchasing products to serve customers that used the restrooms in the Clubs. Defs. 56.1 ¶¶ 29-34. Indeed, according to Plaintiffs, they spent hundreds of dollars every other week purchasing these products. *Id*. ¶ 33. These investments were critical to Plaintiffs' businesses as they made money based on tips earned from customers who tipped according to whether they were satisfied with the services

provided by Plaintiffs. *Id.* ¶ 29. In other words, Plaintiffs' investments (*i.e.* in their bathroom products) determined their profits or losses.

### c.     Plaintiffs' Success Depended On Their Skill and Initiative

Where success depends on workers' skill in performing their duties and their independent initiative in expanding business opportunities, this factor favors independent contractor status. *See Chao*, 16 F. App'x at 107 (affirming independent contractor status where a worker's "net profit or loss depends on his skill in meeting [business requirements], thereby avoiding backcharges" and "on the business acumen with which the worker makes his required capital investments in tools, equipment, and a truck"). Where, as here, a worker has "significant control over essential determinants of profits in the business," this favors contractor status. *Saleem*, 854 F.3d at 145-46. In *Browning*, delivery drivers were found to show the type of initiative that favors contractor status because they "worked varying times, making varying amounts of money, depending largely upon how early in the day they arrived" to maximize their earnings. 885 F. Supp. 2d at 609. In addition, the court in *Arena v. Delux Transp. Servs., Inc*., found that this factor favored contractor status for a driver because he "had to know how to drive," "be licensed," "navigate his routes and maintain the safety of his passengers," and "have the initiative to accept dispatched calls and transport his passengers in an efficient manner." 3 F. Supp. 3d 1, 12 (E.D.N.Y. 2014). Moreover, in *Franze*, the Court found that this factor favored contractor status because the plaintiffs had skills including "increasing sales, building relationships with stores and employees, and ordering products effectively" and "independent skills of developing good relationships with store managers and personnel to grow his business." *See Franze v. Bimbo Foods Bakeries Distribution*, LLC, No. 17-CV-3556(NSR), 2019 WL 2866168, at *9 (S.D.N.Y. July 2, 2019).

Here, the evidence shows that Plaintiffs' earnings (*i.e.* their tips from customers) depended on how well they were able to keep certain areas in the restrooms clean and their ability to provide

13

a positive experience to those who used the restrooms. Defs. 56.1 ¶¶ 29-35. Another factor of Plaintiffs' success as restroom attendants were managing their expenses, specifically the amount of money they spent on items such as cologne, mints, gum, candy and mouthwash. *Id.* ¶¶ 28-29, 32, 33. Any amount spent on these items would reduce the profits earned by Plaintiffs. This factor thus again favors contractor status.

### d.    Plaintiffs' Undisputed Control Over The Duration And Permanence Of Their Relationship with the Clubs Favors Independent Contractor Status

Plaintiffs could provide services at competing clubs or other establishments, at any time, including during the period they were working at the Clubs. Defs. 56.1 ¶ 27. It was completely up to Plaintiffs when and for how long they provided services at the Clubs. For instance, Plaintiff Diakite only worked for a year, while Plaintiff Diop worked at the Clubs for over six years. *Id.* ¶¶ 14, 16. Moreover, Plaintiff Mbaye worked as a restroom attendant at another Club while he was working at the Clubs. *Id.* ¶ 27.  In sum, the duration of Plaintiffs' services at the Clubs was entirely up to Plaintiffs who could cease providing services at the Clubs at any time and provide their services elsewhere. Accordingly, these facts support contractor status.  *See Saleem*, 854 F.3d at 147 (affirming summary judgment finding of independent-contractor status and underscoring that whatever "the permanence or duration of Plaintiffs' affiliation with Defendants . . . both its length and the regularity of work was entirely of Plaintiffs' choosing"); *Velu*, 666 F. Supp. 2d at 307 (fact that "if either party were to terminate the Agreement today, Plaintiff could go out the next day with the same van, clothes, equipment, computer, printer, and other supplies, and immediately work for another shipping company" favored independent contractor status).

