UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELHADJI MBAYE, et al.,

Plaintiffs,

v.

RCI HOSPITALITY HOLDINGS, INC., et al.,

Defendants.

23 Civ. 2967 (DEH)

**OPINION
AND ORDER**

---

DALE E. HO, United States District Judge:

Plaintiffs Elhadji Mbaye ("Mbaye"), Modou Diop ("Diop"), Tahirou Diakite ("Diakite"), and Talla Samb ("Samb" and, collectively, "Plaintiffs") bring this class and collective action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq. See* First Am. Compl. ("FAC"), ECF No. 50. Defendants are RCI Hospitality Holdings Inc. f/k/a Rick's Cabaret International, Inc. ("RCIHHI"), Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York ("Rick's"), RCI 33rd Ventures, Inc., 48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar ("Hoops"), and RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret ("Vivid" and, collectively, "the Clubs"), and Eric Langan and Kes Senevi (the "Individual Defendants" and, collectively, "Defendants").

Plaintiffs bring their claims as a collective action pursuant to FLSA § 16(b), 29 U.S.C. § 216(b), and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure,[1] on behalf of all non-exempt restroom[2] attendants employed by Defendants on or after April 8, 2020. FAC

---

[1] All subsequent references to Rules are to the Federal Rules of Civil Procedure.

[2] Although the FAC refers to "bathroom" attendants, the Court adopts this title based on the parties' submissions in support of and in opposition to this motion. *See* FAC; Defs.' Mem.; Pls.' Opp'n Defs.' Mem. ("Pls.' Opp."), ECF No. 129.

¶¶ 140, 144.  Plaintiffs allege that Defendants failed to pay minimum wage, provide required written notices and wage statements, and reimburse equipment costs, in addition to withholding tips and wages.  *Id.* ¶¶ 1, 166-206.

Defendants now move for summary judgment on all claims pursuant to Rule 56, arguing that Defendants cannot be held liable because Plaintiffs were not "employees" as defined by the FLSA and NYLL.  *See* Defs.' Mem. Law Supp. Mot. Summ. J. ("Defs.' Mem.") at 1, ECF No. 119.  For the reasons explained below, Defendants' Motion for Summary Judgment is **DENIED**.

**BACKGROUND[3]**

### I.      Factual Background

Defendants Rick's, Hoops, and Vivid are gentlemen's clubs that offer adult entertainment services, including topless dances, to their patrons.  Defs.' SOF ¶ 2.  Plaintiffs are former or current restroom attendants who worked at the Clubs for different durations: Diop from 2013 to 2023; Mbaye from 2009 to 2013 and again from 2016 to 2020; Samb from 2021 to the present; and Diakite in 2019.  *Id.* ¶ 14-17; Pls.' SOF ¶¶ 58, 71, 85, 96.  As restroom attendants, Plaintiffs' duties involved maintaining restroom facilities, offering patrons personal amenities such as cologne, mouthwash, and mints, and providing patrons with towels after handwashing.  Defs.' SOF ¶¶ 30, 34; Pls.' SOF ¶¶ 46-47, 52-54.  Plaintiffs also performed cleaning tasks such as sanitizing restroom

---

[3] The following facts are drawn from the parties' submissions in support of and in opposition to the motion for summary judgment, including Defs.' Local Rule 56.1 Statement of Material Facts ("Defs.' SOF"), ECF No. 122; Pls.' Resp. to Defs.' Local Rule 56.1 Statement and Further Statement of Material Facts ("Pls.' SOF"), ECF No. 130; and Defs.' Local Rule 56.1 Reply to Pls.' Further Statement of Material Facts ("Defs.' SOF Reply"), ECF No. 141; as well as the affidavits, deposition testimony, and other exhibits attached to the motion papers.  Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein.  The facts recounted below are undisputed except where otherwise noted.  Where a party purports to dispute the opposing party's statement of material fact but does not cite to admissible evidence controverting the statement, the Court will treat the statement as undisputed.  *See* LOC. CIV. R. 56.1(D); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (A party must demonstrate more than "some metaphysical doubt as to the material facts.")

