# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELHADJI MBAYE, MODOU DIOP, TAHIROU DIAKITE, and TALLA SAMB, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RCI HOSPITALITY HOLDINGS, INC. f/k/a RICK'S CABARET INTERNATIONAL, INC., PEREGRINE ENTERPRISES, INC. d/b/a RICK'S CABARET NEW YORK, RCI 33RD VENTURES, INC. d/b/a HOOPS CABARET AND SPORTS BAR, 48 WEST 33RD STREET CORP. d/b/a HOOPS CABARET AND SPORTS BAR, RCI DINING SERVICES (37TH STREET), INC. d/b/a VIVID CABARET, ERIC LANGAN, and KES SENEVI, <br><br> Defendants. | **Case No. 1:23-cv-02967-DEH** <br><br> Hon. Dale E. Ho, U.S.D.J. |

## DEFENDANTS' OMNIBUS MOTION IN LIMINE

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    I. THE COURT SHOULD EXCLUDE REFERENCES TO *HART V. RICK'S CABARET INT'L, INC.* AND ANY OTHER PRIOR CIVIL OR CRIMINAL PROCEEDING INVOLVING DEFENDANTS.................................................................. 2

    II. THE COURT SHOULD EXCLUDE REFERENCES TO DEFENDANTS' AUGUST 2023 RECLASSIFICATION OF RESTROOM ATTENDANTS AS EMPLOYEES AS EVIDENCE THAT THEY WERE PREVIOUSLY MISCLASSIFIED.................................................................................................. 5

    III. THE COURT SHOULD EXCLUDE REFERENCES TO RCIHH'S SEC FILINGS ..................................................................................................................... 7

    IV. THE COURT SHOULD EXCLUDE IMPROPER LAY OPINION TESTIMONY ON THE ULTIMATE LEGAL CONCLUSION OF EMPLOYEE VERSUS INDEPENDENT CONTRACTOR STATUS ..................................................... 10

CONCLUSION................................................................................................................. 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arlio v. Lively*,
   474 F.3d 46 (2d Cir. 2007)................................................................................................3

*Brock v. Superior Care, Inc.*,
   840 F.2d 1054 (2d Cir. 1988)..........................................................................................11

*Fournier v. Erickson*,
   242 F. Supp. 2d 318 (S.D.N.Y. 2003)...............................................................................9

*Frankel v. Bally, Inc.*,
   987 F.2d 86 (2d Cir. 1993)..............................................................................................11

*Goussen v. Mendez Fuel Holdings LLC*,
   No. 18-20012-CIV, 2018 WL 5831084 (S.D. Fla. Nov. 7, 2018) .............................................5

*Hart v. Rick's Cabaret Int'l, Inc.*,
   967 F. Supp. 2d 901 (S.D.N.Y. 2013)................................................................ passim

*Hernandez v. Hacienda Mexicana Corp.*,
   No. 17-CV-5608 (NSR), 2018 WL 6427639 (S.D.N.Y. Dec. 6, 2018)....................................4

*Holick v. Cellular Sales of N.Y.*,
   LLC, No. 13-CV-738, 2014 WL 4771719 (N.D.N.Y. Sept. 24, 2014) ...................................6

*In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*,
   No. 18-MD-2865 (LAK), 2024 WL 4362968 (S.D.N.Y. Oct. 1, 2024) ..................................6

*Liger v. New Orleans Hornets NBA Ltd. P'ship*,
   No. 05-1936, 2008 WL 348800 (E.D. La. Feb. 6, 2008)..........................................................6

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
   232 F. Supp. 3d 558 (S.D.N.Y. 2017)...............................................................................3

*Oakland Oil Co. v. Conoco, Inc.*,
   144 F.3d 1308 (10th Cir. 1998) ........................................................................................11

*Old Chief v. United States*,
   519 U.S. 172 (1997)..........................................................................................................1

*S.E.C. v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y., 2013)...............................................................................2

*Scott Hutchison Enterprises, Inc. v. Cranberry Pipeline Corp.*,
No. 3:15-13415, 2016 WL 11584851 (S.D. W. Va. 2016) ......................................................12

*Simonds v. Boyer*,
No. 2:21-CV-841, 2025 WL 2852137 (W.D. Pa. Oct. 8, 2025) ................................................4

*Smith v. Family Video Movie Club, Inc.*,
Case No. 11-C-1773, 2017 WL 568992 (N.D. Ill. Feb. 13, 2017) ............................................6

