UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Elhadji Mbaye, et al.,

Plaintiffs,

v.

RCI Hospitality Holdings, Inc., et al.,

Defendants.

23-CV-2967 (DEH)

ORDER

DALE E. HO, United States District Judge:

Attached to this Order are: (1) the jury charge and blank verdict form in this case, and (2) the jury's verdict form with juror signatures redacted (Court Exhibit 2).

SO ORDERED.

Dated: November 16, 2026
New York, New York

DALE E. HO
United States District Judge

***Elhadji Mbaye, et al. v. RCI Hospitality Holdings, Inc., et al.*, No. 23 Civ. 2967**

**FINAL JURY INSTRUCTIONS**

Members of the Jury: Now that you have the evidence, it becomes my duty to give you instructions concerning the law applicable to this case. I am going to read my instructions to you.

My instructions to you will be in three parts.

First, I will give you general instructions – for example, about your role as the jury, what you can and cannot consider in your deliberations, and the burden of proof.

Second, I will describe the law that you must apply to the facts as you find them from the evidence in this case. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

Finally, I will give you some instructions for your deliberations.

## I. ROLE OF THE JURY

You, the members of the jury, are the sole and exclusive judges of the facts. Your duty is to decide what the facts are from the evidence. You are allowed to consider the evidence in the light of your own observations and experiences. After you have decided what the facts are, you will have to apply those facts to the law that I give you in these and in my other instructions. Do not let sympathy, or your own likes or dislikes, influence you. You must weigh and consider the evidence without regard to prejudice or passion for or against any party. It is your duty to accept my instructions as to the law, whether you agree with them or not. You have taken an oath to follow the law that I give you in my instructions and to apply them to the facts as you determine them. That is how you will reach your verdict. If either party has stated a legal principle

differently from any that I state to you in my instructions, it is my instructions that you must follow.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, or only part of it, or none of it. In deciding what testimony to believe, you may consider a number of factors, including the following:

(1) The opportunity and ability of the witness to see or hear or know the things the witnesses testifies to;

(2) The quality of the witness's understanding and memory;

(3) The witness's manner while testifying;

(4) Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

(5) Whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) How reasonable the witness's testimony is when considered in the light of other evidence you believe; and

(7) Any other factors that bear on believability.

The weight of the evidence does not depend on the number of witnesses who testify. A fact may be proved by the testimony of just one witness if you believe that witness. What matters is not how many people testified about something, but how believable and reliable you find that testimony. The law requires you to come to a just verdict based only on the evidence, your common sense, and the law that I give you in my instructions, nothing else.

### A. The Parties

As you know, the Plaintiffs in this case are Elhadji Mbaye, Modou Diop, Tahirou Diakite, and Talla Samb. The Defendants in this case are RCI Hospitality Holdings, Inc.; Peregrine Enterprises, Inc., which does business as Rick's Cabaret New York; RCI 33rd Ventures, Inc., which does business as Hoops Cabaret and Sports Bar; 48 West 33rd Street Corp., which also does business as Hoops Cabaret and Sports Bar; RCI Dining Services (37th Street), Inc., which does business as Vivid Cabaret; Eric Langan; and Kes Senevi. In reaching your verdict, you must remember that all parties stand equal before a jury in the courts of the United States. No party is entitled to any greater or lesser consideration by you. The fact that one party is a corporation and the other is an individual must not affect your deliberations. A corporation is entitled to the same fair and impartial consideration as any individual.

### B. Conduct of Counsel

The lawyers are here as advocates for their clients. They have given you their views of the evidence and their arguments in favor of their client's position. While you may consider their comments, nothing that the attorneys say is evidence and their comments are not binding upon you.

### C. Direct and Circumstantial Evidence

There are two types of evidence that you may properly use in reaching your verdict. The first type is direct evidence. Direct evidence of a fact in issue is presented when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise observed through the five senses. The second type of evidence is circumstantial evidence. Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

There is a simple example of circumstantial evidence that is often used in this courthouse.

Assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day outside. Also assume the courtroom shades were drawn and you could not look outside. Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence. You infer on the basis of your reason, experience, and common sense from one established fact the existence or the nonexistence of some other fact. The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proved. It is for you, and you alone, to decide what inferences you will draw.

Importantly, circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence. It asks only that you consider all the evidence presented.

### D. What is and what is not evidence

What, then, is the evidence in the case?

The evidence in this case is (1) the sworn testimony of the witnesses, (2) the documents and other things I receive as exhibits, and (3) the parties' stipulations, that is, the facts that I told you the parties have agreed are true, or other facts I tell you to accept as true.

Nothing else is evidence.

Lawyers' statements, arguments, questions, and comments are not evidence. Objections are also not evidence. Lawyers have a right—and sometimes a duty— to object when they believe something should not be part of the trial. Do not be influenced one way or another by objections to any testimony or evidence. If I sustained a lawyer's objection to a question or an exhibit, that means the law does not allow you to consider that information. When that happens, you have to ignore the question or the exhibit, and you must not try to guess what the information might have been. If I overruled an objection, that means that I have decided it is legally permissible that certain testimony or evidence to be introduced, but that does not mean that I have decided on its importance or significance. That is for you to decide.

In addition, documents or other things that might be in court or talked about, but that I do not receive as exhibits are not evidence. Moreover, testimony or exhibits that have been stricken or excluded by me from the record, or told you to disregard, are not evidence and may not be considered by you in rendering your verdict. Do not speculate about what a witness might have said or what an exhibit might have shown. Also, anything you see or hear about this case outside the courtroom is not evidence and you must not consider it.

Along these lines, you will recall that, among the exhibits received in evidence, some documents had portions blacked out, or "redacted." As I previously told you, when you see redactions in the documents, that means that either the parties have agreed, or the Court has ruled, that you should not see the content that has been redacted. Redactions are not evidence, and in considering a redacted document, you should not speculate as to the content of the redaction nor base any decisions on the weight you give the document on the fact that the document contains a redaction. In considering a redacted document, you should only consider

the portion of the document visible to you. Finally, questions that I may have asked the witnesses are not evidence. You must not make any conclusions based on any of my questions, comments, or rulings that I hold any views for or against either of the parties or any of their witnesses. Nothing I said or did during this trial is meant to suggest what I think of the evidence or what I think your verdict should be.

**E. Impeachment**

A witness may be discredited, or "impeached," by contradictory evidence, or by deposition testimony or evidence showing that at some other time the witness said or did something, or failed to say or do something, that is inconsistent with the witness's present testimony. If you believe that a witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown to have knowingly testified falsely about anything that is important in proving a claim, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves. An act or omission is "knowingly" done, if the act is done voluntarily and intentionally, and not because of a mistake or accident or other innocent reason.

**F. Use of Depositions**

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

### G. Preponderance of the Evidence

The party with the burden of proof on any given issue has the burden of proving every disputed element of that issue by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish that issue by a preponderance of the evidence, you must decide against that party on the issue you are considering.

Different parties bear the burden of proof on different issues in this case. The plaintiffs have the burden of proving each element of their claims under the Fair Labor Standards Act, or FLSA, and the New York Labor Law, or NYLL. The defendants have the burden of proving their defense that they had a good faith basis to believe that their conduct did not violate the NYLL. The burden of proof on an issue never shifts: it remains throughout the trial on the party who must prove that issue.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether an issue has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties — that it is equally probable that one side is right as it is that the other side is right — then you must decide that issue against the party having the burden of proof. On the other hand, the party with the burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof — that what

that party claims is more likely true than not true — then the issue will have been proved by a preponderance of the evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

### H. Foreign Language Testimony

You have heard testimony from witnesses in other languages with the assistance of an official court translator, and some exhibits may include writing in other languages with a certified translation. In that case, you only are to consider that evidence provided through the official court translator and the certified translation of any written documents that are introduced as exhibits. It is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English translation and disregard any different meaning.

## II. SUBSTANTIVE ISSUES

That completes my introductory instructions. Let me now turn to the law that applies to the issues in this case.

### A. FLSA

- The plaintiffs—Elhadji Mbaye, Modou Diop, Tahirou Diakite, and Talla Samb—bring this action against the defendants—RCI Hospitality Holdings, Inc.; Peregrine Enterprises Inc., which does business as Rick's Cabaret New York; RCI 33rd Ventures, Inc., which does business as Hoops Cabaret and Sports Bar; 48 West 33rd Street Corp., which also does business as Hoops Cabaret and Sports Bar; RCI Dining Services (37th Street), Inc., which does business as Vivid Cabaret; Eric Langan; and Kes Senevi—under the Fair

Labor Standards Act, or FLSA, and the New York Labor Law, or NYLL. I will begin with instructions for the plaintiffs' claims under the FLSA.

- The FLSA enables plaintiffs to sue their employers when they believe they have not been paid the required federal minimum wage, taking into account applicable unreimbursed equipment costs and wage deductions.

**1. Failure to Pay Minimum Wage**

- Plaintiffs claim that they were not paid the required minimum wage under the FLSA.
- Under the FLSA, an employer must pay each employee the applicable minimum wage for all hours worked.
- In order to find a defendant liable to a plaintiff for failure to pay minimum wage, under the FLSA, you must find by a preponderance of the evidence:
    - First, that the plaintiff is an employee rather than an independent contractor;
    - Second, that the defendant was an employer of the plaintiff;
    - Third, that the plaintiff was engaged in commerce or in the production of goods for commerce, or employed by an enterprise engaged in commerce; and
    - Fourth, that the plaintiff was paid less than the applicable federal minimum wage, taking into account applicable unreimbursed equipment costs and wage deductions, for all hours worked. "Hours worked" includes all time during which an employee is required to be on the employer's premises, on duty, or at a prescribed work place.
- The parties have stipulated to the third required element as follows:
    - For the Fair Labor Standards Act to apply to a business, the business must have a certain annual gross volume of sales made or business done. The parties have

stipulated that each corporate Defendant here met that threshold during the relevant period. You should treat this fact as proved.

- Accordingly, all Plaintiffs have satisfied the third element of their claim, that the plaintiff was engaged in commerce or in the production of goods for commerce, or employed by an enterprise engaged in commerce.
- Only if you find a defendant liable should you then reach the question of damages, which I will discuss later.

**2. Employment Status of Plaintiffs**

- For purposes of the FLSA, whether workers are employees or independent contractors ultimately turns on whether the workers depend on someone else's business for the opportunity to render service or are instead in business for themselves. This inquiry is based on the totality of circumstances, and you should evaluate the question as a matter of economic reality. In evaluating this, you may consider, among other things, the following factors:

1. The degree of control exercised by the purported employer(s) over the Plaintiffs;
2. The Plaintiffs' opportunities for profit or loss and their investment in the business;
3. The degree of skill and independent initiative required to perform the Plaintiffs' work;
4. The duration or permanence of the working relationship between the Plaintiffs and their purported employer(s);
5. The extent to which Plaintiffs' work is an integral part of the business of their purported employer(s).