### e.    Restroom Attendants Are Not Integral to the Club's Business

The Clubs are in the adult entertainment business and restroom attendants are not at all integral to the Clubs' business. Defs. 56.1 ¶ 2. Customers patronize the Clubs to socialize, sit at

the bar and enjoy the entertainment provided by the Clubs' dancers together with the drinks dispensed by the Clubs' bartenders. *Id*. Clearly, patrons do not come to the Clubs to spend time in restrooms. In other words, the Clubs would still have a viable business without restroom attendants. *See Franze*, 2019 WL 2866168, at *11 ("Plaintiffs' role in delivering baked goods in the distribution chain to retail consumers was a small, albeit, important, piece of this model, without which Bimbo would still have a viable business. Therefore, the Court finds that this factor weighs in Defendants' favor."). Irrefutable evidence that restroom attendants are not integral to the Clubs' business is the fact that restroom attendants are not even present at the Clubs every day or night the Clubs are open. Defs. 56.1 ¶¶ 8, 9. And the number of nights per week that there are attendants in the restrooms is different for the Clubs. *Id*. ¶ 9. Accordingly, this factor clearly supports a finding that the restroom attendants are independent contractors.

### C.    Plaintiffs Were Not Employees Of The Clubs Under The NYLL

Under the NYLL, whether a person is an employee or an independent contractor is a wholly different analysis than under the FLSA. The NYLL analysis "depends upon factors such as whether the person: (1) worked at his [or her] own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." *Deboissiere v. Am. Modification Agency*, No. 09-CV-2316(JS)(MLO), 2010 WL 4340642, at *3 (E.D.N.Y. Oct. 22, 2010); *see also Bynog v. Cipriani Grp., Inc*., 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 695 (2003). The NYLL focuses "on the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Velu*, 666 F. Supp. 2d at 307.

Again, no factor is dispositive to the NYLL test, which focuses on whether a worker has control and discretion over the worker's work and schedule. *Velu*, 666 F. Supp. 2d at 308. "Minimal or incidental control over an employee's work product without the employer's direct supervision

78663705;1

or input over the means used to complete the work is insufficient to establish a traditional employment relationship." *Browning*, 885 F. Supp. 2d at 598; *Vega*, 78 N.Y.S.3d at 812 (incidental control over the results without control over the means employed to achieve the results does not evidence an employer-employee relationship).

Here, the indisputable evidence clearly supports that the Plaintiffs were not employees of the Clubs under the NYLL.

### a.    Plaintiffs Worked At the Clubs At Their Own Convenience

As noted above, the Clubs did not establish Plaintiffs' schedule and did not require that Plaintiffs arrive or depart at a certain time. Courts analyzing the question of contractor status under the NYLL often consider the first and fifth factors, whether a worker "worked at his own convenience" and "was on a fixed schedule," together. *Velu*, 666 F. Supp. 2d at 308 (analyzing factors together); *Arena*, 3 F. Supp. 3d at 13 (same). They emphasize the ability of workers to choose how much they work and whether the alleged employer imposed a set schedule. This includes whether or not a worker was "required to arrive or depart at the office at any particular time, take lunch or rest breaks for prescribed periods, or clock in or out," and whether the worker "took vacation and personal days at his own convenience." *Sellers v. Royal Bank of Canada*, No. 12 CIV. 1577 KBF, 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014), aff'd, 592 F. App'x 45 (2d Cir. 2015); *Velu*, 666 F. Supp. 2d at 308 (same). The fact that the "very nature of plaintiff's work" obliges him "to work on certain days and certain times" does not preclude a finding of contractor status. *Sellers*, 2014 WL 104682, at *6; *Browning*, 885 F. Supp. 2d at 602 (pick-up and delivery time requirements did not preclude contractor status when they stemmed "from the nature of the business" and were "reasonable in the shipping business" and "[t]he fact that an independent contractor is required to be at a job or at a facility at a certain time does not eliminate his status as an independent contractor").

16

Here, it is undisputed that the Clubs did not set Plaintiffs' schedules. Defs. 56.1 ¶¶ 22, 24. Plaintiffs schedule was set, if at all, by Mustafa. *Id*. ¶ 22. While certain managers of the various Clubs preferred to have bathroom attendants at the Clubs on certain days of the week or certain times, Plaintiffs made the decisions regarding when they would be there and were free to be at the club as little or as much as they wanted. *Id*. ¶ 23. Additionally, Plaintiffs could also work less or not at all by having workers substitute for them, which they did. *Id*. ¶ 41; *Browning*, 885 F. Supp. 2d at 601 (concluding that delivery drivers were contractors under the NYLL where "Plaintiffs could hire their own additional workers to assist with their operations" and "several of the Plaintiffs did so . . . this freedom allowed them to further work at their own convenience"). This factor also favors Plaintiffs' status as independent contractors.