surfaces, unclogging toilets, replenishing toiletries, and wiping up patrons' vomit, urine, or spilled drinks. Pls.' SOF ¶¶ 48-51. Prior to August 2023, Defendants did not pay restroom attendants a regular salary. *Id.* ¶¶ 59, 72-73, 86-87, 97. Plaintiffs were not at all compensated by Defendants unless they were assigned to Rick's third floor, where they received a flat rate of $90 per shift because of fewer patrons there. Defs.' SOF ¶¶ 35-36; *Id.* ¶¶ 59, 73, 86-87, 97, 102, 128-29. Otherwise, Plaintiffs' only form of compensation came through tips directly from patrons who used the restrooms. Defs.' SOF ¶¶ 28-29, 35; Pls.' SOF ¶¶ 72, 86, 97.

Plaintiff Diop stopped working at the Clubs in August 2023.[4] Defs.' SOF ¶ 14. Plaintiff Diakite left in December 2019, and Plaintiff Mbaye in March 2020. *Id.* ¶¶ 16-17. In August 2023, four months after this action was commenced, Defendants began directly hiring restroom attendants as employees of the Clubs. *Id.* ¶ 7; Pls.' SOF ¶ 165. Defendants offered Plaintiffs Samb and Diop this opportunity, and Plaintiff Samb was subsequently brought on to Rick's as an employee that same month. Defs.' SOF ¶ 15; Pls.' SOF ¶ 167.

## II.    Procedural Background

Plaintiffs filed this action on April 8, 2023, and amended their Complaint on November 15, 2023, asserting claims under the FLSA and NYLL. *See* ECF Nos. 1, 50. On December 14, 2023, Plaintiffs moved for conditional certification of a FLSA collective class composed of restroom attendants who worked for Defendants on or after three years before the initial Complaint was filed. *See* ECF No. 52. On March 4, 2024, the Court granted Plaintiffs' motion for conditional certification of the FLSA collective class. *See* ECF No. 72. On November 7, 2024, Defendants filed their Motion for Summary Judgment. *See* ECF No. 118. Plaintiffs filed their Opposition on

---

[4] The parties dispute whether Plaintiff Diop was terminated or stopped working of his own accord. Defs.' SOF ¶ 42; Pls.' SOF ¶ 42.

3

January 17, 2025. *See* Pls.' Opp. On March 10, 2025, Defendants filed their Reply. *See* ECF No. 140.

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).[5] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23).

In ruling on a motion for summary judgment, the court must view all evidence "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236. But the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586. The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "Affidavits submitted in support of or in opposition to the summary

---

[5] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting FED. R. CIV. P. 56(E)).

## DISCUSSION

### I.    FLSA

The principal issue on this motion is whether, viewing the record in the light most favorable to Plaintiffs as the parties opposing summary judgment, a reasonable jury could find that Plaintiffs were "employees" as defined by the FLSA and NYLL.  "If not, then [Plaintiffs] were independent contractors outside the reach of these statutes, and summary judgment on all claims must be granted for [D]efendants."  *See Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 911 (S.D.N.Y. 2013).  The Court concludes that, after assuming the disputed facts in Plaintiffs' favor, Defendants are not entitled to judgment as a matter of law.

### A.    Legal Standard

"The FLSA defines 'employee' as 'any individual employed by an employer.'" *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988).  "The definition is necessarily a broad one in accordance with [the Act's] remedial purpose." *Id.*  "Accordingly, the [Supreme] Court has consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).