*Thomas v. Texaco, Inc.*,
998 F. Supp. 368 (S.D.N.Y. 1998) ........................................................................................11

*U.S. v. McIver*,
470 F.3d 550 (4th Cir. 2006) .................................................................................................11

*United States v. Hill*,
279 F. App'x 90 (2d Cir. 2008) ................................................................................................2

*Wilkins v. Just Energy Group, Inc.*,
No. 13 C 5806, 2019 WL 13251179 (N.D. Ill. Aug. 4, 2019) ..................................................6

*Zoll v. Ruder Finn, Inc.*,
No. 02 Civ. 3652(CSH), 01 Civ. 1339(CSH), 2004 WL 527056 (S.D.N.Y. Mar. 16, 2004) ....9

**Statutes**

FLSA ............................................................................................................................... passim

**Rules**

Fed. R. Evid. 103 .....................................................................................................................2

Fed. R. Evid. 401 ...............................................................................................................1, 4, 9

Fed. R. Evid. 402 ..................................................................................................................1, 9

Fed. R. Evid. 403 ............................................................................................................1, 3, 4, 9

Fed. R. Evid. 407 .................................................................................................................5, 6

Fed. R. Evid. 701 ...................................................................................................................11

Fed. R. Evid. 702 ...................................................................................................................11

**Other Authorities**

17 C.F.R. § 210.3A-02 ..............................................................................................................8

**INTRODUCTION**

Defendants RCI Hospitality Holdings, Inc. f/k/a Rick's Cabaret International, Inc. ("RCIHH"), Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York, RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar, 48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar, RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret (collectively, the "Club Defendants" or the "Clubs"), Eric Langan, and Kes Senevi (collectively, "Defendants"), by and through their undersigned counsel, Akerman LLP, respectfully move *in limine* to preclude Plaintiffs from presenting certain irrelevant, unfairly prejudicial, and otherwise inadmissible evidence, testimony, and argument at trial.  Specifically, Defendants request that this Court exclude: (I) references to *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013), and any other prior civil or criminal proceeding involving Defendants; (II) references to the August 2023 reclassification of restroom attendants as employees; (III) references to RCIHH's SEC filings; and (IV) improper lay opinion testimony on the ultimate legal conclusion of employee versus independent contractor status.

**ARGUMENT**

Under the Federal Rules of Evidence, generally speaking, all "[R]elevant evidence is admissible."  *See* Fed. R. Evid. 402.  Conversely, "[i]rrelevant evidence is not admissible."  *Id.* "Relevant evidence" is evidence which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401.  Even relevant evidence, however, may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403; *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997)

(the Rule 403 balancing test reflects the principle that the risk of unfair prejudice may render even relevant evidence inadmissible where its tendency to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged" outweighs its probative value). "A district court has broad discretion regarding the admissibility of evidence . . ." *United States v. Hill*, 279 F. App'x 90, 95 (2d Cir. 2008). As an overall matter, "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d).

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y., 2013). For the reasons set forth below, the categories of evidence identified in this motion are irrelevant, unfairly prejudicial, or otherwise inadmissible, and should be excluded.

### I.

### THE COURT SHOULD EXCLUDE REFERENCES TO *HART V. RICK'S CABARET INT'L, INC.* AND ANY OTHER PRIOR CIVIL OR CRIMINAL PROCEEDING INVOLVING DEFENDANTS

Defendants respectfully move to preclude Plaintiffs, their counsel, and their witnesses from referencing, introducing evidence of, documents filed in, or arguing about *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013), or any other prior civil or criminal proceeding involving RCIHH, the Club Defendants, or the individual Defendants. *Hart* involved exotic dancers—a wholly different category of worker—who were found to have been misclassified as independent contractors under different factual circumstances than those at issue here. That case concerned conduct spanning a period from approximately 2005 through the resolution of the case in 2012. Not only does the case involve an entirely different category of worker, a different set of

2

factual circumstances surrounding the classification of worker, but the case was concluded over a dozen years ago. Permitting Plaintiffs to reference *Hart* or its outcome before this jury would be irrelevant to the classification of restroom attendants and would be profoundly prejudicial under Fed. R. Evid. 403, as would be references to any other case involving Defendants. Moreover, referencing the *Hart* case would necessarily open the door to evidence and testimony concerning the facts in that case, essentially resulting in a mini-trial regarding the differences between that case and this case.  Defendants anticipate that Plaintiffs will attempt to reference *Hart* as evidence of a pattern of misclassification. Such evidence would not be probative of the issues in this case, and would likely be prejudicial.   Plaintiffs should not be permitted to make these characterizations or otherwise introduce the *Hart* decision in the trial of this case.