- No single factor is determinative in making this decision. Rather, you should consider all of these factors, and any other factor that you deem relevant to the inquiry, in making your decision.

**3. Status of Defendant Clubs**

- Defendants contend that even if Plaintiffs were employees, a third party named Mustafa Diop—not the Defendant clubs—was Plaintiffs' employer. For each Plaintiff you determine was an employee and not an independent contractor, you must determine whether any of the Defendant clubs was the Plaintiff's employer. Under the law, it is possible that a worker can have more than one employer. This concept is known as "joint employment." Therefore, the fact that Mustafa Diop may or may not qualify as a Plaintiff's employer does not necessarily mean that a Defendant club was or was not also an employer of a Plaintiff.
- As with the employment status of Plaintiffs, the focus here is on the economic reality of the situation, based on the totality of the circumstances. In determining whether a club acted as a Plaintiff's employer, you may consider whether the club:

1. Had the power to hire and fire the Plaintiff;
2. Supervised and controlled the Plaintiff's work schedules or conditions of employment;
3. Determined the Plaintiff's rate and method of payment; and
4. Maintained employment records.

- In addition to these factors, which evidence "formal" control, you are permitted to consider other factors that evidence "functional" control, including the following:

1. Whether the premises and equipment of the club were used for the Plaintiff's work;

2. Whether the Plaintiff was part of a business that could or did shift as a unit from one putative joint employer to another;
3. The extent to which the Plaintiff performed a discrete job that was integral to the business of the club;
4. Whether responsibility for the Plaintiff's work could pass from Mustafa Diop to another entity without material changes;
5. The degree to which the club or its agents supervised the Plaintiff's work; and
6. Whether the Plaintiff worked exclusively or predominantly for the club.

- These factors are not exhaustive, and you may determine that a club is or is not an employer without finding that it meets, or does not meet, any or all of these factors. You may also consider any other factors that you think are relevant to determining whether a club had formal or functional control over a Plaintiff's employment, and thus qualified as the Plaintiff's employer.

**4. Joint Employment: RCI Hospitality Holdings, Inc.**

- Under the law, it is possible that a worker can have more than one employer. This concept is known as "joint employment." For any Plaintiffs you find to be employees of a club, you must also decide whether RCI Hospitality Holdings, Inc. was their joint employer. Here, too, the focus is on the economic reality of the situation, based on the totality of the circumstances. In determining whether RCI Hospitality Holdings, Inc. acted as a Plaintiff's employer, you may consider whether RCI Hospitality Holdings, Inc.:

    1. Had the power to hire and fire the Plaintiff;

2. Supervised and controlled the Plaintiff's work schedules or conditions of employment;
3. Determined the Plaintiff's rate and method of payment; and
4. Maintained employment records.

- In addition to these factors, which evidence "formal" control, you are permitted to consider other factors that evidence "functional" control, including the following:

1. Whether the premises and equipment of RCI Hospitality Holdings, Inc. were used for the Plaintiff's work;
2. Whether the Plaintiff was part of a business that could or did shift as a unit from one putative joint employer to another;
3. The extent to which the Plaintiff performed a discrete job that was integral to the business of RCI Hospitality Holdings, Inc.;
4. Whether responsibility for the Plaintiff's work could pass from the club that employed him to another entity without material changes;
5. The degree to which RCI Hospitality Holdings, Inc. or its agents supervised the Plaintiff's work; and
6. Whether the Plaintiff worked exclusively or predominantly for RCI Hospitality Holdings, Inc.

- These factors are not exhaustive, and you may determine that RCI Hospitality Holdings, Inc. is or is not an employer without finding that it meets, or does not meet, any or all of these factors. You may also consider any other factors that you think are relevant to determining whether RCI Hospitality Holdings, Inc. had formal or functional control over the Plaintiff's employment, and thus qualified as the Plaintiff's employer.

**November 13, 2026**

**5. Single Integrated Enterprise**

- Under the law, it is possible for distinct but closely affiliated entities to be treated as a single employer for purposes of the FLSA. For any Plaintiffs you find to be employees of a club, but for whom you find RCI Hospitality Holdings, Inc. not to be a joint employer, you must also determine whether RCI Hospitality Holdings, Inc. and the club that employed the Plaintiff should be treated as a single employer. This is the case if the entities operated as a single integrated enterprise. Whether the entities operated as a single integrated enterprise depends on the following four factors:

  1. The interrelation of the operations of the club and RCI Hospitality Holdings, Inc.;
  2. Whether control of labor relations was centralized at RCI Hospitality Holdings, Inc.;
  3. Whether the club and RCI Hospitality Holdings, Inc. shared common management; and
  4. Whether the club and RCI Hospitality Holdings, Inc. had common ownership or financial control.

**6. Joint Employment: Individual Defendants**

- Individuals can qualify under the FLSA as "employers," and thus be liable for violations of the FLSA. For any Plaintiffs you find to be employees of a club, you must also decide whether Eric Langan and Kes Senevi are individually liable as joint employers of the Plaintiffs.
- Whether an individual is liable as an employer depends on the economic reality of the situation and the totality of the circumstances. To be individually liable as an employer, the individual must possess control over a company's operations in a manner that relates to the employee's employment. This is the case when the individual's role within the

company, and the decisions that role entails, directly affect the nature or conditions of the employee's employment. Ownership, or a stake in the company, is insufficient to establish that an individual is an employer unless the owner also has some involvement in the company's employment of its employees. But an individual can be an employer even where his control over the employee in question is restricted or exercised only occasionally. Even so, the individual must have had operational control over the employment of the Plaintiff you are considering, meaning that he was personally involved in or responsible for decisions that affected that Plaintiff's employment. Corporate title or general authority over a company's overall business affairs is not by itself sufficient.

- You may also consider several factors in determining whether an individual Defendant is an employer under the FLSA. No single factor is controlling. Relevant factors include whether the Defendant you are considering:

  1. Had the power to hire and fire the employee;
  2. Supervised and controlled the employee's work schedules or conditions of employment;
  3. Determined the employee's rate and method of payment; and
  4. Maintained employment records.

- These factors are not exhaustive. You may determine that an individual Defendant is or is not an employer without finding that they meet, or do not meet, any or all of these factors. You may also consider any other factors that you think are relevant to determining whether the individual Defendant you are considering had the power to control the means and manner of the Plaintiff's employment.

**7. Determining Hourly Pay Rate**

- To determine whether a plaintiff was paid less than the applicable federal minimum wage, you should determine the plaintiff's regular rate of pay. This should be determined for each workweek, by dividing the plaintiff's total amount of compensation (subtracting any wage deductions and unreimbursed equipment expenses as defined below) for the week by the total number of hours the plaintiff worked during that week.
- Plaintiffs bear the burden of proving the number of hours they worked and the compensation they received. You should carefully evaluate the evidence regarding the actual hours worked by each plaintiff and any compensation received, including tips and gratuities from patrons and any payments made by the Defendant clubs.
- Under the law, an employer is required to keep accurate records of its employees' hours worked and wages paid. If you find that a Plaintiff was the employee of one or more Defendants, and that the employer failed to keep such records, then the Plaintiff may satisfy his burden if he produces sufficient evidence to show the amount and extent of his uncompensated work as a matter of just and reasonable inference, even if he cannot prove the precise number of hours worked or amounts owed. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed, or evidence to negate the reasonableness of the inference to be drawn from the Plaintiff's evidence. If the employer(s) fails to do so, you may find the plaintiff's hours and wages based on a reasonable estimate, even though the result may be only approximate. This does not relieve any Plaintiff of the burden of proving that they performed undercompensated work; it means only that, where an employer's own recordkeeping

failure created the imprecision, that imprecision should not be held against the employees.

- Plaintiffs claim that on certain shifts—including shifts on the third floor of Rick's Cabaret, sometimes referred to as the "Champagne Room"—their employer did not pay them an hourly wage or percentage of tips, but instead a fixed flat payment for a full shift regardless of how many hours the shift lasted. If you find that a plaintiff worked a shift for which he was paid such a flat rate, you must determine the number of hours actually worked during that shift and divide the flat payment by that number of hours to calculate the plaintiff's effective hourly rate for the shift.
- Plaintiffs bear the burden of proving that the compensation they received, including tips and other payments, fell below the federal minimum wage rate.
- The federal minimum wage rate at all relevant times for this case was $7.25 per hour.

**8. Equipment Costs**

- Plaintiffs claim that their employers failed to reimburse them for required equipment costs under the FLSA, such as cologne, mints, gum, mouthwash, and air deodorizer.
- The FLSA prohibits employers from requiring employees to purchase or maintain "tools of the trade" when the cost of doing so reduces the employee's compensation below the required federal minimum wage in any workweek.
- To establish that Defendants failed to reimburse them for required equipment costs under the FLSA, you must find by a preponderance of the evidence:

  1. First, that the plaintiff is an employee rather than an independent contractor;
  2. Second, that the defendant was an employer of the plaintiff;
  3. Third, that the defendant required the plaintiff to provide the items at issue;

4. Fourth, that the items at issue were used in or specifically required for the performance of the plaintiff's work;
5. Fifth, that the plaintiff paid the costs of those items without reimbursement; and
6. Sixth, that those costs reduced the plaintiff's wages below the applicable federal minimum wage in one or more workweeks.

**9. Wage Deductions**

- Plaintiffs claim that Defendants made unlawful deductions or required kickbacks from wages in violation of the FLSA, including deductions from gratuities that Plaintiffs received from club patrons and the $40 "house fee" Plaintiff Diakite claims he was required to pay.
- The FLSA prohibits employers from making deductions from an employee's wages when doing so reduces the employee's compensation below the required federal minimum wage in any workweek.
- To establish that Defendants made unlawful wage deductions under the FLSA, you must find by a preponderance of the evidence that:

1. First, that the plaintiff is an employee rather than an independent contractor;
2. Second, that the defendant was an employer of the plaintiff;
3. Third, that the defendant made a deduction from the plaintiff's wages;
4. Fourth, that the deduction was required, directly or indirectly, for the defendant's benefit or convenience; and
5. Fifth, that the deduction reduced the plaintiff's wages below the applicable minimum wage in one or more workweeks.