### b.      Plaintiffs Were Free To Engage In Other Work

The next factor focuses on the ability to have other employment, without regard to whether a worker spent the vast majority of time on services to the alleged employer. *Sellers*, 2014 WL 104682, at *6-7. "The comparison of the time spent on each [engagement] is legally meaningless," as the "dispositive point is that [the worker] was, indeed, free to engage in other employment." *Id.; see also Velu*, 666 F. Supp. 2d at 308 (that "Plaintiff was free to engage in other employment, but chose not to" favors contractor status under NYLL); *see also Browning*, 885 F. Supp. 2d at 602-03 (that "Plaintiffs could perform work for other companies, even if it was practically difficult to do so" was more important than "the fact that the Plaintiffs did not actually take on additional employment"). Plaintiffs could perform restroom attendant services for other business, and plaintiff Mbaye did so. Defs. 56.1 ¶ 27. This factor clearly favors contractor status. *See Sellers*, 2014 WL 104682, at *6. ("[T]hat plaintiff was 'free to engage in other employment' indicates that his position 'was that of an independent contractor.'").

### c. Plaintiffs Did Not Receive Any Employee Benefits

Where a worker does not receive employee benefits, this factor favors independent contractor status. *Velu*, 666 F. Supp. 2d at 307-08. It is undisputed that Plaintiffs received no benefits because they were compensated through tips provided by patrons. Defs. 56.1 ¶ 29. This factor supports contractor status as well.

### d. Plaintiffs Were Not On Defendants' Payrolls

The final factor favors contractor status where defendants "did not withhold payroll or other employment-related taxes or issue W-2 forms to plaintiff." *Sellers*, 2014 WL 104682, at *8; *Browning*, 885 F. Supp. 2d at 605 (plaintiffs were independent contractors where defendant did not withhold taxes). Here, Plaintiffs cannot and do not dispute that they were not were not on Defendants' payroll and did not receive a Form W-2s. Defs. 56.1 ¶¶ 35, 37. In sum, all of these factors demonstrate, as a matter of law, that Plaintiffs were independent contractors.

### POINT II

### RCI HOSPITALITY HOLDINGS INC. SHOULD BE DISMISSED AS A DEFENDANT

Defendant RCI Hospitality Holdings, Inc should be dismissed from this litigation because it does not operate any of the three clubs at which Plaintiffs' provided services and therefore cannot be considered Plaintiffs' employer. Defs. 56.1 ¶ 1. Indeed, while RCI Hospitality Holdings Inc., is the parent or "grandparent" company of RCI 33rd Ventures, Inc, RCI Dining Services (37th Street), Inc., and Peregrine Enterprises Inc., this fact alone does not make RCI Hospitality Holdings Inc. a joint employer for the purposes of employer liability. *See Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99 (S.D.N.Y. 2020) ("[h]ere, the record could not support a finding that Lukoil and Litasco were a single integrated enterprise. Litasco and Lukoil are separate corporate entities: Litasco is the parent company for Lukoil and other subsidiaries worldwide."). RCI Hospitality Holdings Inc., does not manage or operate Rick's Cabaret, Vivid Cabaret, or

Hoops Cabaret and Sports Bar.  Moreover, after extensive discovery, Plaintiffs can point to no evidence that RCI Hospitality Holdings, Inc. had any role in decisions regarding policies relating to the employee or non-employee status of restroom attendants and therefore cannot meet their burden that the company can be liable for any claims alleged in this action.

## <u>CONCLUSION</u>

For the reasons set forth above, pursuant to Fed. R. Civ. P. 56, Defendants respectfully request that the Court issue an Order granting Defendants' motion for summary judgment dismissing this action with prejudice and dismissing RCI Hospitality Holdings, Inc. as a defendant in this case, along with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      November 7, 2024

                       Respectfully submitted,

                       AKERMAN LLP

                       */s/ Jeffrey A. Kimmel*
                       Jeffrey A. Kimmel
                       M. Adil Yaqoob
                       1251 Avenue of the Americas, 37th Floor
                       New York, New York 10020
                       Tel: (212) 880-3800
                       Email: jeffrey.kimmel@akerman.com
                              adil.yaqoob@akerman.com

                       *Attorneys for Defendants*

78663705;1