"Under the [Act], the question of whether an employee-employer relationship exists is one of 'economic reality.'" *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 305 (E.D.N.Y. 2009) (citing *United States v. Silk*, 331 U.S. 704, 713).  "The Second Circuit has directed courts to evaluate employee-employer relationships on a case-by-case basis . . . and has identified different sets of relevant factors based on the factual challenges posed by particular cases to guide this

5

inquiry." *Nokaj v. Pappas N.Y.*, No. 24 Civ. 1076, 2025 WL 2380403, at *2 (S.D.N.Y. Aug. 15, 2025). "The Circuit has held that the *Brock* test is the appropriate [economic reality test] to separate independent contractors from employees." *Ametepe v. Peak Time Parking, Corp.*, No. 18 Civ. 5384, 2021 WL 1172669, at *5 (S.D.N.Y. Mar. 29, 2021) (citing *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 67-68 (2d Cir. 2003)).

The *Brock* factors "include: (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Brock*, 840 F.2d at 1058-59. The factors are "nonexclusive and overlapping to ensure that the [Supreme Court's] economic realities test . . . is sufficiently comprehensive and flexible to give proper effect to the [FLSA's] broad language." *Irizarry*, 722 F.3d at 105. "No factor is dispositive: 'rather, the test is based on a totality of the circumstances' analysis, with the ultimate question being whether the 'workers depend upon someone else's business for the opportunity to render service or are in business for themselves.'" *Hart*, 967 F. Supp. 2d at 912 (citing *Brock,* 840 F.2d at 1059). "Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided." *Brock*, 840 F.2d at 1059. "Regardless of what factors the court chooses to consider, based on the individual facts of the case, [this] ultimate question [considers] whether the putative employee is economically dependent on the putative employer." *Velu*, 666 F. Supp. 2d at 306.

**B.      Application of *Brock*'s Economic Reality Factors**

**1.      Degree of Control**

"To assess the degree of control that [Defendants] exercised over [Plaintiffs'] work, the Court considers whether [Defendants were] the ultimate decision maker on the main conditions of

[Plaintiffs'] work, including schedule, worker responsibilities, and compensation." *Sue v. CE Sec. LLC*, No. 21 Civ. 57, 2024 WL 1308405, at *7 (E.D.N.Y. Mar. 27, 2024). Here, the record, viewed in the light most favorable to Plaintiffs, "creates a material dispute of fact regarding whether [Defendants] set the relevant conditions of Plaintiff[s'] work." *See Vera v. The 6 Grp., LLC*, No. 21 Civ. 3696, 2025 WL 405816, at *3 (E.D.N.Y. Feb. 5, 2025).

Defendants argue that the Clubs did not exercise control over Plaintiffs because Mustafa Diop,[6] "a third party through whom the Club[s] contracted [restroom attendant] services," was singularly responsible for attendant hiring, training, scheduling, and oversight. Defs.' Mem. at 3. In ascribing this responsibility to Mustafa, Defendants contend that Plaintiffs were thus independent contractors rather than Club employees. *Id.* at 10-12. Plaintiffs, however, counter that Mustafa is but a coworker who has never had any business arrangement or contract with Defendants. Pls.' Opp. at 2-3. Viewing the record in the light most favorable to the non-movant, the Court finds Defendants' arguments unavailing.

Defendants have not established that there is no genuine dispute of fact that Mustafa, a restroom attendant who has worked at Rick's since 2007, exercised independent control over Plaintiffs. Pls.' SOF ¶ 163. In fact, the record indicates that he regularly sought permission from, and reported to, Club management regarding restroom attendant scheduling. *See* Mizrahi Decl., Ex. O, at 15-16, ECF No. 131-15. Club managers not only instructed him on when attendants were needed but also oversaw and evaluated attendants' work. In a text message on March 17, 2019, Thomas Campbell, Hoops general manager, informed Mustafa: "I need bathroom attendants that can stay until closing. They are leaving too early and when the floor is still busy," to which Mustafa responded, "Sorry about that. I'll fix it . . .You got my word. I'll fix it." Mizrahi Decl.,

---

[6] The Court subsequently refers to Mustafa Diop by his first name to distinguish him from Plaintiff Modou Diop.