Indeed "[c]ourts routinely exclude 'evidence relating to previous litigation involving one or both of the same parties' where the merits of those prior litigations would 'become inextricably intertwined with the case at bar,'" as "[t]he jury could easily confuse any evidence regarding the merits of [a prior action] with the merits of this case, causing undue prejudice . . ." *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 568 (S.D.N.Y. 2017) (quoting *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007)).

The *Hart* decision addressed whether exotic dancers at Rick's Cabaret were employees or independent contractors under the FLSA and NYLL.  967 F. Supp. 2d at 911.  The court's analysis turned on the economic-reality factors as applied to the facts and circumstances unique to *exotic dancer*s.  None of those factual findings bear on the classification of *restroom attendants*, who performed an entirely different role (maintaining restroom cleanliness and supplies) and operated under different arrangements (working through a third-party intermediary, Mustafa Diop). The

3

legal and factual analysis required for restroom attendants is categorically distinct from that performed in *Hart*.

Evidence is relevant only if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A judicial determination that exotic dancers were employees based on facts specific to that case does not tend to make it more or less probable that restroom attendants were employees. The workers are different, the factual circumstances are different, and the legal analysis, as applied to the different facts, is, therefore, different. *See Hernandez v. Hacienda Mexicana Corp.*, No. 17-CV-5608 (NSR), 2018 WL 6427639, at *3 (S.D.N.Y. Dec. 6, 2018) (excluding evidence of a prior wage-and-hour lawsuit because, among other reasons, there was a significant time gap between the cases and it involved different plaintiffs and wage and hour laws). *Hart* is therefore irrelevant.

Even if this Court were to find marginal relevance in the *Hart* decision, any such relevance is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. *See Simonds v. Boyer*, No. 2:21-CV-841, 2025 WL 2852137, at *2 (W.D. Pa. Oct. 8, 2025) ("[f]urther, even if this evidence were relevant in some manner (perhaps as impeachment), it is barred under Rule 403. The probative value of the evidence is so low, given that to even understand it, one would need to fully understand a completely separate case and credit the factfinder in that case (without a full understanding of the factual record)."). Permitting Plaintiffs to inform the jury that another court previously found that these same Defendants misclassified a different group of workers would invite the jury to decide this case on the basis of a prior judicial determination—rather than on the evidence actually presented—and would create an overwhelming risk that the jury would improperly conclude that "if they misclassified dancers, they must have misclassified restroom attendants, too." Relatedly, and perhaps most importantly, introducing decisions from other cases

would necessitate a mini-trial of what precisely was decided in the previous case(s) and would certainly confuse the jury. *Goussen v. Mendez Fuel Holdings LLC*, No. 18-20012-CIV, 2018 WL 5831084, at *2 (S.D. Fla. Nov. 7, 2018).

Accordingly, Defendants respectfully request that the Court preclude Plaintiffs from mentioning, referencing, or introducing any documents from *Hart*, its outcome, or any other civil or criminal proceeding not involving bathroom attendants, for any purpose.

**II.**

### THE COURT SHOULD EXCLUDE REFERENCES TO DEFENDANTS' AUGUST 2023 RECLASSIFICATION OF RESTROOM ATTENDANTS AS EMPLOYEES AS EVIDENCE THAT THEY WERE PREVIOUSLY MISCLASSIFIED

This action was commenced on April 8, 2023. Approximately four months later, in early August 2023, the Club Defendants made the business decision to discontinue contracting for restroom attendants through a third-party (Mustafa Diop), and began directly hiring restroom attendants as W-2 employees. Plaintiff Samb was hired as an employee starting in August 2023.

Defendants move to exclude all evidence, testimony, and argument referencing this August 2023 staffing change as evidence that the Plaintiffs were previously misclassified. The reclassification of bathroom attendants in August 2023 was a subsequent remedial measure under Fed. R. Evid. 407.