**10. Willfulness**

- If you find that one or more Defendants are liable to a Plaintiff for any of his FLSA claims, you must also determine whether that violation of the FLSA was willful. You must make that determination separately for each Defendant you find liable, unless you find that the Defendants acted as a single integrated enterprise as referred to under Section II.A.5.
- To prove that a Defendant's violation was willful, the Plaintiff you are considering must prove by a preponderance of the evidence that the Defendant either knew that such conduct was prohibited or showed reckless disregard for the applicable law. "Reckless disregard" means that the Defendant failed to make adequate inquiry into whether its conduct was in compliance with the FLSA. A reasonable but mistaken belief about the law is not by itself reckless disregard.

**B. NYLL**

- Plaintiffs also bring multiple claims under the New York Labor Law, also known as the NYLL.
- This statute enables plaintiffs to sue their employers when they believe they have not been paid the required New York minimum wage, taking into account applicable unreimbursed equipment costs, withheld tips, and wage deductions, and when they believe they have not received required wage notices and wage statements. These state law claims are based on the same facts as Plaintiffs' FLSA claims.

**1. Failure to Pay Minimum Wage**

- Plaintiffs claim that they were not paid the required minimum wage under the NYLL. Under the NYLL, an employer must pay each employee the applicable minimum wage for all hours worked.
- In order to find a defendant liable to a plaintiff for failure to pay minimum wage, under the NYLL, you must find by a preponderance of the evidence:
  - First, that the plaintiff is an employee rather than an independent contractor;
  - Second, that the defendant was an employer of the plaintiff;
  - Third, that the plaintiff was paid less than the applicable New York minimum wage, taking into account applicable unreimbursed equipment costs, withheld tips, and wage deductions.
- Only if you find a defendant liable should you then reach the question of damages, which I will discuss later.

**2. Failure to Provide Wage Notices**

- Plaintiffs claim that Defendants failed to provide them with written wage notices required under the NYLL.
- The NYLL requires every employer to provide employees with a notice at the time of hiring that contains specified information, including the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day; the employer's name; any "doing business as" names used by the employer; the physical address of the employer's main office; and the employer's telephone number.
- In order to find a defendant liable to a plaintiff for failure to provide wage notices, under the NYLL, you must find by a preponderance of the evidence:

  - First, that the plaintiff is an employee rather than an independent contractor;
  - Second, that the defendant was an employer of the plaintiff;
  - Third, that the defendant failed to provide the plaintiff with the required written wage notices at the time of hiring; and
  - Fourth, that the plaintiff experienced actual and concrete downstream harm as a result of the defendant's failure to provide the required wage and hour notices. The failure to provide a notice by itself is not such a harm.

- Only if you find a defendant liable should you then reach the question of damages, which I will discuss later.

**3. Failure to Provide Wage Statements**

- Plaintiffs claim that Defendants failed to provide them with wage statements required under the NYLL.
- The NYLL requires every employer to provide employees with a statement with every payment of wages. The wage statement must list, among other things, the dates of work covered by that payment; the employee's name; the employer's name, address, and phone number; the rate or rates of pay and basis of pay; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For employees not exempt from overtime compensation, the wage statement must also include the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.
- In order to find a defendant liable to a plaintiff for failure to provide wage statements, under the NYLL, you must find by a preponderance of the evidence:
  - First, that the plaintiff is an employee rather than an independent contractor;

- Second, that the defendant was an employer of the plaintiff;
- Third, that the defendant failed to provide the plaintiff with the required wage statements; and
- Fourth, that the plaintiff experienced actual and concrete downstream harm as a result of the defendant's failure to provide the required wage statements. The failure to provide a statement by itself is not such a harm.

- Only if you find a defendant liable should you then reach the question of damages, which I will discuss later.

**4. Employment Status of Plaintiffs**

- Like the FLSA, the NYLL applies only to employees and not to independent contractors. As under the FLSA, Defendants contend that Plaintiffs were independent contractors and not employees for purposes of the NYLL. You must therefore decide whether Plaintiffs were employees or independent contractors under the NYLL. The test for determining whether an individual is an employee or independent contractor under the NYLL is distinct from the test under the FLSA. Whether someone is an employee for purposes of the NYLL depends on the degree of control exercised by the purported employer over the results produced by the purported employee or the means used to achieve those results. You may consider factors that pertain to the degree of control exercised by the purported employer such as:

1. Whether the Plaintiff worked at his own convenience;
2. Whether the Plaintiff was free to engage in other employment;
3. Whether the Plaintiff received fringe benefits;
4. Whether the Plaintiff was on the purported employer's payroll; and

5. Whether the Plaintiff was on a fixed schedule.

No single factor is determinative.

**5. Employers of Plaintiffs**

- The requirements for qualifying as an employer under the NYLL do not differ from those under the FLSA. Thus, for any Plaintiff you find to be an employee, you must determine whether any Defendant club was the Plaintiff's employer, by following the instructions given earlier for determining the employer status of the Defendant clubs under the FLSA. You should then consider whether RCI Hospitality Holdings, Inc., Eric Langan, and/or Kes Senevi are additionally liable as employers by following the instructions given earlier for determining joint employment and/or the existence of a single integrated enterprise under the FLSA. The fact that one Defendant may be found liable does not necessarily mean that any other Defendant is also liable.

**6. Determining Hourly Pay Rate**

- To determine whether a plaintiff was paid less than the applicable New York minimum wage, you should determine the plaintiff's regular rate of pay. This should be determined for each workweek, by dividing the plaintiff's total amount of compensation (subtracting any wage deductions, withheld tips, and unreimbursed equipment expenses as defined below) for the week by the total number of hours the plaintiff worked during that week.
- Plaintiffs bear the burden of proving the number of hours they worked and the compensation they received. You should carefully evaluate the evidence regarding the actual hours worked by each plaintiff and any compensation received, including tips and gratuities from patrons and any payments made by the Defendant clubs.

- Under the law, an employer is required to keep accurate records of its employees' hours worked and wages paid. If you find that a Plaintiff was the employee of one or more Defendants, and that the employer(s) failed to keep such records, then the Plaintiff may satisfy his burden if he produces sufficient evidence to show the amount and extent of his uncompensated work as a matter of just and reasonable inference, even if he cannot prove the precise number of hours worked or amounts owed. The burden then shifts to the employer(s) to come forward with evidence of the precise amount of work performed, or evidence to negate the reasonableness of the inference to be drawn from the Plaintiff's evidence. If the employer(s) fail to do so, you may find the plaintiff's hours and wages based on a reasonable estimate, even though the result may be only approximate. This does not relieve any Plaintiff of the burden of proving that they performed undercompensated work; it means only that, where an employer's own recordkeeping failure created the imprecision, that imprecision should not be held against the employees.
- Plaintiffs claim that on certain shifts—including shifts on the third floor of Rick's Cabaret, sometimes referred to as the "Champagne Room"—their employer(s) did not pay them an hourly wage or percentage of tips, but instead a fixed flat payment for a full shift regardless of how many hours the shift lasted. If you find that a plaintiff worked a shift for which he was paid such a flat rate, you must determine the number of hours actually worked during that shift and divide the flat payment by that number of hours to calculate the plaintiff's effective hourly rate for the shift.
- Plaintiffs bear the burden of proving that the compensation they received, including tips and other payments, fell below the federal minimum wage rate.

- The applicable New York minimum wage rate was the following amount for the following time periods:
  - From December 31, 2016 through December 30, 2017: $11.00 per hour
  - From December 31, 2017 through December 30, 2018: $13.00 per hour
  - From December 31, 2018 through December 30, 2023: $15.00 per hour

**7. Equipment Costs**

- Plaintiffs claim that their employers failed to reimburse them for required equipment costs under the NYLL, such as cologne, mints, gum, mouthwash, and air deodorizer.
- Under the NYLL, an employer may not require an employee to bear the cost of tools or equipment if doing so reduces the employee's wages below the applicable minimum wage.
- To establish that Defendants failed to reimburse them for required equipment costs under the NYLL, you must find by a preponderance of the evidence:

1. First, that the plaintiff is an employee rather than an independent contractor;
2. Second, that the defendant was an employer of the plaintiff;
3. Third, that the defendant required the plaintiff to purchase or maintain the items at issue;
4. Fourth, that the items at issue were used in or specifically required for the performance of the plaintiff's work;
5. Fifth, that the plaintiff paid the costs of those items without reimbursement; and
6. Sixth, that those costs reduced the plaintiff's wages below the applicable minimum wage.

- The Plaintiff bears the burden of proving the cost of any such items. The Plaintiff is not required to produce receipts or other written records of these purchases. You may determine the items purchased, their costs, and how often they were purchased based on testimony, including a Plaintiff's own reasonable estimate, if you find it credible.

**8. Tip Withholding**

- Plaintiffs claim that Defendants unlawfully withheld tips from them, by retaining a portion of "funny money" gratuities.
- Under the NYLL, no employer may demand or accept, directly or indirectly, any part of the gratuities received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee.
- To establish that a defendant withheld tips, under the NYLL, you must find by a preponderance of the evidence:
  - First, that the plaintiff is an employee rather than an independent contractor;
  - Second, that the defendant was an employer of the plaintiff; and
  - Third, that the defendant demanded, accepted, or retained a portion of the plaintiff's gratuities.

**9. Wage Deductions**

- Plaintiff Diakite claims that Defendants made unlawful deductions from wages by requiring him to pay a weekly "house fee" of $40.
- Under the NYLL, an employer may not make deductions from wages unless the deduction is authorized by law or is expressly authorized in writing by the employee and is for the benefit of the employee.

- Under the facts of this case, to establish that Defendants made unlawful wage deductions under the NYLL, you must find by a preponderance of the evidence:

  1. First, that Plaintiff Diakite is an employee rather than an independent contractor;

  2. Second, that the defendant was an employer of Plaintiff Diakite; and

  3. Third, that the defendant made a deduction from Plaintiff Diakite's wages.

- A fee that Plaintiff Diakite paid to any person who is not a Defendant is not a deduction made or received by a Defendant, unless directed or required by a Defendant directly or indirectly.

**C. Damages**

- I will now give you instructions on damages.

- If you find that a plaintiff has proved his claim against a defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I am giving you instructions about damages as an indication in any way that I believe any plaintiff should, or should not, win this case. Your first task is to decide whether any defendant violated the FLSA with regard to any plaintiff and whether any defendant violated the NYLL with regard to any plaintiff. I am instructing you on damages only so that you will have guidance if you decide that any defendant is liable and that any plaintiff is entitled to recover money from any defendant.