Ex. P, at 16, ECF No. 131-16. On December 17, 2017, Charles Castro, Vivid general manager, texted: "This can't happen again we had 285 p[eople] in last night and no [rest]room Attendant [sic]," and Mustafa replied, "I'll fix it . . . Next time you don't see anyone in bathroom when they should [sic] just let me know asap . . . I'll deal with him." Mizrahi Decl., Ex. N, at 4, ECF No. 131-14. And in another text sent on September 1, 2018, Castro notified Mustafa that "[t]he [rest]room attendant left without telling anyone." *Id.* at 7.

Club management also unilaterally dismissed an attendant from their shift without Mustafa's input on at least two occasions. For example, in 2018, Rick's manager, Steven Deangelo, texted him that, "I told [an attendant] he doesn't need to be here today," and, "If [an attendant] wants, he can take today off. It's pretty quiet." Mizrahi Decl., Ex. O, at 15-16. Given the evidence of such text messages, it is evident that attendants were not managed by the former alone, nor were they "free" to arrive and depart whenever they wished, as Defendants argue in their Motion. Defs.' Mem. at 10.

Even *if*, as Defendants assert, Mustafa had broader discretion over restroom attendants' work, the record suggests that the Clubs still "unequivocally expressed the *right* to supervise [that] work." *See Brock*, 840 F.2d at 1060 (emphasis added). A reasonable jury could conclude that Defendants, and not Mustafa, were still "the ultimate decision maker on the main conditions of [Plaintiffs'] work, including schedule, worker responsibilities and compensation." *See Sue*, 2024 WL 1308405, at *7. And those "who exercise[ ] operational control over a business, including with respect to the conditions of employment[,] cannot insulate [themselves] from liability by inserting a manager into [their] relationship with an employee. Indeed, other courts have found FLSA liability even where a Defendant has delegated managerial power, but still (maybe even only once or twice a month) stops by to make sure that things are operating correctly." *Toxqui v. R&P Pizza Corp.*, No. 24 Civ. 3339, 2025 WL 2430569, at *5 (S.D.N.Y. Aug. 22, 2025); *see also*

8

*Keawsri v. Ramen-Ya Inc.*, No. 17 Civ. 2406, 2021 WL 3540671, at *6 (S.D.N.Y. Aug. 10, 2021) (finding that "[a] person need not 'be responsible for managing plaintiff employees—or, indeed, have directly come into contact with the plaintiffs, their workplaces, or their schedules,' to be an employer under FLSA" (quoting *Irizarry*, 722 F.3d at 110)). "[E]ven if [Defendants'] control were 'restricted, or exercised only occasionally,' that does not remove the employee from the protections of the FLSA." *Hart*, 967 F. Supp. 2d at 912 (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

Because the "overarching concern is whether, under the totality of the circumstances, [Defendants] *possessed* the power to control the workers in question," the Court is not persuaded that there is no dispute as to whether Mustafa had singular, definitive control over Plaintiffs' hiring, schedules, or work product. *See Lauriano v. Lucky Chicken Corp.*, No. 23 Civ. 9028, 2025 WL 1808701, at *1 (S.D.N.Y. July 1, 2025) (emphasis added). That the record demonstrates that Club management also *exercised* that power only further demonstrates that there is a genuine issue of material fact regarding Defendants' degree of control over Plaintiffs. Viewing the record in the light most favorable to Plaintiffs, the Court concludes that Defendants have not established that this factor supports a contractor, rather than an employment relationship for purposes of summary judgment.

### 2. Plaintiffs' Opportunity for Profit and Investment

"In analyzing this [second] factor, courts typically look at the extent of the economic risk which the worker incurred and how it compares to the risk undertaken by the employer, and whether the worker stood to earn a return on its investment." *Vera*, 2025 WL 405816, at *3. "Where a worker could not increase their profits through managerial skill or by investing capital into the business, courts usually find that this factor weighs in favor of an employment relationship." *Id.*

Defendants argue that Plaintiffs "invested heavily" in their own "businesses" by spending "hundreds of dollars every other week" to "purchas[e] products to serve customers" in Club restrooms. Defs.' Mem. at 12. Plaintiffs, however, argue that their economic risk and "ability to control the volume of business [were] exponentially less than Defendants'." Pls.' Mem. at 18. The Court agrees.