Defendants anticipate that Plaintiffs will seek to introduce evidence regarding the timing and circumstances of the Clubs' decisions to being employing bathroom attendants , and will argue that the subsequent change is evidence that Defendants were misclassifying Plaintiffs before that date. Plaintiffs should not be permitted to use the reclassification for that purpose.

Federal Rule of Evidence 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for

a warning or instruction." The rule reflects the strong public policy of "encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *In re Customs & Tax Admin. of Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-MD-2865 (LAK), 2024 WL 4362968, at *1 (S.D.N.Y. Oct. 1, 2024).

The Clubs' decision to discontinue the third-party arrangement and begin employing restroom attendants is precisely the type of subsequent remedial measure Rule 407 is designed to exclude. If admitted, the jury would almost certainly treat the reclassification as an implicit concession that the prior independent-contractor classification was wrong—which is exactly what Rule 407 prohibits. *See Wilkins v. Just Energy Group, Inc.*, No. 13 C 5806, 2019 WL 13251179, at *4–5 (N.D. Ill. Aug. 4, 2019) (excluding evidence that defendant reclassified door-to-door sales workers from independent contractor/exempt status to non-exempt employees after the class period, reasoning that such "evidence is inadmissible under Rule 407 as a subsequent remedial measure" and that its "probative value" on issues such as feasibility of hourly pay was "significantly outweighed by the likelihood that the jury would treat it as an admission of misclassification in earlier years"); *Holick v. Cellular Sales of N.Y.*, LLC, No. 13-CV-738, 2014 WL 4771719, at *2–3 (N.D.N.Y. Sept. 24, 2014) (finding that the defendants' reclassification of their work force after the plaintiff's FLSA suit was a remedial measure); *Smith v. Family Video Movie Club, Inc.*, Case No. 11-C-1773, 2017 WL 568992 (N.D. Ill. Feb. 13, 2017) (finding in an FLSA case that defendant's addition of new code in its timekeeping system which better accounted for time spent doing tasks after clocking out was inadmissible evidence, as it contravened Fed. R. of Evid. 407); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1936, 2008 WL 348800, at *2 (E.D. La. Feb. 6, 2008) (evidence of the employer's post-lawsuit compliance with the FLSA was "not relevant [in] determining whether the [employer could] claim the exemption during the

6

period of time before the lawsuit was filed . . . . [Such evidence] neither negates an essential element of the FLSA exemption, nor demonstrate[s] insufficient evidence to establish the FLSA exemption").

Accordingly, Defendants respectfully request that the Court exclude any reference to Defendants' reclassification of restroom attendants as employees.

### III.

### THE COURT SHOULD EXCLUDE REFERENCES TO RCIHH'S SEC FILINGS

RCIHH is a publicly traded holding company that is required by law to file a Form 10-K with the U.S. Securities and Exchange Commission, reporting *consolidated* revenues of $295.6 million in fiscal year 2024, $293.8 million in fiscal year 2023, and $267.6 million in fiscal year 2022. SEC filings state that, as of September 30, 2023, RCIHH operated approximately 69 establishments with roughly 3,778 employees company-wide—across dozens of separately incorporated subsidiary entities nationwide. Only three of those subsidiaries—the Club Defendants—are defendants in this case. Defendants move to preclude Plaintiffs from introducing or referencing RCIHH's SEC filings, including its 10-K filings, for any year.

Defendants anticipate that Plaintiffs will seek to introduce RCIHH's Form 10-K filings as trial exhibits and elicit testimony regarding RCIHH's consolidated revenue figures and its operation of approximately 69 establishments—as Plaintiffs did at the depositions of Mr. Campbell, Mr. Castro, and Mr. Kevlin. Plaintiffs should not be permitted to introduce this evidence, or examine witnesses regarding it, at trial.

RCIHH's public filings are irrelevant to any issue that a jury is tasked to decide in this case. Rather, the issues for trial are: (1) whether Plaintiffs were employees of the specific Defendants under the various tests applicable under the FLSA and NYLL, and (2) the amount of any unpaid wages. RCIHH's aggregate, company-wide revenue figures—which consolidate revenue from

approximately 69 establishments across numerous unrelated business lines and geographic markets—have no bearing on either of those questions.