- If you find one or more of the Defendants liable on one or more of Plaintiffs' claims, then you must determine the sum of money that must be paid by the Defendant(s) to each Plaintiff as a result of that liability. These sums of money are called "damages." Damages must be based on evidence, not on speculation or sympathy, and Plaintiffs bear the burden of proving their damages by a preponderance of the evidence. You must

assess damages separately for each Plaintiff and for each claim on which you have found liability.

- For some of Plaintiffs' claims, your determinations will be in the form of monetary amounts. For other claims, you will make specific factual findings and the Court will calculate the monetary amount of any damages from those findings.
- I will discuss how to calculate damages for each of Plaintiffs' claims in turn.

**1. Damages for Failure to Pay Minimum Wage**

- You are not responsible for determining the amount of damages, if any, for any failure to pay minimum wage under the FLSA or NYLL. As reflected on the verdict form, you will determine the actual hours worked by the Plaintiff, the amount of compensation he received, and other information necessary to calculate any damages, bearing in mind the instructions I gave earlier on determining the hourly pay rate. I will then calculate any amounts Plaintiffs may be entitled to recover based on your factual findings.

**2. Liquidated Damages Under the NYLL and Good Faith**

- Plaintiffs may also be entitled to liquidated damages under the NYLL, which are additional damages equal to 100% of the total amount of underpaid wages. Defendants may avoid liquidated damages if they prove by a preponderance of the evidence that they had a good faith basis to believe that their conduct complied with the NYLL, meaning that they took active steps to ascertain the dictates of the NYLL and then acted to comply with them.

### 3. Damages for Failure to Provide Wage Notices and Wage Statements Under the NYLL

- If you find that one or more Defendants failed to provide a Plaintiff with the required wage notices under the NYLL at the time of hiring, the Plaintiff is entitled to an amount of damages set by the NYLL: $50 per work day for each day that the violation occurred or continued, up to a maximum of $5000 per Plaintiff.
- If you find that one or more Defendants failed to provide proper wage statements under the NYLL, the Plaintiff is entitled to an amount of damages set by the NYLL: $250 per workday for each day that the violation occurred or continued, up to a maximum of $5000 per Plaintiff.

## D. Instructions Pertaining to Specific Evidence

There are several pieces of evidence that require specific instructions about the purposes for which you may consider them.

### 1. Plaintiffs' Exhibit 1: Form 10-K Reports

You have seen excerpts from annual reports on Form 10-K that RCI Hospitality Holdings, Inc. filed with the Securities and Exchange Commission (Plaintiffs' Exhibit 1). You must not consider, for any purpose, any information about the company's revenues, sales, profits, earnings, assets, market value, size, acquisitions, stock price, or overall wealth or financial condition. In particular, you may not decide whether any Plaintiff is entitled to damages, or the amount of any damages, based on any Defendant's revenues, profits, stock price, market value, or ability to pay. Any damages must be based solely on the evidence of what each Plaintiff is owed.

You may otherwise consider the reports for any purpose for which you find them relevant.

**2. Plaintiffs' Exhibits 18, 19, and 20: Statements from the White Litigation**

You have seen two affidavits signed in August 2021, one by Charles Castro, the general manager of Vivid Cabaret (Plaintiffs' Exhibit 18), and one by Thomas Campbell, the general manager of Hoops Cabaret (Plaintiffs' Exhibit 19), and an affirmation signed by Michael Farber, an attorney (Plaintiffs' Exhibit 20). These documents were filed in a separate lawsuit in New York State court. That lawsuit did not concern restroom attendants, wages, tips, or whether any worker was an employee or an independent contractor. The affidavits use the word 'employ' in referring to restroom attendants. You must not treat that word as an admission, or as evidence, that any Plaintiff was an 'employee' under the Fair Labor Standards Act or the New York Labor Law. Whether a Plaintiff was an employee is a question that you alone must decide, by applying the legal tests I give you to and all of the evidence.

You may consider these documents for two limited purposes only: first, their bearing on whether restroom attendants were integral to the clubs' operations, which is one of several factors you will consider in determining the status of Plaintiffs as employees or independent contractors. And second, if you reach the question, whether a Defendant acted willfully. You may not consider these documents for any other purpose.

**3. References to the *Hart* Case**

You have heard references to a prior case, *Hart v. Rick's Cabaret International, Inc.*, in which a court decided in 2013 that exotic dancers who performed at Rick's Cabaret New York were employees rather than independent contractors under the Fair Labor Standards Act and the

New York Labor Law. You may consider the *Hart* case only on the question of willfulness or good faith, that is, what Defendants knew about the legal standards that generally govern whether a worker is classified as an employee or an independent contractor. You will reach that question only if you first find that one or more Defendants is liable to a Plaintiff.

You must not consider the *Hart* decision as evidence, in any way, that the Plaintiffs or any restroom attendants were employees. The *Hart* case did not involve restroom attendants, any of the Plaintiffs, Hoops Cabaret, or Vivid Cabaret. Whether a worker is an employee depends on the specific facts of that worker's own working relationship. Nor may you infer from the *Hart* case that any Defendant has a propensity to misclassify its workers.

**4. Deposition Testimony of and Statements by Shaun Kevlin**

You have heard portions of the deposition testimony of Shaun Kevlin and statements from his sworn declaration. Mr. Kevlin is not a party to this case. He gave his deposition testimony under oath on May 16, 2024, and you should consider it the same way you would consider testimony given in this courtroom. Mr. Kevlin did not testify at this trial. Through his attorney, he advised the Court and the parties that, if called to testify, he would assert his privilege under the Fifth Amendment to the United States Constitution and decline to answer virtually all questions, for reasons unrelated to this case. He has the right to do so. The privilege Mr. Kevlin asserted is personal to him. You should not speculate about his reasons for asserting it, and his assertion of the privilege is not, by itself, evidence that any Defendant did anything wrong.

You may, but are not required to, infer from Mr. Kevlin's assertion of the privilege that, on matters addressed in the portions of his deposition testimony and sworn declaration that were read to you, had he testified at this trial, his answers would have been unfavorable to one or more

Defendants in this case. In deciding whether to draw this inference, and how much weight to give it, you may consider all of the evidence, including that Mr. Kevlin answered questions under oath at his deposition and that this testimony is before you. Whether to draw this inference is for you alone to decide. An inference from Mr. Kevlin's assertion of the privilege is not by itself sufficient to prove any fact, including whether any Plaintiff was an employee of any Defendant. You must consider it together with all of the other evidence in deciding whether Plaintiffs have proved their claims by a preponderance of the evidence.

## III. Concluding Instructions

### A. Selection of Foreperson

In a few minutes, you are going to go into the jury room and begin your deliberations. Your first task will be to select a foreperson. The foreperson has no greater voice or authority than any other juror, but is the person who will communicate with me when questions arise and when you have reached a verdict. The foreperson is also who will be asked in open court to pass your completed Verdict Form to me.

### B. Sending Notes

You may have questions or comments for me as you deliberate. If you do, you can communicate with me by sending notes using forms and envelopes that you will be provided for that purpose. Your notes to me should be signed by the foreperson and should include the date and time they were sent. They should also be as clear and as precise as possible, as they will become part of the record in this case. Do not tell me or anyone else how you stand on any issue until after a unanimous verdict is reached.

### C. Right to See Exhibits and Hear Testimony

All of the exhibits will be given to you near the start of deliberations on a laptop. In addition, you will also be provided with a list of all the exhibits that were received into evidence.

If you prefer to view any evidence here in the courtroom or if you want any of the testimony submitted to you or read back to you, you may also request that. Keep in mind that if you ask for testimony, however, the court reporter must search through his or her notes, the parties must agree on what portions of testimony may be called for, and if they disagree I must resolve those disagreements. That can be a time-consuming process. So please try to be as specific as you possibly can in requesting portions of the testimony, if you do.

Again, your requests for testimony - in fact, any communication with the Court – should be made to me in writing, signed by your foreperson with the date and time, and given to one of the Court Security Officers.

### D. Juror Note-Taking

If any one of you took notes during the course of the trial, you should not show your notes to, or discuss your notes with, any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror’s view to no greater weight than those of any other juror. Finally, your notes are not to substitute for your recollection of the evidence in the case. If, during your deliberations, you have any doubt as to any of the testimony, you may—as I just told you—request that the official trial transcript that has been made of these proceedings be submitted or read back to you.

### E. Duty to Deliberate

The most important part of this case is the part that you as jurors are now about to play as you deliberate on the issues of fact. I know you will try the issues that have been presented to you according to the oath that you have taken as jurors. In that oath, you promised that you would well and truly try the issues joined in this case and render a true verdict.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views. Every juror should be heard. No one juror should hold the center stage in the jury room, and no one juror should control or monopolize the deliberations. If, after listening to your fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view. On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.

Your verdict must be unanimous. If at any time you are not in agreement, you are instructed that you are not to reveal the standing of the jurors—that is, the split of the note—to anyone, including me, at any time during your deliberations.

### F. Return of the Verdict

We have prepared a Verdict Form for you to use in recording your decisions, a copy of which is attached to these instructions. Do not write on your individual copies of the Verdict Form. My staff will give the official Verdict Form to Juror Number One, who should give it to the foreperson after the foreperson has been selected.

As you will see, the Verdict Form is kind of like those old "choose your own adventure" books. Depending on your answer to a question or questions, you will be directed to either answer another question or to sign the Verdict Form. You should draw no inference from the

questions on the Verdict Form as to what your verdict should be. The questions are not to be taken as any indication that I have any opinion as to how they should be answered.

When you have completed the Verdict Form, please review your answers to ensure that they accurately reflect your unanimous determinations. If they do, the foreperson should note the date and time and you should all sign the Verdict Form. The foreperson should then give a note—not the Verdict Form itself—to the Court Security Officer outside your door, stating that you have reached a verdict. Do not specify what the verdict is in your note. Instead, the foreperson should retain the Verdict Form and hand it to me in open court when I ask for it.

I will stress again that all of you must be in agreement with the verdict that is announced in court. Once your verdict is announced in open court and officially recorded, it cannot ordinarily be revoked.

### G. Closing Comments

Thank you again for your service and for the care and attention you have given this case, and for your thoughtfulness in the deliberations ahead of you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
Elhadji Mbaye, Modou Diop, Tahirou Diakite, and Talla Samb,

Plaintiffs, 23 Civ. 2967 (DEH)

-against-

RCI Hospitality Holdings, Inc., Peregrine Enterprises, Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret), Eric Langan, and Kes Senevi,

Defendants.
---------------------------------------------------------X

# VERDICT FORM

## I. Employment Relationship

**1. Has Elhadji Mbaye proven that he was an employee of any of the following entities or individuals within the meaning of the Fair Labor Standards Act? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes ____ No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No ____

RCI Hospitality Holdings, Inc.: Yes ____ No ____

Eric Langan: Yes ____ No ____

Kes Senevi: Yes ____ No ____

If your answer is Yes as to any Defendant, please answer questions 9, 10, and 21.