It is undisputed that outside of these products, which were personal amenities such as cologne, mouthwash, and mints, Defendants purchased all restroom supplies including toiletries and cleaning products. Pls.' SOF ¶¶ 33, 142-144. Further, Plaintiffs had no opportunity to use "managerial skill" or invest "capital into the business," because there is nothing in the record to suggest that Plaintiffs, as restroom attendants, were running a lucrative business. *See Vera*, 2025 WL 405816, at *3. Defendants cite to cases in their Motion to support a finding of independent contractor status, but these cases are inapplicable to the circumstances here because they involved plaintiffs with large, growing businesses involving tens of thousands of dollars of expenses. Pls.' Opp. at 22-23; *see, e.g.*, *Velu*, 666 F. Supp. 2d at 303 (involving plaintiff who had a "Independent Contractor Agreement" contract with defendants); *Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 144 (2d Cir. 2017) (involving plaintiff drivers who invested between $68,838 to $89,038 in their franchises); *Silk*, 331 U.S. at 719 (involving plaintiff driver-owners who "own[ed] their own trucks" and "hire[d] their own helpers"). As Defendants admit, the Plaintiffs here invest only "hundreds of dollars every other week purchasing" personal amenities. Defs.' Mem. at 12. Because "[i]n the economic reality test, large capital expenditures—as opposed to negligible items, or labor itself—are highly relevant to determining whether an individual is an employee or an independent contractor," *Saleem*, 854 F.3d at 144, the Court finds that Plaintiffs' small investments do not support a finding of an independent contractor relationship.

Defendants' position is further unavailing because it was the Clubs, and not Plaintiffs, that "heavily controlled customer access" to its front doors. *See Hart*, 967 F. Supp. 2d at 920. Since Defendants had the greatest say in who, and how many, customers entered the Clubs and its restrooms, they had a greater opportunity for profit and investment than Plaintiffs. In another case in this District involving Rick's exotic dancers, the Court found that because Rick's had primary "control over most critical determinants of the number of customers who visited the Club on any given night," they "exercised a high degree of control over" the workers' "opportunity for profit." *See id.* This Court agrees, finding that that the "extent of the economic risk which [Plaintiffs] incurred . . . was vastly less than the risk that [the Clubs] undertook." *Id.* Here, the economic risk incurred by Plaintiffs—specifically, their purchase of personal amenities for customers in the restrooms—can hardly be compared to that taken by the Clubs in running their upscale adult entertainment business. Accordingly, Defendants have not established that this factor weighs in favor of contractor, rather than an employee-employer, relationship for purposes of summary judgment.

### 3.    Degree of Skill and Initiative Required

As to the third *Brock* factor, the Court considers whether Plaintiffs exercised "a high degree of skill and independent initiative" that "weighs in favor of … independent contractor status." *Schwind v. EW & Assocs.*, 357 F. Supp. 2d 691, 701-02 (S.D.N.Y. 2005). Defendants assert that Plaintiffs meet this criterion because their success as restroom attendants "depended on how well they were able to keep . . . the restrooms clean" and "manag[e] their expenses, specifically the amount of money they spent on" personal amenities. Defs.' Mem. at 13-14; *see also Hart*, 967 F. Supp. 2d at 920. The Court disagrees.