The 10-K's consolidated reporting also should not be used to suggest that RCIHH is a joint employer of the restroom attendants at the individual Club Defendants. As a publicly traded holding company, RCIHH is legally required to report its financial results, employee counts, and operational data on a consolidated basis, encompassing all of its subsidiaries regardless of the degree of day-to-day operational control RCIHH exercises over any particular subsidiary's employment decisions. *See* 17 C.F.R. § 210.3A-02 (SEC Regulation governing "Consolidated financial statements of the registrant and its subsidiaries," providing that "[t]here is a presumption that consolidated financial statements are more meaningful than separate financial statements and that they are usually necessary for a fair presentation when one entity directly or indirectly has a controlling financial interest in another entity," and that, "[g]enerally, registrants shall consolidate entities that are majority owned and shall not consolidate entities that are not majority owned"). That mandatory consolidated presentation reflects an accounting and securities-disclosure obligation, not an admission or indicator of the type of actual control over hiring, firing, supervision, scheduling, or other terms and conditions of employment that governs the joint employer analysis under the FLSA and NYLL. Using RCIHH's consolidated SEC reporting to suggest joint employer status would therefore mislead the jury by conflating a regulatory reporting requirement with the substantive control inquiry that the joint employer test actually requires.

The 10-K revenue figures tell the jury nothing about whether a given restroom attendant at Rick's Cabaret New York, Hoops Cabaret, or Vivid Cabaret was an employee or independent contractor. Nor do they bear on the amount of any unpaid wages, which must be calculated by reference to hours worked and the applicable minimum wage and overtime rates—not by reference

8

to a parent company's nationwide revenues.  The financial data is therefore irrelevant under Fed. R. Evid. 401 and inadmissible under Rule 402.

Even if this Court determines that RCIHH's public filings have some marginal relevance, the evidence should be excluded under Rule 403 because its only practical function is to portray RCIHH as a large, wealthy corporate "deep pocket," thereby inviting the jury to decide the case—or inflate any damages award—based on RCIHH's perceived wealth rather than the merits.  In *Fournier v. Erickson*, 242 F. Supp. 2d 318, 330 (S.D.N.Y. 2003), the Southern District of New York excluded a "business strategy memorandum" from evidence, even though it had some relevance, because "the size of the figures contained in th[o]se discussions, including references to market share growth of 30 to 50 percent, tens of millions of new licensees, and revenue growth in the billions of dollars, [was] likely to significantly prejudice the jury despite the defendants' burden of establishing what portion of the overall gross revenues [was] actually attributable to factors other than the alleged infringement."

There is a substantial danger that the figures in RCIHH's public filings, including the 10-Ks, will mislead the jury as to the revenues Defendants have achieved and cause the jury to issue a verdict that has no relation to the issues in this case, but is rather based on Defendants' perceived wealth.  *See Zoll v. Ruder Finn, Inc.*, No. 02 Civ. 3652(CSH), 01 Civ. 1339(CSH), 2004 WL 527056, at *5 (S.D.N.Y. Mar. 16, 2004) ("Presentation at trial of [Defendant]'s sales numbers, some of which are quite impressive, would also be highly and unfairly prejudicial to Defendants. Evidence of wealth alone invites the jury to award Plaintiff sums based on the depth of [Defendant]'s pockets, rather than on the value contributed to Defendants' businesses by the use of the 1978 images or actual losses suffered by Plaintiff").

Indeed, the prejudice is compounded by the fact that RCIHH's revenue figures aggregate dozens of unrelated subsidiaries and business lines.  Presenting a nearly $300-million revenue figure to the jury would create the misleading impression of a vast, monolithic enterprise—when in fact the relevant entities are three individual club subsidiaries, and the disputed compensation consists of tips.

**IV.**

**THE COURT SHOULD EXCLUDE IMPROPER LAY OPINION TESTIMONY ON THE ULTIMATE LEGAL CONCLUSION OF EMPLOYEE VERSUS INDEPENDENT CONTRACTOR STATUS**

Defendants move to preclude Plaintiffs, their witnesses, and Plaintiffs' counsel from eliciting or offering lay opinion testimony that Plaintiffs "were employees," "were not independent contractors," or similar legal conclusions regarding worker classification.  Whether a worker is an employee or an independent contractor under the FLSA and NYLL is an ultimate legal question— to be decided by the jury under proper instructions from the Court on the pertinent factors—not a matter on which a lay witness is competent to opine.