If your answer is No as to all Defendants, please skip questions 9, 10, and 21.

**2. Has Elhadji Mbaye proven that he was an employee of any of the following entities or individuals within the meaning of the New York Labor Law? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes ____ No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No ____

RCI Hospitality Holdings, Inc.: Yes ____ No ____

Eric Langan: Yes ____ No ____

Kes Senevi: Yes ____ No ____

If your answer is Yes as to any Defendant, please answer questions 17, 22, 23, 35, and 43.

If your answer is No as to all Defendants, please skip questions 17, 22, 23, 35, 36, 43, 44, 52, 53, and 54.

**3. Has Modou Diop proven that he was an employee of any of the following entities or individuals within the meaning of the Fair Labor Standards Act? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes ____ No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No ____

RCI Hospitality Holdings, Inc.: Yes ____ No ____

Eric Langan: Yes ____ No ____

Kes Senevi: Yes ____ No ____

If your answer is Yes as to any Defendant, please answer questions 11, 12, and 24.

If your answer is No as to all Defendants, please skip questions 11, 12, and 24.

**4. Has Modou Diop proven that he was an employee of any of the following entities or individuals within the meaning of the New York Labor Law? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes ____ No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No ____

RCI Hospitality Holdings, Inc.: Yes ____ No ____

Eric Langan: Yes ____ No ____

Kes Senevi: Yes ____ No ____

If your answer is Yes as to any Defendant, please answer questions 18, 25, 26, 37, and 45.

If your answer is No as to all Defendants, please skip questions 18, 25, 26, 37, 38, 45, 46, 56, 57, and 58.

**5. Has Tahirou Diakite proven that he was an employee of any of the following entities or individuals within the meaning of the Fair Labor Standards Act? This includes any**

**employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes ____ No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No ____

RCI Hospitality Holdings, Inc.: Yes ____ No ____

Eric Langan: Yes ____ No ____

Kes Senevi: Yes ____ No ____

If your answer is Yes as to any Defendant, please answer questions 13, 14, 27, and 28.

If your answer is No as to all Defendants, please skip questions 13, 14, 27, and 28.

**6. Has Tahirou Diakite proven that he was an employee of any of the following entities or individuals within the meaning of the New York Labor Law? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes ____ No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No ____

RCI Hospitality Holdings, Inc.: Yes ____ No ____

Eric Langan: Yes ____ No ____

Kes Senevi: Yes ____ No ____

If your answer is Yes as to any Defendant, please answer questions 19, 29, 30, 31, 39, and 47.

If your answer is No as to all Defendants, please skip questions 19, 29, 30, 31, 39, 40, 47, 48, 60, 61, and 62.

**7. Has Talla Samb proven that he was an employee of any of the following entities or individuals within the meaning of the Fair Labor Standards Act? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

| | | |
|---|---|---|
| Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: | Yes ____ | No ____ |
| RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: | Yes ____ | No ____ |
| 48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: | Yes ____ | No ____ |
| RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: | Yes ____ | No ____ |
| RCI Hospitality Holdings, Inc.: | Yes ____ | No ____ |
| Eric Langan: | Yes ____ | No ____ |
| Kes Senevi: | Yes ____ | No ____ |

If your answer is Yes as to any Defendant, please answer questions 15, 16, and 32.

If your answer is No as to all Defendants, please skip questions 15, 16, and 32.

**8. Has Talla Samb proven that he was an employee of any of the following entities or individuals within the meaning of the New York Labor Law? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

| | | |
|---|---|---|
| Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: | Yes ____ | No ____ |
| RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: | Yes ____ | No ____ |
| 48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: | Yes ____ | No ____ |

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No ____

RCI Hospitality Holdings, Inc.: Yes ____ No ____

Eric Langan: Yes ____ No ____

Kes Senevi: Yes ____ No ____

If your answer is Yes as to any Defendant, please answer questions 20, 33, 34, 41, and 49.

If your answer is No as to all Defendants, please skip questions 20, 33, 34, 41, 42, 49, 50, 64, 65, and 66.

**<u>II. Minimum Wage Liability Under the FLSA</u>**

**9. Has Elhadji Mbaye proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked?**

Yes _________ No _________

If your answer is Yes, please answer questions 10 and 51.

If your answer is No, please skip question 10.

**10. If you find that Elhadji Mbaye has proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked, has Elhadji Mbaye proven that his employer(s) did so willfully?**

Yes _________ No _________

**11. Has Modou Diop proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked?**

Yes _________ No _________

If your answer is Yes, please answer questions 12 and 55.

If your answer is No, please skip question 12.

**12. If you find that Modou Diop has proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked, has Modou Diop proven that his employer(s) did so willfully?**

Yes _________ No _________

**13. Has Tahirou Diakite proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked?**

Yes _________ No _________

If your answer is Yes, please answer questions 14 and 59.

If your answer is No, please skip question 14.

**14. If you find that Tahirou Diakite has proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked, has Tahirou Diakite proven that his employer(s) did so willfully?**

Yes _________ No _________

**15. Has Talla Samb proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked?**

Yes _________ No _________

If your answer is Yes, please answer questions 16 and 63.

If your answer is No, please skip question 16.

**16. If you find that Talla Samb has proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked, has Talla Samb proven that his employer(s) did so willfully?**

Yes _________ No _________

**III. Minimum Wage Liability Under the NYLL**

**17. Has Elhadji Mbaye proven that his employer(s) failed to pay him the applicable New York minimum wage under the NYLL for all hours worked?**

Yes _________ No _________

If your answer is Yes, please answer questions 51 and 52.

**18. Has Modou Diop proven that his employer(s) failed to pay him the applicable New York minimum wage under the NYLL for all hours worked?**

Yes _________ No _________

If your answer is Yes, please answer questions 55 and 56.

**19. Has Tahirou Diakite proven that his employer(s) failed to pay him the applicable New York minimum wage under the NYLL for all hours worked?**

Yes _________ No _________

If your answer is Yes, or if you answer Yes to question 30 or 31, please answer questions 59 and 60.

**20. Has Talla Samb proven that his employer(s) failed to pay him the applicable New York minimum wage under the NYLL for all hours worked?**

Yes _________ No _________

If your answer is Yes, please answer questions 63 and 64.

**<u>IV. Liability for Equipment Costs, Wage Deductions, and Tips</u>**

**21. Has Elhadji Mbaye proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes _________ No _________

**22. Has Elhadji Mbaye proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable New York minimum wage, in violation of the NYLL?**

Yes _________ No _________

**23. Has Elhadji Mbaye proven that his employer(s) demanded, accepted, or retained a portion of gratuities belonging to him, in violation of the NYLL?**

Yes _________ No _________

**24. Has Modou Diop proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs,**

**and that such costs reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes _________ No _________

**25. Has Modou Diop proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable New York minimum wage, in violation of the NYLL?**

Yes _________ No _________

**26. Has Modou Diop proven that his employer(s) demanded, accepted, or retained a portion of gratuities belonging to him, in violation of the NYLL?**

Yes _________ No _________

**27. Has Tahirou Diakite proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes _________ No _________

**28. Has Tahirou Diakite proven that his employer(s), directly or indirectly, made or required unlawful deductions from his wages that reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes _________ No _________

**29. Has Tahirou Diakite proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable New York minimum wage, in violation of the NYLL?**

Yes _________ No _________

**30. Has Tahirou Diakite proven that his employer(s) demanded, accepted, or retained a portion of gratuities belonging to him, in violation of the NYLL?**

Yes _________ No _________

**31. Has Tahirou Diakite proven that his employer(s), directly or indirectly, made or required unlawful deductions from his wages in violation of the NYLL?**

Yes _________ No _________

**32. Has Talla Samb proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes _________ No _________

**33. Has Talla Samb proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable New York minimum wage, in violation of the NYLL?**

Yes _________ No _________

**34. Has Talla Samb proven that his employer(s) demanded, accepted, or retained a portion of gratuities belonging to him, in violation of the NYLL?**

Yes _________ No _________

**V. Liability for Wage Notices Under the NYLL**

**35. Has Elhadji Mbaye proven that his employer(s) failed to provide him with the written wage notice required under the NYLL at the time of hiring?**

Yes _________ No _________

If your answer is Yes, please answer question 36.

If your answer is No, please skip question 36.

**36. Has Elhadji Mbaye proven that he experienced actual and concrete downstream harm as a result of his not receiving the written wage notice required under the NYLL at the time of hiring?**

Yes _________ No _________

If your answer is Yes, please answer question 53.

If your answer is No, please skip question 53.

**37. Has Modou Diop proven that his employer(s) failed to provide him with the written wage notice required under the NYLL at the time of hiring?**

Yes _________ No _________

If your answer is Yes, please answer question 38.

If your answer is No, please skip question 38.

**38. Has Modou Diop proven that he experienced actual and concrete downstream harm as a result of his not receiving the written wage notice required under the NYLL at the time of hiring?**

Yes _________ No _________

If your answer is Yes, please answer question 57.

If your answer is No, please skip question 57.

**39. Has Tahirou Diakite proven that his employer(s) failed to provide him with the written wage notice required under the NYLL at the time of hiring?**

Yes _________ No _________

If your answer is Yes, please answer question 40.

If your answer is No, please skip question 40.

**40. Has Tahirou Diakite proven that he experienced actual and concrete downstream harm as a result of his not receiving the written wage notice required under the NYLL at the time of hiring?**

Yes _________ No _________

If your answer is Yes, please answer question 61.

If your answer is No, please skip question 61.

**41. Has Talla Samb proven that his employer(s) failed to provide him with the written wage notice required under the NYLL at the time of hiring?**

Yes _________ No _________

If your answer is Yes, please answer question 42.

If your answer is No, please skip question 42.

**42. Has Talla Samb proven that he experienced actual and concrete downstream harm as a result of his not receiving the written wage notice required under the NYLL at the time of hiring?**

Yes _________ No _________

If your answer is Yes, please answer question 65.

If your answer is No, please skip question 65.

**VI. Liability for Wage Statements Under the NYLL**

**43. Has Elhadji Mbaye proven that his employer(s) failed to provide him with the wage statements required under the NYLL?**

Yes _________ No _________

If your answer is Yes, please answer question 44.

If your answer is No, please skip question 44.