First, Defendants' attempt to paint Plaintiffs as contractors who possessed the autonomy, entrepreneurial skill, and capital to operate an independent business venture is simply incompatible

11

with the undisputed facts present here. The Court agrees with the decision of another district court which, when confronted with a nearly identical issue of restroom attendants in gentleman's clubs, held that "perform[ing] the basic skills of cleaning, providing customers with toiletries, and security functions such as reporting misconduct to [Club] security" is not skilled work. *See Kariuki v. Shac, LLC*, No. 214 Civ. 1118, 2016 WL 6069927, at *5 (D. Nev. Oct. 13, 2016). For this reason, the Court cannot conclude that Plaintiffs exercised the "skill and independent initiative" characteristic of independent contractors. *See Schwind*, 357 F. Supp. 2d at 701.

Second, "while the [Clubs certainly] profited from the alleged independent contractors' work, the [Clubs'] profits were not *because of* the [Plaintiffs'] initiative, judgment, or foresight, as would be expected from a typical independent contractor." *See Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 17 Civ. 3556, 2019 WL 2866168, at *8 (S.D.N.Y. July 2, 2019), *aff'd sub nom.*, *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74 (2d Cir. 2020) (emphasis added). "Instead[,] the profits resulted from work that [was] simply more like piecework." *See id.* Because the record indicates that Plaintiffs had little opportunity to impact the business's bottom line through their own skill and initiative, Defendant has failed to establish that this factor weighs in favor of contractor, rather than an employment relationship for purposes of summary judgment.

### 4.    The Permanency and Duration of Employment

In considering the fourth factor, "courts have held that working relationships that last[ ] a period of years favor employment status." *Vera*, 2025 WL 405816, at *4. Here, it is undisputed that most Plaintiffs worked at the Clubs for extended periods of time: Diop from 2013 to 2023, Mbaye from 2009 to 2013 and again from 2016 to 2020, and Samb from 2021 to the present; with the lone exception of Diakite in 2019. Defs.' SOF ¶ 14-17; Pls.' SOF ¶¶ 58, 71, 85, 96. Given the years—and in Diop's case, the decade—that nearly all of the Plaintiffs spent working at the Clubs, the Court cannot conclude that this factor weighs in favor of their status as contractors rather than

12

employees for purposes of summary judgment.  Despite Defendants' claims that "it was completely up to Plaintiffs when and for how long" they worked, and that they were free to "provide their services elsewhere," Defs.' Mem. at 14, the Court joins the many others that have declined to accept this reasoning as supportive of an employment relationship.  *See, e.g., Hart*, 967 F. Supp. 2d at 921.  "That [Plaintiffs] were free to work at other clubs or in other lines of work, and that they were not permanent employees, does not distinguish them from countless workers in other areas of endeavor who are undeniably employees under the FLSA."  *See id.*.

### 5.      The Extent to Which Plaintiffs Were Integral to Defendants

Finally, Defendants have not established that the fifth *Brock* factor weighs in favor of a contractor, rather than an employment, relationship.  The economic realities test for this factor looks to "whether the work performed" was "an integral part of the business."  *Vera*, 2025 WL 405816, at *4.  Here, Defendants contend that "the Clubs would still have a viable business without restroom attendants," Defs.' Mem. at 15, while Plaintiffs assert that attendants are integral to ensuring Club safety, security, and atmosphere.  Pls.' Mem. at 19.  Viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that maintaining safety, security, and atmosphere of the Clubs is integral to the business of upscale adult nightclubs.  A reasonable jury could also conclude that functioning, clean restrooms are an integral part of Defendants' businesses.  Accordingly, Defendants have not established that this factor weighs in favor of a contractor, rather than an employment, relationship.

*          *          *

Considering the preceding factors together, the Court comfortably concludes that Defendants are not entitled to judgment as a matter of law that Plaintiffs were independent contractors rather than employees.  In fact, the record indicates that Defendants "exerted significant control over [Plaintiffs'] behavior; [Defendants] had the dominant opportunity for

13

profit; [Plaintiffs'] had no specialized skills and a limited real investment . . . and the [attendants] were integral to the success of [the Clubs]." *See Hart*, 967 F. Supp. 2d at 922. On this record, a reasonable jury could conclude that, as a matter of economic reality, Plaintiffs were employees.