Defendants anticipate that Plaintiffs will seek to elicit or emphasize testimony and sworn statements using the words "employ" or "employee"— including, but not limited to, the Scott White Action affidavits of Charlie Castro and Thomas Campbell in which they used the word "employ" in a colloquial sense and not as a legal classification of the workers—and will argue, as in their summary judgment opposition, that such statements constitute admissions that Plaintiffs were employees. Further, Defendants anticipate that Plaintiffs will themselves characterize their relationship with Defendants as an employer-employee relationship, in their testimony.

Federal Rule of Evidence 701 permits lay opinion testimony only when it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized

knowledge within the scope of Rule 702." A witness's characterization of a work relationship as "employment" or "independent contracting" is a legal conclusion that exceeds the bounds of lay opinion.

In *Thomas v. Texaco, Inc.*, 998 F. Supp. 368, 370 (S.D.N.Y. 1998), the court addressed whether a worker's own deposition testimony describing her position as a "contractor" controlled her employee-versus-independent-contractor status under Title VII. The court held that "the label used to describe the position is not dispositive," *Id*. (citing *Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir. 1993)), and noted that the plaintiff was "a layperson not qualified to give a legal conclusion as to whether the position to which she applied was one of an employee or independent contractor." *Id*. The court went on to explain that "[t]he determination of whether a plaintiff is an employee or an independent contractor is a question of law, while the existence and degree of the legal factors to be considered in this determination are questions of fact." *Id*. at 371 (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)). Those factors—including the hiring party's right to control the manner and means by which the work is accomplished, the skill required, the source of instrumentalities and tools, the duration of the relationship, and whether the work is part of the hiring party's regular business—are themselves questions of fact for the trier of fact to weigh, not legal labels for a witness to supply. *Id*. at 370–371.

Other courts have consistently held that witnesses may not offer testimony stating legal standards or legal conclusions. *See U.S. v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (opinion testimony that states a legal standard is generally inadmissible); *Oakland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) (same); *Scott Hutchison Enterprises, Inc. v. Cranberry Pipeline Corp.*, No. 3:15-13415, 2016 WL 11584851, at *2 (S.D. W. Va. 2016) (granting in part a motion in limine to limit a witness's testimony "from providing legal conclusions").

11

To be clear, Defendants do not seek to prevent Plaintiffs or their witnesses from testifying to underlying facts bearing on the factors the jury must evaluate under the FLSA and NYLL. Witnesses—including Plaintiffs themselves, the Clubs' general managers, and the third-party intermediary Mustafa Diop—may properly testify to: Plaintiffs' duties; how they were paid; who set their schedules; whether they could work elsewhere; whether they made a capital investment in their work; the duration of the relationship; who provided tools and supplies; and similar factual matters.

What witnesses may *not* do is testify to, or characterize their own or Plaintiffs' work as constituting, "employment," being an "employee," or "not being an independent contractor." Nor may counsel elicit such characterizations. Doing so usurps the jury's fact-finding role and risks having a witness's self-serving legal label improperly substitute for the multi-factor legal analysis the jury must undertake under the Court's instructions. Defendants respectfully request that the Court instruct counsel and admonish witnesses accordingly: witnesses may testify to facts, but the legal characterization of the working relationship is for the jury—properly instructed on the applicable legal standards—to determine.

## CONCLUSION

**WHEREFORE**, Defendants respectfully request that this Court grant Defendants' Omnibus Motion *in Limine* in its entirety and enter an Order precluding Plaintiffs, their counsel, and their witnesses from introducing, referencing, or eliciting testimony or argument regarding:

> (I) Any reference to *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013), its outcome, any documents filed therein, or any other prior civil or criminal proceeding involving Defendants, for any purpose.
> (II) Any reference to Defendants' August 2023 decision to begin employing restroom attendants.
> (III) Any reference to RCIHH's SEC filings, and that these filings not be admitted or published to the jury; and

12

(IV) Any lay opinion testimony characterizing the working relationship as one of "employment" or opining that Plaintiffs "were employees" or "were not independent contractors," or a similar characterization with an instruction that witnesses may testify to underlying facts but not legal conclusions.

Defendants further request any other and further relief this Court deems just and proper.

Respectfully submitted,

**AKERMAN LLP**

By:  /s/ Jeffrey A. Kimmel
      Jeffrey A. Kimmel, Esq.
      M. Adil Yaqoob, Esq.
      Akerman LLP
      1251 Avenue of the Americas, 37th Floor
      New York, New York 10020
      *Attorneys for Defendants*

Dated: New York, New York
      August 11, 2026