**44. Has Elhadji Mbaye proven that he experienced actual and concrete downstream harm as a result of his not receiving the wage statements required under the NYLL?**

Yes _________ No _________

If your answer is Yes, please answer question 54.

If your answer is No, please skip question 54.

**45. Has Modou Diop proven that his employer(s) failed to provide him with the wage statements required under the NYLL?**

Yes _________ No _________

If your answer is Yes, please answer question 46.

If your answer is No, please skip question 46.

**46. Has Modou Diop proven that he experienced actual and concrete downstream harm as a result of his not receiving the wage statements required under the NYLL?**

Yes _________ No _________

If your answer is Yes, please answer question 58.

If your answer is No, please skip question 58.

**47. Has Tahirou Diakite proven that his employer(s) failed to provide him with the wage statements required under the NYLL?**

Yes _________ No _________

If your answer is Yes, please answer question 48.

If your answer is No, please skip question 48.

**48. Has Tahirou Diakite proven that he experienced actual and concrete downstream harm as a result of his not receiving the wage statements required under the NYLL?**

Yes _________ No _________

If your answer is Yes, please answer question 62.

If your answer is No, please skip question 62.

**49. Has Talla Samb proven that his employer(s) failed to provide him with the wage statements required under the NYLL?**

Yes _________ No _________

If your answer is Yes, please answer question 50.

If your answer is No, please skip question 50.

**50. Has Talla Samb proven that he experienced actual and concrete downstream harm as a result of his not receiving the wage statements required under the NYLL?**

Yes _________ No _________

If your answer is Yes, please answer question 66.

If your answer is No, please skip question 66.

## VI. Damages

**51. For Elhadji Mbaye, what do you find as to the following for each time period below? The Court will calculate any damages based on your factual findings. Answer this question only if you answered Yes to any of Questions 9, 17, 21, 22, or 23.**

**From April 8, 2017 to April 7, 2020**

(a) The dates he began and stopped working: __________________

(b) The number of weeks he worked during that period: __________________

(c) The number of shifts he worked per week during that period: __________________

(d) The number of shifts he missed during that period: __________________

(e) The number of hours he worked per shift during that period: __________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $_________________

(g) The amount, per week, of tips he received from patrons: $_________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $_________________

(i) The amount, per week, of tips his employer(s) retained from him: $________________

**From April 8, 2020 to April 7, 2021**

(a) The dates he began and stopped working: __________________

(b) The number of weeks he worked during that period: __________________

(c) The number of shifts he worked per week during that period: __________________

(d) The number of shifts he missed during that period: __________________

(e) The number of hours he worked per shift during that period: __________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $_________________

(g) The amount, per week, of tips he received from patrons: $_________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $_________________

(i) The amount, per week, of tips his employer(s) retained from him: $________________

**From April 8, 2021 to August 2023**

(a) The dates he began and stopped working: __________________

(b) The number of weeks he worked during that period: __________________

(c) The number of shifts he worked per week during that period: __________________

(d) The number of shifts he missed during that period: __________________

(e) The number of hours he worked per shift during that period: _________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $________________

(g) The amount, per week, of tips he received from patrons: $________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $________________

(i) The amount, per week, of tips his employer(s) retained from him: $______________

**52. Did Elhadji Mbaye's employer(s) prove that they acted with a good faith basis to believe that their conduct complied with the NYLL?**

Yes _________ No _________

**53. What is the total amount of wage notice statutory damages under the NYLL Elhadji Mbaye has proven?**

_____________________

**54. What is the total amount of wage statement statutory damages under the NYLL Elhadji Mbaye has proven?**

_____________________

**55. For Modou Diop, what do you find as to the following for each time period below? The Court will calculate any damages based on your factual findings. Answer this question only if you answered Yes to any of Questions 11, 18, 24, 25, or 26.**

**From April 8, 2017 to April 7, 2020**

(a) The dates he began and stopped working: _________________

(b) The number of weeks he worked during that period: _________________

(c) The number of shifts he worked per week during that period: _________________

(d) The number of shifts he missed during that period: _________________

(e) The number of hours he worked per shift during that period: _________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $________________

(g) The amount, per week, of tips he received from patrons: $________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $________________

(i) The amount, per week, of tips his employer(s) retained from him: $_______________

**From April 8, 2020 to April 7, 2021**

(a) The dates he began and stopped working: ___________________
(b) The number of weeks he worked during that period: ___________________
(c) The number of shifts he worked per week during that period: ___________________
(d) The number of shifts he missed during that period: ___________________
(e) The number of hours he worked per shift during that period: ___________________
(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $__________________
(g) The amount, per week, of tips he received from patrons: $__________________
(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $__________________
(i) The amount, per week, of tips his employer(s) retained from him: $_________________

**From April 8, 2021 to August 2023**

(a) The dates he began and stopped working: ___________________
(b) The number of weeks he worked during that period: ___________________
(c) The number of shifts he worked per week during that period: ___________________
(d) The number of shifts he missed during that period: ___________________
(e) The number of hours he worked per shift during that period: ___________________
(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $__________________
(g) The amount, per week, of tips he received from patrons: $__________________
(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $__________________
(i) The amount, per week, of tips his employer(s) retained from him: $________________

**56. Did Modou Diop's employer(s) prove that they acted with a good faith basis to believe that their conduct complied with the NYLL?**

Yes __________ No __________

**57. What is the total amount of wage notice statutory damages under the NYLL Modou Diop has proven?**

________________________

**58. What is the total amount of wage statement statutory damages under the NYLL Modou Diop has proven?**

________________________

**59. For Tahirou Diakite, what do you find as to the following for each time period below? The Court will calculate any damages based on your factual findings. Answer this question only if you answered Yes to any of Questions 13, 19, 27, 28, 29, 30 or 31.**

**From April 8, 2017 to April 7, 2020**

(a) The dates he began and stopped working: __________________

(b) The number of weeks he worked during that period: __________________

(c) The number of shifts he worked per week during that period: __________________

(d) The number of shifts he missed during that period: __________________

(e) The number of hours he worked per shift during that period: __________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $_________________

(g) The amount, per week, of tips he received from patrons: $_________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $_________________

(i) The amount, per week, of tips his employer(s) retained from him: $________________

(j) The amount, per week, of any unlawful deductions from his wages: $______________

**From April 8, 2020 to April 7, 2021**

(a) The dates he began and stopped working: __________________

(b) The number of weeks he worked during that period: __________________

(c) The number of shifts he worked per week during that period: __________________

(d) The number of shifts he missed during that period: __________________

(e) The number of hours he worked per shift during that period: __________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $_________________

(g) The amount, per week, of tips he received from patrons: $_________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $_________________

(i) The amount, per week, of tips his employer(s) retained from him: $________________

(j) The amount, per week, of any unlawful deductions from his wages: $______________

**From April 8, 2021 to August 2023**

(a) The dates he began and stopped working: __________________

(b) The number of weeks he worked during that period: __________________

(c) The number of shifts he worked per week during that period: __________________

(d) The number of shifts he missed during that period: __________________

(e) The number of hours he worked per shift during that period: __________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $_________________

(g) The amount, per week, of tips he received from patrons: $_________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $_________________

(i) The amount, per week, of tips his employer(s) retained from him: $_______________

(j) The amount, per week, of any unlawful deductions from his wages: $______________

**60. Did Tahirou Diakite's employer(s) prove that they acted with a good faith basis to believe that their conduct complied with the NYLL?**

Yes _________ No _________

**61. What is the total amount of wage notice statutory damages under the NYLL Tahirou Diakite has proven?**

______________________

**62. What is the total amount of wage statement statutory damages under the NYLL Tahirou Diakite has proven?**

______________________

**63. For Talla Samb, what do you find as to the following for each time period below? The Court will calculate any damages based on your factual findings. Answer this question only if you answered Yes to any of Questions 15, 20, 32, 33, or 34.**

**From April 8, 2017 to April 7, 2020**

(a) The dates he began and stopped working: __________________

(b) The number of weeks he worked during that period: __________________

(c) The number of shifts he worked per week during that period: __________________

(d) The number of shifts he missed during that period: __________________

(e) The number of hours he worked per shift during that period: __________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $_________________

(g) The amount, per week, of tips he received from patrons: $_________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $_________________

(i) The amount, per week, of tips his employer(s) retained from him: $________________

**From April 8, 2020 to April 7, 2021**

(a) The dates he began and stopped working: _________________

(b) The number of weeks he worked during that period: _________________

(c) The number of shifts he worked per week during that period: _________________

(d) The number of shifts he missed during that period: _________________

(e) The number of hours he worked per shift during that period: _________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $________________

(g) The amount, per week, of tips he received from patrons: $________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $________________

(i) The amount, per week, of tips his employer(s) retained from him: $_______________

**From April 8, 2021 to August 2023**

(a) The dates he began and stopped working: _________________

(b) The number of weeks he worked during that period: _________________

(c) The number of shifts he worked per week during that period: _________________

(d) The number of shifts he missed during that period: _________________

(e) The number of hours he worked per shift during that period: _________________

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $________________

(g) The amount, per week, of tips he received from patrons: $________________

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $________________

(i) The amount, per week, of tips his employer(s) retained from him: $______________

**64. Did Talla Samb's employer(s) prove that they acted with a good faith basis to believe that their conduct complied with the NYLL?**

Yes _________ No _________

**65. What is the total amount of wage notice statutory damages under the NYLL Talla Samb has proven?**

_____________________

**66. What is the total amount of wage statement statutory damages under the NYLL Talla Samb has proven?**

______________________

Your verdict must be unanimous. The foreperson should sign and date this form and notify the Marshal that you have reached a verdict.

Date: ________________ ______________________________

FOREPERSON

# COURT EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Elhadji Mbaye, Modou Diop, Tahirou Diakite, and Talla Samb,

Plaintiffs,

23 Civ. 2967 (DEH)

-against-

RCI Hospitality Holdings, Inc., Peregrine Enterprises, Inc. (d/b/a Rick's Cabaret New York), RCI 33rd Ventures, Inc. (d/b/a Hoops Cabaret and Sports Bar), 48 West 33rd Street Corp. (d/b/a Hoops Cabaret and Sports Bar), RCI Dining Services (37th Street), Inc. (d/b/a Vivid Cabaret), Eric Langan, and Kes Senevi,

Defendants.
------------------------------------------------------------X

**VERDICT FORM**

**I. Employment Relationship**

**1. Has Elhadji Mbaye proven that he was an employee of any of the following entities or individuals within the meaning of the Fair Labor Standards Act? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes X No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No X

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No X

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No X

RCI Hospitality Holdings, Inc.: Yes X No ____

Eric Langan: Yes ____ No X

Kes Senevi: Yes ____ No X

If your answer is Yes as to any Defendant, please answer questions 9, 10, and 21.