## II.    NYLL

"'Employee' is defined nearly identically (and with equal circularity) in the FLSA and NYLL," *Hart*, 967 F. Supp. 2d at 922, and "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Luna v. HDMP LLC*, No. 13 Civ. 3325, 2014 WL 12543796, at *2 (E.D.N.Y. Aug. 28, 2014). The Second Circuit, however, "has articulated a standard for determining whether a worker is an employee or an independent contractor under the NYLL that is phrased differently than the FLSA inquiry." *Hart*, 967 F. Supp. 2d at 923 (citing *Irizarry*, 722 F.3d at 117). "[W]hile the FLSA focuses on the economic reality of the relationship, under the NYLL, the critical inquiry pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Vera*, 2025 WL 405816, at *5. "To determine whether a worker qualifies as an employee under the NYLL, courts analyze factors such as whether the worker: '(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule.'" *Id.* (quoting *Thomas v. TXX Servs., Inc.*, 663 Fed. App'x 86, 89 (2d Cir. 2016)). "Notwithstanding the separate NYLL inquiry, the Court is, however, mindful that there is general support for giving FLSA and the New York Labor Law consistent interpretations." *Hart*, 967 F. Supp. 2d at 924.

For reasons described above, summary judgment is not warranted on Plaintiffs' NYLL claim. In fact, viewing the evidence in the light most favorable to Plaintiffs, the economic realities present in Plaintiffs' work indicate an employment relationship under the relevant factors. Assuming the facts in their favor, the Court concludes that the "degree of control" exercised by

14

the Clubs is dispositive in finding employee status.  Further, because the economic realities test is based on a totality of the circumstances analysis, the Court returns to the ultimate question of whether the Plaintiffs "depend upon someone else's business for the opportunity to render service or are in business for themselves." *See id.* at 912.  Here, a reasonable jury could find that Plaintiffs depended on the Clubs to bring in customers that would then use the restroom facilities, making Plaintiffs "economically dependent" on Defendants.  *See Velu*, 666 F. Supp. 2d at 306. Accordingly, there is a genuine dispute of material fact as to whether Defendants employed Plaintiffs, and Defendants' motion for summary judgment under the NYLL must be denied.

## III.    RCIHHI's Dismissal as a Defendant

Last, Defendants argue that RCIHHI should be dismissed as a Defendant because it does not operate any of the Clubs directly.  The Court, however, concludes that as the Clubs' "parent or 'grandparent' company," Defs.' Mem. at 18-19, there is a genuine dispute of material fact regarding RCIHHI's oversight of the Clubs.  Defendants incorrectly claim that Plaintiffs provide no support for their assertion that RCIHHI is deeply involved in the management of the Clubs, which Plaintiffs claim includes: "(i) negotiating commercial leases; (ii) deciding hours of operation; (iii) deciding aesthetics; (iv) classifying employees; (v) deciding staff's rates and methods of payment; (vi) purchasing equipment; (vii) advertising; (viii) setting a cover charge; and (ix) budgeting other operating expenses at each Gentlemen's Club."  Pls.' Opp. at 22. However, Plaintiffs cite to RCIHHI's 10-K filings for the last several years, which all indicate a significant degree of oversight and monitoring of all individuals within each of the Clubs.  Pls.' SOF ¶ 145.  Defendants, on the other hand, provide no factual support to dispute the role that RCIHHI plays in setting the terms of Plaintiffs' employment.  Accordingly, the Court concludes that the claims against RCIHHI cannot be dismissed on this record.

**CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment is **DENIED**. The Clerk of Court is respectfully requested to terminate ECF No. 118.

Within 10 days of this Opinion, the Parties are ORDERED to submit a joint status letter indicating any forthcoming motions with a proposed briefing schedule.

SO ORDERED.

Dated: February 3, 2026

New York, New York

DALE E. HO

United States District Judge