If your answer is No as to all Defendants, please skip questions 9, 10, and 21.

**2. Has Elhadji Mbaye proven that he was an employee of any of the following entities or individuals within the meaning of the New York Labor Law? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes X No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No X

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes ____ No X

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No X

RCI Hospitality Holdings, Inc.: Yes X No ____

Eric Langan: Yes ____ No X

Kes Senevi: Yes ____ No X

If your answer is Yes as to any Defendant, please answer questions 17, 22, 23, 35, and 43.

If your answer is No as to all Defendants, please skip questions 17, 22, 23, 35, 36, 43, 44, 52, 53, and 54.

**3. Has Modou Diop proven that he was an employee of any of the following entities or individuals within the meaning of the Fair Labor Standards Act? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes X No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes X No ____

RCI Hospitality Holdings, Inc.: Yes X No ____

Eric Langan: Yes ____ No X

Kes Senevi: Yes ____ No X

If your answer is Yes as to any Defendant, please answer questions 11, 12, and 24.

If your answer is No as to all Defendants, please skip questions 11, 12, and 24.

**4. Has Modou Diop proven that he was an employee of any of the following entities or individuals within the meaning of the New York Labor Law? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes X No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes X No ____

RCI Hospitality Holdings, Inc.: Yes X No ____

Eric Langan: Yes ____ No X

Kes Senevi: Yes ____ No X

If your answer is Yes as to any Defendant, please answer questions 18, 25, 26, 37, and 45.

If your answer is No as to all Defendants, please skip questions 18, 25, 26, 37, 38, 45, 46, 56, 57, and 58.

**5. Has Tahirou Diakite proven that he was an employee of any of the following entities or individuals within the meaning of the Fair Labor Standards Act? This includes any**

**employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes X No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes X No ____

RCI Hospitality Holdings, Inc.: Yes X No ____

Eric Langan: Yes ____ No X

Kes Senevi: Yes ____ No X

If your answer is Yes as to any Defendant, please answer questions 13, 14, 27, and 28.

If your answer is No as to all Defendants, please skip questions 13, 14, 27, and 28.

**6. Has Tahirou Diakite proven that he was an employee of any of the following entities or individuals within the meaning of the New York Labor Law? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes X No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes X No ____

RCI Hospitality Holdings, Inc.: Yes X No ____

Eric Langan: Yes ____ No X

Kes Senevi: Yes ____ No X

If your answer is Yes as to any Defendant, please answer questions 19, 29, 30, 31, 39, and 47.

If your answer is No as to all Defendants, please skip questions 19, 29, 30, 31, 39, 40, 47, 48, 60, 61, and 62.

**7. Has Talla Samb proven that he was an employee of any of the following entities or individuals within the meaning of the Fair Labor Standards Act? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes X No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No X

RCI Hospitality Holdings, Inc.: Yes X No ____

Eric Langan: Yes ____ No X

Kes Senevi: Yes ____ No X

If your answer is Yes as to any Defendant, please answer questions 15, 16, and 32.

If your answer is No as to all Defendants, please skip questions 15, 16, and 32.

**8. Has Talla Samb proven that he was an employee of any of the following entities or individuals within the meaning of the New York Labor Law? This includes any employment relationship you find through joint employment and/or the existence of a single integrated enterprise.**

Peregrine Enterprises, Inc. d/b/a Rick's Cabaret New York: Yes X No ____

RCI 33rd Ventures, Inc. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

48 West 33rd Street Corp. d/b/a Hoops Cabaret and Sports Bar: Yes X No ____

RCI Dining Services (37th Street), Inc. d/b/a Vivid Cabaret: Yes ____ No __X__

RCI Hospitality Holdings, Inc.: Yes __X__ No ____

Eric Langan: Yes ____ No __X__

Kes Senevi: Yes ____ No __X__

If your answer is Yes as to any Defendant, please answer questions 20, 33, 34, 41, and 49.

If your answer is No as to all Defendants, please skip questions 20, 33, 34, 41, 42, 49, 50, 64, 65, and 66.

## II. Minimum Wage Liability Under the FLSA

**9. Has Elhadji Mbaye proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked?**

Yes __X__ No ________

If your answer is Yes, please answer questions 10 and 51.

If your answer is No, please skip question 10.

**10. If you find that Elhadji Mbaye has proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked, has Elhadji Mbaye proven that his employer(s) did so willfully?**

Yes __X__ No ________

**11. Has Modou Diop proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked?**

Yes __X__ No ________

If your answer is Yes, please answer questions 12 and 55.

If your answer is No, please skip question 12.

**12. If you find that Modou Diop has proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked, has Modou Diop proven that his employer(s) did so willfully?**

Yes ___X___ No ________

**13. Has Tahirou Diakite proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked?**

Yes ________ No ___X___

If your answer is Yes, please answer questions 14 and 59.

If your answer is No, please skip question 14.

**14. If you find that Tahirou Diakite has proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked, has Tahirou Diakite proven that his employer(s) did so willfully?**

Yes ________ No ________

**15. Has Talla Samb proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked?**

Yes ___X___ No ________

If your answer is Yes, please answer questions 16 and 63.

If your answer is No, please skip question 16.

**16. If you find that Talla Samb has proven that his employer(s) failed to pay him the applicable federal minimum wage under the FLSA for all hours worked, has Talla Samb proven that his employer(s) did so willfully?**

Yes ___X___ No ________

**<u>III. Minimum Wage Liability Under the NYLL</u>**

**17. Has Elhadji Mbaye proven that his employer(s) failed to pay him the applicable New York minimum wage under the NYLL for all hours worked?**

Yes ___X___ No ________

If your answer is Yes, please answer questions 51 and 52.

**18. Has Modou Diop proven that his employer(s) failed to pay him the applicable New York minimum wage under the NYLL for all hours worked?**

Yes ___X___ No ________

If your answer is Yes, please answer questions 55 and 56.

**19. Has Tahirou Diakite proven that his employer(s) failed to pay him the applicable New York minimum wage under the NYLL for all hours worked?**

Yes ___X___ No ________

If your answer is Yes, or if you answer Yes to question 30 or 31, please answer questions 59 and 60.

**20. Has Talla Samb proven that his employer(s) failed to pay him the applicable New York minimum wage under the NYLL for all hours worked?**

Yes ___X___ No ________

If your answer is Yes, please answer questions 63 and 64.

**IV. Liability for Equipment Costs, Wage Deductions, and Tips**

**21. Has Elhadji Mbaye proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes ___X___ No ________

**22. Has Elhadji Mbaye proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable New York minimum wage, in violation of the NYLL?**

Yes ___X___ No ________

**23. Has Elhadji Mbaye proven that his employer(s) demanded, accepted, or retained a portion of gratuities belonging to him, in violation of the NYLL?**

Yes ________ No ___X___

**24. Has Modou Diop proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs,**

**and that such costs reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes X No ____

25. **Has Modou Diop proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable New York minimum wage, in violation of the NYLL?**

Yes X No ____

26. **Has Modou Diop proven that his employer(s) demanded, accepted, or retained a portion of gratuities belonging to him, in violation of the NYLL?**

Yes ____ No X

27. **Has Tahirou Diakite proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes ____ No X

28. **Has Tahirou Diakite proven that his employer(s), directly or indirectly, made or required unlawful deductions from his wages that reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes ____ No X

29. **Has Tahirou Diakite proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable New York minimum wage, in violation of the NYLL?**

Yes X No ____

30. **Has Tahirou Diakite proven that his employer(s) demanded, accepted, or retained a portion of gratuities belonging to him, in violation of the NYLL?**

Yes ____ No X

**31. Has Tahirou Diakite proven that his employer(s), directly or indirectly, made or required unlawful deductions from his wages in violation of the NYLL?**

Yes ________ No ___X___

**32. Has Talla Samb proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable federal minimum wage in one or more workweeks, in violation of the FLSA?**

Yes ___X___ No ________

**33. Has Talla Samb proven that his employer(s) required him to purchase items used in or specifically required for his work, that his employer(s) failed to reimburse those costs, and that such costs reduced his wages below the applicable New York minimum wage, in violation of the NYLL?**

Yes ___X___ No ________

**34. Has Talla Samb proven that his employer(s) demanded, accepted, or retained a portion of gratuities belonging to him, in violation of the NYLL?**

Yes ________ No ___X___

**V. Liability for Wage Notices Under the NYLL**

**35. Has Elhadji Mbaye proven that his employer(s) failed to provide him with the written wage notice required under the NYLL at the time of hiring?**

Yes ___X___ No ________

If your answer is Yes, please answer question 36.

If your answer is No, please skip question 36.

**36. Has Elhadji Mbaye proven that he experienced actual and concrete downstream harm as a result of his not receiving the written wage notice required under the NYLL at the time of hiring?**

Yes ___X___ No ________

If your answer is Yes, please answer question 53.

If your answer is No, please skip question 53.

**37. Has Modou Diop proven that his employer(s) failed to provide him with the written wage notice required under the NYLL at the time of hiring?**

Yes __X__ No ______

If your answer is Yes, please answer question 38.

If your answer is No, please skip question 38.

**38. Has Modou Diop proven that he experienced actual and concrete downstream harm as a result of his not receiving the written wage notice required under the NYLL at the time of hiring?**

Yes __X__ No ______

If your answer is Yes, please answer question 57.

If your answer is No, please skip question 57.

**39. Has Tahirou Diakite proven that his employer(s) failed to provide him with the written wage notice required under the NYLL at the time of hiring?**

Yes __X__ No ______

If your answer is Yes, please answer question 40.

If your answer is No, please skip question 40.

**40. Has Tahirou Diakite proven that he experienced actual and concrete downstream harm as a result of his not receiving the written wage notice required under the NYLL at the time of hiring?**

Yes __X__ No ______

If your answer is Yes, please answer question 61.

If your answer is No, please skip question 61.

**41. Has Talla Samb proven that his employer(s) failed to provide him with the written wage notice required under the NYLL at the time of hiring?**

Yes __X__ No ______

If your answer is Yes, please answer question 42.

If your answer is No, please skip question 42.

**42. Has Talla Samb proven that he experienced actual and concrete downstream harm as a result of his not receiving the written wage notice required under the NYLL at the time of hiring?**

Yes X No ________

If your answer is Yes, please answer question 65.

If your answer is No, please skip question 65.

**<u>VI. Liability for Wage Statements Under the NYLL</u>**

**43. Has Elhadji Mbaye proven that his employer(s) failed to provide him with the wage statements required under the NYLL?**

Yes X No ________

If your answer is Yes, please answer question 44.

If your answer is No, please skip question 44.

**44. Has Elhadji Mbaye proven that he experienced actual and concrete downstream harm as a result of his not receiving the wage statements required under the NYLL?**

Yes X No ________

If your answer is Yes, please answer question 54.

If your answer is No, please skip question 54.

**45. Has Modou Diop proven that his employer(s) failed to provide him with the wage statements required under the NYLL?**

Yes X No ________

If your answer is Yes, please answer question 46.

If your answer is No, please skip question 46.

**46. Has Modou Diop proven that he experienced actual and concrete downstream harm as a result of his not receiving the wage statements required under the NYLL?**

Yes __X__ No ____

If your answer is Yes, please answer question 58.

If your answer is No, please skip question 58.

**47. Has Tahirou Diakite proven that his employer(s) failed to provide him with the wage statements required under the NYLL?**

Yes __X__ No ____

If your answer is Yes, please answer question 48.

If your answer is No, please skip question 48.

**48. Has Tahirou Diakite proven that he experienced actual and concrete downstream harm as a result of his not receiving the wage statements required under the NYLL?**

Yes __X__ No ____

If your answer is Yes, please answer question 62.

If your answer is No, please skip question 62.

**49. Has Talla Samb proven that his employer(s) failed to provide him with the wage statements required under the NYLL?**

Yes __X__ No ____

If your answer is Yes, please answer question 50.

If your answer is No, please skip question 50.

**50. Has Talla Samb proven that he experienced actual and concrete downstream harm as a result of his not receiving the wage statements required under the NYLL?**

Yes __X__ No ____

If your answer is Yes, please answer question 66.

If your answer is No, please skip question 66.

## VI. Damages

**51. For Elhadji Mbaye, what do you find as to the following for each time period below? The Court will calculate any damages based on your factual findings. Answer this question only if you answered Yes to any of Questions 9, 17, 21, 22, or 23.**

**From April 8, 2017 to April 7, 2020**

(a) The dates he began and stopped working: 4/9/17 - 3/30/20

(b) The number of weeks he worked during that period: 155

(c) The number of shifts he worked per week during that period: 2

(d) The number of shifts he missed during that period: 5

(e) The number of hours he worked per shift during that period: 8

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0

(g) The amount, per week, of tips he received from patrons: $ 100

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 40

(i) The amount, per week, of tips his employer(s) retained from him: $ 0

**From April 8, 2020 to April 7, 2021**

(a) The dates he began and stopped working: N/A

(b) The number of weeks he worked during that period: 0

(c) The number of shifts he worked per week during that period: 0

(d) The number of shifts he missed during that period: 0

(e) The number of hours he worked per shift during that period: 0

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0

(g) The amount, per week, of tips he received from patrons: $ 0

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 0

(i) The amount, per week, of tips his employer(s) retained from him: $ 0

**From April 8, 2021 to August 2023**

(a) The dates he began and stopped working: N/A

(b) The number of weeks he worked during that period: 0

(c) The number of shifts he worked per week during that period: 0

(d) The number of shifts he missed during that period: 0

(e) The number of hours he worked per shift during that period: 0

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0

(g) The amount, per week, of tips he received from patrons: $ 0

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 0

(i) The amount, per week, of tips his employer(s) retained from him: $ 0

**52. Did Elhadji Mbaye's employer(s) prove that they acted with a good faith basis to believe that their conduct complied with the NYLL?**

Yes ______ No X

**53. What is the total amount of wage notice statutory damages under the NYLL Elhadji Mbaye has proven?**

$5,000

**54. What is the total amount of wage statement statutory damages under the NYLL Elhadji Mbaye has proven?**

$5,000

**55. For Modou Diop, what do you find as to the following for each time period below? The Court will calculate any damages based on your factual findings. Answer this question only if you answered Yes to any of Questions 11, 18, 24, 25, or 26.**

**From April 8, 2017 to April 7, 2020**

(a) The dates he began and stopped working: 1/2/18 - 3/31/20

(b) The number of weeks he worked during that period: 117

(c) The number of shifts he worked per week during that period: 3

(d) The number of shifts he missed during that period: 0

(e) The number of hours he worked per shift during that period: 8

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0

(g) The amount, per week, of tips he received from patrons: $ 150

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 60

(i) The amount, per week, of tips his employer(s) retained from him: $ 0

**From April 8, 2020 to April 7, 2021**

(a) The dates he began and stopped working: 9/30/2020 – 4/7/2021
(b) The number of weeks he worked during that period: 13
(c) The number of shifts he worked per week during that period: 3
(d) The number of shifts he missed during that period: 0
(e) The number of hours he worked per shift during that period: 4
(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0
(g) The amount, per week, of tips he received from patrons: $ 75
(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 30
(i) The amount, per week, of tips his employer(s) retained from him: $ 0

**From April 8, 2021 to August 2023**

(a) The dates he began and stopped working: 4/8/21 – Aug 2023
(b) The number of weeks he worked during that period: 124
(c) The number of shifts he worked per week during that period: 3
(d) The number of shifts he missed during that period: 0
(e) The number of hours he worked per shift during that period: 4hrs 4/8/21-6/30/21 | 8hrs 7/1/21 Aug 23
(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0
(g) The amount, per week, of tips he received from patrons: $ 75 4/8/21-6/30/21 | $150 7/1/21 Aug 23
(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 30 4/8/21-6/30/21 | $60 7/1/21 – Aug 23
(i) The amount, per week, of tips his employer(s) retained from him: $ 0

**56. Did Modou Diop's employer(s) prove that they acted with a good faith basis to believe that their conduct complied with the NYLL?**

Yes ________ No X

**57. What is the total amount of wage notice statutory damages under the NYLL Modou Diop has proven?**

$5,000

**58. What is the total amount of wage statement statutory damages under the NYLL Modou Diop has proven?**

$5,000

**59. For Tahirou Diakite, what do you find as to the following for each time period below? The Court will calculate any damages based on your factual findings. Answer this question only if you answered Yes to any of Questions 13, 19, 27, 28, 29, 30 or 31.**

**From April 8, 2017 to April 7, 2020**

(a) The dates he began and stopped working: 1/1/19 – 12/31/19

(b) The number of weeks he worked during that period: 49

(c) The number of shifts he worked per week during that period: 5

(d) The number of shifts he missed during that period: 15

(e) The number of hours he worked per shift during that period: 7

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 450

(g) The amount, per week, of tips he received from patrons: $ 125

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 100

(i) The amount, per week, of tips his employer(s) retained from him: $ 0

(j) The amount, per week, of any unlawful deductions from his wages: $ 0

**From April 8, 2020 to April 7, 2021**

(a) The dates he began and stopped working: N/A

(b) The number of weeks he worked during that period: 0

(c) The number of shifts he worked per week during that period: 0

(d) The number of shifts he missed during that period: 0

(e) The number of hours he worked per shift during that period: 0

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0

(g) The amount, per week, of tips he received from patrons: $ 0

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 0

(i) The amount, per week, of tips his employer(s) retained from him: $ 0

(j) The amount, per week, of any unlawful deductions from his wages: $ 0

**From April 8, 2021 to August 2023**

(a) The dates he began and stopped working: N/A

(b) The number of weeks he worked during that period: 0

(c) The number of shifts he worked per week during that period: 0

(d) The number of shifts he missed during that period: 0

(e) The number of hours he worked per shift during that period: 0

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $0

(g) The amount, per week, of tips he received from patrons: $0

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $0

(i) The amount, per week, of tips his employer(s) retained from him: $0

(j) The amount, per week, of any unlawful deductions from his wages: $0

**60. Did Tahirou Diakite's employer(s) prove that they acted with a good faith basis to believe that their conduct complied with the NYLL?**

Yes ______ No X

**61. What is the total amount of wage notice statutory damages under the NYLL Tahirou Diakite has proven?**

$5,000

**62. What is the total amount of wage statement statutory damages under the NYLL Tahirou Diakite has proven?**

$5,000

**63. For Talla Samb, what do you find as to the following for each time period below? The Court will calculate any damages based on your factual findings. Answer this question only if you answered Yes to any of Questions 15, 20, 32, 33, or 34.**

**From April 8, 2017 to April 7, 2020**

(a) The dates he began and stopped working: N/A

(b) The number of weeks he worked during that period: 0

(c) The number of shifts he worked per week during that period: 0

(d) The number of shifts he missed during that period: 0

(e) The number of hours he worked per shift during that period: 0

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $0

(g) The amount, per week, of tips he received from patrons: $0

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $0

(i) The amount, per week, of tips his employer(s) retained from him: $0

**From April 8, 2020 to April 7, 2021**

(a) The dates he began and stopped working: N/A

(b) The number of weeks he worked during that period: 0

(c) The number of shifts he worked per week during that period: 0

(d) The number of shifts he missed during that period: 0

(e) The number of hours he worked per shift during that period: 0

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0

(g) The amount, per week, of tips he received from patrons: $ 0

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $ 0

(i) The amount, per week, of tips his employer(s) retained from him: $ 0

**From April 8, 2021 to August 2023**

(a) The dates he began and stopped working: 8/1/21 - Aug 2023

(b) The number of weeks he worked during that period: 104

(c) The number of shifts he worked per week during that period: 4 shifts 8/1/21-12/31/21 | 2 shifts 1/1/22-Aug/23

(d) The number of shifts he missed during that period: 0

(e) The number of hours he worked per shift during that period: 7hrs 8/1/21-12/31/21 | 8hrs 1/1/22 Aug/23

(f) The amount, per week, he received from his employer(s), including any flat payments for third-floor shifts, other than tips: $ 0

(g) The amount, per week, of tips he received from patrons: $175 8/1/21-12/31/21 | $100 1/1/22 Aug/23

(h) The amount, per week, of unreimbursed equipment costs that his employer(s) required him to bear: $80 8/1/21-12/31/21 | $40 1/1/22 - Aug 23

(i) The amount, per week, of tips his employer(s) retained from him: $ 0

**64. Did Talla Samb's employer(s) prove that they acted with a good faith basis to believe that their conduct complied with the NYLL?**

Yes ______ No X

**65. What is the total amount of wage notice statutory damages under the NYLL Talla Samb has proven?**

$5,000

**66. What is the total amount of wage statement statutory damages under the NYLL Talla Samb has proven?**

$5,000

Your verdict must be unanimous. The foreperson should sign and date this form and notify the Marshal that you have reached a verdict.

Date: 11/13/2026

[redacted]

FOREPERSON